IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TONY RICHARD LOW,

    Plaintiff,               No. CIV S-05-2211 MCE DAD P

    vs.

GARY R. STANTON, et al.,       ORDER AND

    Defendants.          FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se in this civil rights action brought pursuant to 42 U.S.C. § 1983.[1] In his complaint, plaintiff has named nineteen defendants, all of whom are represented by private counsel.[2] The pending motion for summary judgment is brought solely on behalf of defendant Jackson. Plaintiff has filed a timely opposition and defendant has filed a reply.

/////

---

[1] Plaintiff's complaint also contains state tort claims under the court's supplemental jurisdiction. Plaintiff describes his state law claims as "torts of assault and battery and negligence." (Compl. at 4.) None of those claims are alleged against moving defendant Jackson.

[2] Defendants Shepard, Petteway and Allen are represented by counsel Jerome Varanini of Trimble, Sherinian & Varanini. The remaining sixteen defendants, including defendant Jackson, are represented by Kathleen Williams and Matthew Wilson of Williams and Associates, who have filed the pending motion.

1

In his complaint plaintiff claims that in 2005, while he was a pretrial detainee at the Solano County Jail, defendant Chaplain Jackson unlawfully promoted the Christian faith and denied plaintiff an Arabic Quran[3] in violation of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment and the Religious Freedom and Restoration Act (RFRA). Specifically, plaintiff alleges that defendants Jackson and Sheriff Stanton[4]

> authorize[d] and use[d] Solano County Jail funds to purchase Christian bibles [sic] to the exclusion of books of other faiths such as Qurans or book of Mormons thus denying plaintiff and other pretrial detainees who are not Christians the oppertunity [sic] to access religious materials of their specific faith.

(Compl. ¶ 128, at 25.) Plaintiff also alleges that both defendants violated his rights under the Equal Protection Clause and RFRA. (Id. ¶ 184, at 39.) Plaintiff seeks a judgment declaring

> Defendant[s] Stanton and Jackson's action of restricting plaintiff and all other non-Christians from obtaining religious books and literature from Solano County sources violates the plaintiffs rights under the Religious Freedom Restoration Act.

(Compl. at 43.)

**SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[3] The court notes that there are several proper spellings for "Koran," including "Quran" and "Qur'an." The court will adopt the spelling that was used by plaintiff throughout his complaint and his opposition to the motion for summary judgment.

[4] Defendant Stanton has not joined with defendant Jackson in the pending motion but previously moved to dismiss plaintiff's claims against him concerning the jail law library and the inmate appeal system. On September 20, 2007, the court granted that motion and dismissed all claims against defendant Stanton regarding inmate grievances, the inmate appeal system, and the adequacy of law library services.

1  together with the affidavits, if any," which it believes demonstrate
2  the absence of a genuine issue of material fact.

3  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the
4  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary
5  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers
6  to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered,
7  after adequate time for discovery and upon motion, against a party who fails to make a showing
8  sufficient to establish the existence of an element essential to that party's case, and on which that
9  party will bear the burden of proof at trial.  See <u>id.</u> at 322.  "[A] complete failure of proof
10 concerning an essential element of the nonmoving party's case necessarily renders all other facts
11 immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as
12 whatever is before the district court demonstrates that the standard for entry of summary
13 judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.

14  If the moving party meets its initial responsibility, the burden then shifts to the
15 opposing party to establish that a genuine issue as to any material fact actually does exist.  See
16 <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to
17 establish the existence of this factual dispute, the opposing party may not rely upon the
18 allegations or denials of its pleadings but is required to tender evidence of specific facts in the
19 form of affidavits, and/or admissible discovery material, in support of its contention that the
20 dispute exists.  See Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party
21 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
22 of the suit under the governing law, see <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
23 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir.
24 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
25 return a verdict for the nonmoving party, see <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433,
26 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On December 8, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. Defendant's Statement of Undisputed Facts and Evidence

Relying on his own declaration, three attached exhibits, and plaintiff's response to a request for admission, defendant Jackson contends that the following facts are undisputed.

1  Defendant Alvin Jackson is the custody chaplain at the Solano County Jail. (Mot. for Summ. J.
2  (MSJ), Def.'s Decl. dated July 26, 2007, ¶ 1, at 1.) His duties are to coordinate the religious
3  activities within the Custody Division, to ensure that the various religious needs of the inmates
4  are met, and to make religious services available to inmates on a voluntary basis. (<u>Id.</u>)

5  The Solano County Jail orders a variety of religious texts to accommodate the
6  religious beliefs of its inmates. (<u>Id.</u> ¶ 3, at 1.) In this regard, defendant has submitted copies of
7  two invoices showing the receipt of 30 Qurans delivered to the Solano County Sheriff's Office
8  on or about February 14, 2005, and another shipment of 50 Qurans delivered on or about June
9  21, 2005. (<u>Id.</u> ¶ 4, at 2 & Exs. A & B.) The Solano County Jail maintains a stock of Qurans
10 translated into English. (<u>Id.</u> ¶4, at 2.) Because it is "extremely rare" for an inmate to be fluent in
11 Arabic and the Arabic Quran is more expensive, the Jail stocks only two or three copies of the
12 Quran in Arabic. (<u>Id.</u> ¶ 5, at 2.) If an inmate requests an Arabic Quran, defendant Jackson
13 inquires whether the inmate speaks Arabic. (<u>Id.</u> ¶ 6, at 2.) Only inmates who speak Arabic are
14 provided with the Quran in Arabic. (<u>Id.</u>) Defendant Jackson also states that,

> [a]s the Custody Chaplain, it has been necessary for me to become familiar with the dictates of the many different religions of the inmates who are housed at the Solano County Jail. Within the Islamic religion, it is not mandated that a follower read the Quran in Arabic.

18 (<u>Id.</u> ¶ 7, at 2.)

19  If an inmate desires a religious text, he must submit an inmate request form. (<u>Id.</u> ¶
20 8, at 2.) In 2005, the form would have been routed to defendant Jackson. (<u>Id.</u>) In the summer of
21 2005, defendant received plaintiff's request for a Quran and gave custody staff a copy of the
22 English translation of the Quran for plaintiff's use. (<u>Id.</u> ¶ 9, at 2.) Plaintiff refused to accept the
23 copy of the Quran, stating that he wanted an Arabic version of the Quran. (<u>Id.</u> ¶ 10 at 3.)
24 Defendant informed plaintiff of the substantial cost of a Quran in Arabic and asked plaintiff if he
25 spoke Arabic. (<u>Id.</u>). Plaintiff stated that he did not speak Arabic. (<u>Id.</u>) In an effort to
26 accommodate plaintiff's wishes, defendant went to the jail's library, located an edition of the

5

1  Quran translated into English but which included "a good deal of Arabic writing as well," and
2  provided plaintiff with that edition. (Id. ¶ 11, at 3.)

## II. Plaintiff's Declaration

Plaintiff offers a declaration dated August 13, 2007. Plaintiff states that he arrived at the Solano County Fairfield Detention Facility on June 29, 2005 and soon began sending request forms to defendant Jackson for Islamic prayer books and a Quran in Arabic. (Pl.'s Decl. filed Aug. 17, 2007, ¶¶ 2-3, at 1.) From June to mid-August of 2005, plaintiff observed that Christian literature and many different versions of the Old and New Testament Bible were "freely distributed to any inmate who requested them." (Id. ¶ 5, at 2.) Defendant Jackson posted a memorandum offering four different kinds of Bibles but no Qurans. (Id. ¶ 6, at 2.) From June 2005 to January 2006, plaintiff was not provided Islamic prayer books or a Quran in Arabic. (Id. ¶ 9, at 7.)

Plaintiff states that having a Quran in Arabic is critical to the exercise of his religion because "[t]he Islamic religious text known as the Holy Quran is the revelation of God and it was reveralled [sic] in Arabic." (Id. ¶ 16 at 4.)

> . . . . People such as myself turned to the Arabic language and are learning it out of our desire to understand the Book of Allah. This is why learning Arabic is a must; in fact it is a necessity in order for a Muslim to really get to the foundation of his faith.
>
> Chaplain Jackson denied me a Quran in Arabic and in so doing denied me the oppertunity [sic] to pray according to my religious beliefs, denied me an oppertunity [sic] to study the Quran, and denied me the joy of my Islamic religious experience.
>
> English translations of the Quran are not Holy Qurans. They are very simply a vehicle in which to facilitate an English speaking and reading person to get a first look in the maricles [sic] of the Holy Quran.
>
> In respect to the holy text of the Quran revealed in Arabic, no translation in any other language can substitute for the actual Arabic text.

(Id. ¶¶ 20-23 at 5.)

6

1   Plaintiff states, "I can speak Arabic, in that I can vocalize Quranic Arabic during
2   my prayers [and] can read Quranic Arabic at a rudimentary level." (Id. ¶ 19, at 4.) Plaintiff does
3   not recall whether defendant asked him if he spoke Arabic but states that, if defendant had asked,
4   he would have answered yes with an explanation. (Id. ¶ 26, at 6.) Plaintiff states that defendant
5   Jackson was responding to plaintiff's grievance, not trying to accommodate plaintiff, when he
6   located another English translation of the Quran with editorial Arabic within it. (Id. ¶ 30, at 6.)

III. Judicial Notice

    In support of his summary judgment motion, defendant has lodged a copy of the decision in Gittlemacker v. Prasse, 428 F.2d 1 (3rd Cir. 1970), and requests that the court take judicial notice of the decision. Defendant offers no legal basis for taking judicial notice of a reported decision in an unrelated case. It appears that defendant intends to cite the case as authority supporting his motion for summary judgment. The improper request for judicial notice will be denied.

    In reply to plaintiff's opposition, defendant requests that judicial notice be taken of the facts that the Arabic language employs the Arabic alphabet and the English language employs the Latin or Roman alphabet. There is no showing that the nature of the Arabic language or its alphabet is at issue in the pending motion. Accordingly, this request for judicial notice will be denied as well.

**ANALYSIS**

    It is undisputed that in the summer of 2005, while plaintiff was a pretrial detainee at the Solano County Jail, defendant provided plaintiff with a copy of an English translation of the Quran and, after plaintiff refused that copy of the Quran because it was not in Arabic, defendant provided plaintiff with a copy of the Quran translated into English but containing some Arabic writing.

    Plaintiff's Arabic language skills are disputed. Defendant states that he asked plaintiff if he spoke Arabic and plaintiff indicated that he did not. (Def.'s Decl. ¶ 10, at 3.)

7

1  Plaintiff states that he can "vocalize Quranic Arabic during my prayers" and "can read Quranic
2  Arabic at a rudimentary level."  (Pl.'s Decl. ¶ 19 at 4.)

3  I.  First Amendment Claim Against Defendant Jackson

4  The First Amendment of the U.S. Constitution provides that "Congress shall make
5  no law respecting an establishment of religion, or prohibiting the free exercise thereof."  The first
6  clause is called the Establishment Clause and commands a separation of church and state.
7  Cutter v. Wilkinson, 544 U.S. 709, 719 (2005).  The second clause is called the Free Exercise
8  Clause and "requires government respect for, and noninterference with, the religious beliefs and
9  practices of our Nation's people."  Id.

10  Although prisoners retain their First Amendment rights, incarceration brings about
11  the necessary withdrawal or limitation of many privileges and rights.  O'Lone v. Estate of
12  Shabazz, 482 U.S. 342, 348 (1987).  Therefore, "when a prison regulation impinges on inmates'
13  constitutional rights, the regulation is valid if it is reasonably related to legitimate penological
14  interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).

15  A.  Free Exercise Clause

16  Before proceeding with a Turner analysis, the court considers the parties'
17  contentions about whether plaintiff's free exercise of his religion was substantially burdened
18  when he was not provided a Quran in Arabic.  Defendant argues that plaintiff's exercise of his
19  religious beliefs was not substantially burdened because defendant provided plaintiff with a copy
20  of the Quran translated into English and a copy of another English version of the Quran that
21  contained some Arabic text.  Plaintiff, on the other hand, argues that the "most basic necessities
22  of his faith" are the Quran in Arabic and prayer literature. (Pl.'s Mem. of P. & A. (Pl.'s P&A) at
23  7.)  Plaintiff asserts that the Islamic religion requires prayer five times a day in Arabic and that he
24  was unable to recite prayers in Arabic due to defendant Jackson's refusal to provide a Quran in
25  Arabic.  (Id. at 7-8.)  In reply, defendant denies that the Islamic religion mandates that a follower
26  read the Quran in Arabic.  (Def.'s Reply at 2-3.)  Defendant asserts that plaintiff indicated he did

not speak Arabic and therefore defendant reasonably provided a Quran in a language plaintiff does speak. (Id. at 3.)

Based on a Ninth Circuit decision issued after defendant Jackson's motion was briefed, Shakur v. Schriro, ___ F.3d ___, ___, No. 05-16705, 2008 WL 185496 (9th Cir. Jan. 23, 2008), the court finds it unnecessary to scrutinize plaintiff's religion and religious beliefs. In Shakur, "the parties dispute[d] whether a prisoner must objectively show that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause." Id. at *3. The Court of Appeals heeded the admonitions of the Supreme Court and concluded that "'[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds'" Id. *3 (quoting Hernandez v. C.I.R., 490 U.S. 680, 699 (1989)). The appellate court concluded that a subjective test, or a "sincerity test," applies. Id. Under this test, if the prisoner has a sincerely held belief that is consistent with his faith, the Free Exercise Clause is implicated. Id. at *3-4.

In light of the decision in Shakur, this court does not ask whether plaintiff's practice of his religion was substantially burdened when he was provided an English translation of the Quran rather than a Quran in Arabic. Instead, the court considers whether plaintiff has a sincere belief that having a Quran in Arabic is necessary for the free exercise of his religion. Plaintiff declares that translated Qurans are not Holy Qurans and that "Chaplain Jackson denied me a Quran in Arabic and in so doing denied me the oppertunity [sic] to pray according to my religious beliefs, denied me an oppertunity [sic] to study the Quran, and denied me the joy of my Islamic religious experience." (Pl.'s Decl ¶¶ 21 & 24, at 5.) The court finds that plaintiff's assertions satisfy the sincerity test.

Turning to the Turner analysis, the court finds that defendant Jackson has not argued that denying plaintiff a Quran in Arabic, or failing to provide plaintiff with such a Quran, is reasonably related to a legitimate governmental interest. Defendant has not met his initial burden of establishing the absence of a genuine issue of material fact on this point. Defendant's

motion for summary judgment should be denied with respect to plaintiff's claim under the Free Exercise Clause of the First Amendment.

B. <u>Establishment Clause</u>

The Establishment Clause "'mandates governmental neutrality between religion and religion, and between religion and nonreligion.'" <u>McCreary County, Ky. v. ACLU</u>, 545 U.S. 844, 860 (2005) (quoting <u>Epperson v. Arkansas</u>, 393 U.S. 97, 104 (1968)). Thus, the Clause bars official approval or disapproval of any particular religion or religious belief or religion in general. <u>Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah</u>, 508 U.S. 520, 532 (1993); <u>American Family Ass'n, Inc. v. City and County of San Francisco</u>, 277 F.3d 1114, 1120-21 (9th Cir. 2002).

Defendant Jackson argues that there was no Establishment Clause violation in this case because the Solano County Jail accommodates the religious beliefs of its inmates by providing a variety of religious texts. As evidence of the availability of Qurans for Muslim inmates, defendant submits invoices showing that the Solano County Sheriff's Office, which operates the Solano County Jail, purchased eighty copies of the modern English version of the Quran around the time of plaintiff's incarceration at the jail. Plaintiff argues that defendant's purchase of "large vollumes [sic] of Bibles and Christian literature" promotes the Christian religion, as does freely providing religious materials to Christians while requiring Muslim inmates to be proficient in Arabic in order to obtain an Arabic Quran.

The basic test for determining whether there is an Establishment Clause violation was articulated in <u>Lemon v. Kurtzman</u>, 403 U.S. 602 (1971). <u>Inouye v. Kemna</u>, 504 F.3d 705, 713 n.7 (9th Cir. 2007). In <u>Lemon</u>, the Supreme Court adopted a three-part test: (1) whether the government has acted with a religious purpose; (2) whether the primary effect of the government's action is to advance or inhibit religion; and (3) whether the conduct fosters "an excessive government entanglement with religion." 403 U.S. at 612-13.

Under the first prong of the test, "[w]hen the government acts with the ostensible and predominant purpose of advancing religion, it violates that central Establishment Clause

10

1  value of official religious neutrality, there being no neutrality when the government's ostensible
2  object is to take sides." McCreary County, 545 U.S. at 860 (affirming decision that posting the
3  Ten Commandments at courthouses violates the Establishment Clause).  When applying this
4  prong of the test, the court's analysis "focuses purely on *purpose*" and "do[es] not question the
5  propriety of the means to achieve that purpose or whether the defendants were correct or even
6  reasonable in the assumptions underlying their actions."  American Family Ass'n, Inc. v. City
7  and County of San Francisco, 277 F.3d 1114, 1121 (9th Cir. 2002).

8  　　　　　As custody chaplain at the Solano County Jail, defendant Jackson coordinates
9  religious activities for inmates, ensures that the religious needs of inmates are met, and makes
10 religious services available to inmates on a voluntary basis.  Defendant Jackson declares that he
11 has attempted to become familiar with many different religions in order to make a variety of
12 activities, materials, and services available to inmates who wish to practice their religions while
13 confined.  A variety of religious texts, including dozens of Qurans translated into English, are
14 purchased by the Solano County Jail.  There is no evidence that defendant Jackson carries out his
15 duties with the ostensible and predominant purpose of advancing a single religion or that he
16 violated the Establishment Clause value of official religious neutrality.  The court finds that
17 defendant Jackson's provision of religious texts and materials was for the secular purpose of
18 enabling inmates to exercise their First Amendment right to free exercise of their religion.  In
19 applying the first prong of the Lemon test, the court does not question the propriety of the
20 defendant's means of achieving the secular purpose and does not consider whether the defendant
21 acted reasonably in the assumptions underlying his actions.

22 　　　　　Under the second prong of the test, "[a] government practice has the effect of
23 impermissibly advancing or disapproving of religion if it is 'sufficiently likely to be perceived by
24 adherents of the controlling denominations as an endorsement, and by nonadherents as a
25 disapproval, of their individual religious choices.'" Stoner v. Stogner, No. 3:06-cv-00324-LRH
26 (VPC), 2007 WL 4510202, at *11 (D. Nev. Dec. 17, 2007) (quoting County of Allegheny v.

1  ACLU, 492 U.S. 573, 596 (1989) (internal citations omitted)).  Here, it is not likely that
2  adherents of the Christian faith would perceive defendant's practice of providing Muslim inmates
3  with Qurans translated into English as an endorsement of Christianity, or that Muslim inmates
4  would perceive the provision of Qurans translated into English as a disapproval of their religious
5  choice.  Therefore, plaintiff's Establishment Clause claim also fails under the second prong of
6  the Lemon test.
7       Plaintiff has not alleged or made any showing that defendant Jackson's provision
8  of religious materials to inmates fosters "an excessive government entanglement with religion."
9  Thus, plaintiff's claim also fails the third prong of the Lemon test.
10      Accordingly, summary judgment should be granted in favor of defendant Jackson
11 with respect to plaintiff's Establishment Clause claim.
12 II.  Equal Protection Claim
13      Defendant Jackson argues that he did not discriminate against Muslim inmates
14 and that plaintiff was provided a reasonable opportunity to pursue his religious faith.  In addition,
15 defendant contends that the Jail orders a variety of religious texts to accommodate the religious
16 beliefs of its inmates.  Defendant offers evidence that the Jail has ordered and received copies of
17 the Quran which are made available to inmates who request a copy of the Quran.  Plaintiff
18 disagrees with defendant's assertion that both Bibles and Qurans are freely distributed to any
19 inmate who requests them.  Plaintiff argues that his right to equal protection was violated
20 because defendant Jackson uses a language-test to restrict the number of inmates who may obtain
21 a Quran in Arabic.
22      The Equal Protection Clause
23 requires the State to treat all similarly situated people equally.
   Moreover, the Equal Protection Clause entitles each prisoner to "a
24 reasonable opportunity of pursuing his faith comparable to the
   opportunity afforded fellow prisoners who adhere to conventional
25 religious precepts."
26 /////

Shakur, ___ F.3d ___, ___, 2008 WL 185496, at *9 (internal citations omitted).  A plaintiff asserting a violation of the Equal Protection Clause must show that the defendant acted with a discriminatory intent or purpose that was based upon the plaintiff's membership in a protected class.  Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003).  The court must then apply the Turner test to determine whether any difference between the treatment of the plaintiff and the treatment of other inmates is reasonably related to legitimate penological interests.  Shakur, 2008 WL 185496, at *10.

Defendant Jackson has carried his initial burden with regard to intent by submitting a declaration in which he states that Bibles and Qurans are freely distributed to any inmate who requests them.  (Def.'s Decl. ¶ 3, at 1.)  In support of his contention that religious materials are purchased to accommodate the religious practices of Muslim inmates, defendant Jackson has provided evidence that between February and June of 2005 eighty Qurans were purchased for inmates.  (Id. ¶ 4, at 2 & Exs. A & B.)  Defendant Jackson further declares that it is extremely rare for the Jail to receive an inmate fluent in Arabic and that therefore the Jail keeps in stock only two or three copies of the Quran in Arabic for provision to inmates who speak Arabic.  (Id. ¶ 5, at 2.)  When defendant Jackson receives an inmate's request for a copy of the Quran in Arabic, his practice is to inquire whether the inmate speaks Arabic and to provide a copy of the Quran in the language the inmate speaks.  (Id. ¶ 6, at 2.)

To defeat defendant Jackson's motion for summary judgment on the equal protection claim, plaintiff "'must set forth specific facts showing that there is a genuine issue' as to whether he was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths" and that "officials intentionally acted in a discriminatory manner." Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), abrogated on other grounds by Shakur, ___ F.3d ___, ___, 2008 WL 185496, at *3.  Plaintiff has failed to set forth specific facts showing that defendant Jackson provided inmates of other faiths with copies of religious texts in languages not spoken by those inmates.  The court finds that plaintiff was provided a reasonable opportunity to pursue

his faith comparable to the opportunity afforded inmates who adhere to other faiths. On the present record, there is no evidence that defendant Jackson acted in an intentionally discriminatory manner. Therefore, defendant Jackson's motion for summary judgment on plaintiff's equal protection claim should be granted.

The court notes that plaintiff's argument with respect to "religious disparity" concludes as follows:

> On the issue of religious disparity the plaintiff has not yet completed discovery and the documentary statistics are in the sole possession of the moving party based upon Rule 56(f) FRCP and Klingele v. Eikenberry, 849 F.2d 409, 412-413 (9th Cir. 1988). The motion for summary judgment should be denied, or at least stay it.

(Pl.'s P&A at 6.)

Rule 56(f) provides:

> If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>
> (3) issue any other just order.

Fed. R. Civ. P. 56(f) (eff. Dec. 1, 2007). A party seeking denial or continuance of a summary judgment motion is required to file a motion requesting discovery under Rule 56(f). Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986). The party must demonstrate that there are specific facts he hopes to discover that will raise an issue of material fact. Harris v. Duty Free Shoppers Ltd. Partnership, 940 F.2d 1272, 1276 (9th Cir. 1991); Carpenter v. Universal Star Shipping, S.A., 924 F.2d 1539, 1547 (9th Cir. 1991). "The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists." Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir. 1987).

14

1  See also Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1306 n.1
2  (9th Cir. 1986) (holding that the party opposing summary judgment "has the burden under Rule
3  56(f) to show what facts [he] hopes to discover to raise an issue of material fact"). "Denial of a
4  Rule 56(f) application is proper where it is clear that the evidence sought is almost certainly
5  nonexistent or is the object of pure speculation." Terrell v. Brewer, 935 F.2d 1015, 1018 (9th
6  Cir. 1991).

7  Plaintiff has offered no affidavit in support of his conclusory request to deny or
8  stay defendant Jackson's motion for summary judgment on the issue of religious disparity.
9  Although plaintiff has not specified any essential fact that would be established by "documentary
10 statistics" not in his possession, his arguments and citations suggest that he hopes to establish
11 that defendant Jackson stocks a large supply of Bibles and only a few Qurans in Arabic. These
12 facts are not disputed, and further evidence as to the precise number of Bibles in stock at the
13 Solano County Jail is not relevant to the dispositive issue of defendant's intent. Plaintiff has not
14 alleged that defendant Jackson freely provides non-English versions of religious texts to inmates
15 not fluent in a language other than English. There is no indication that plaintiff's discovery of
16 unspecified statistics would permit him to establish a genuine issue of material fact on the issue
17 of whether defendant Jackson acted with discriminatory intent. In addition, this action was filed
18 in 2005, and plaintiff has had sufficient time to conduct discovery to obtain evidence needed to
19 support his equal protection claim and to oppose summary judgment. For these reasons,
20 plaintiff's request to deny or stay defendant Jackson's motion for summary judgment will be
21 denied.

22 III. Federal Statutory Claim

23  Although plaintiff sought relief based on the Religious Freedom Restoration Act
24 (RFRA), plaintiff now requests that the court apply the Religious Land Use and Institutionalized
25 Persons Act of 2000 (RLUIPA), which was in effect at the time plaintiff filed his complaint. The
26 court is required to liberally construe the inartful pleading of pro se litigants. McGuckin v.

Smith, 974 F.2d 1050, 1055 (9th Cir. 1992). Therefore, the court will construe plaintiff's federal statutory claim as a RLUIPA claim, rather than a RFRA claim.

In opposition to defendant Jackson's motion, plaintiff argues that the defendant placed a burden on plaintiff's exercise of his religion by requiring, without a compelling governmental interest, that plaintiff speak Arabic in order to receive an Arabic Quran. In reply, defendant Jackson argues that no burden was placed on plaintiff's religious exercise and that defendant facilitated plaintiff's religious exercise by providing plaintiff with two Qurans.

RLUIPA provides that

> "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden is "in furtherance of a compelling government interest" and is "the least restrictive means of furthering that . . . interest."

Shakur, ___ F.3d ___, ___, 2008 WL 185496, at *6 (quoting 42 U.S.C. § 2000cc-1(a)). The first step in analyzing a RLUIPA claim is to identify the "religious exercise" allegedly impinged, and the second step is to ask whether the defendant's action "substantially burdens" that religious exercise. Greene v. Solano County Jail, ___ F.3d ___, ___, No. 06-16957, 2008 WL 170313, at *3 (9th Cir. Jan. 22, 2008). "Religious exercise" is defined by RLUIPA as "'*any* exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" Id. (quoting 42 U.S.C. § 2000cc-5(7)(A)) (emphasis added in Greene).

Here, the religious exercise is having access to an Arabic Quran. As to whether there was a substantial burden on that religious exercise, plaintiff declares under penalty of perjury that only an Arabic Quran is a Holy Quran and that when he was denied a Quran in Arabic he was denied the opportunity to pray according to his religious beliefs and to study and learn the Arabic language. (Pl.'s Decl. ¶¶ 20-22, at 4-5.)

For summary judgment, the evidence of the opposing party is to be believed. Therefore, the court finds that plaintiff's religious exercise was substantially burdened when he

was not provided an Arabic Quran, and since defendant Jackson has neither argued nor shown that a compelling governmental interest was furthered by his denial of an Arabic Quran, the defendant's motion should be denied as to plaintiff's RLUIPA claim.

IV. Qualified Immunity

Finally, defendant Jackson seeks summary judgment in his favor, arguing that even if it were to be found that plaintiff's rights were violated, no jail chaplain would have reasonably believed that providing an English translation of the Quran to plaintiff under these circumstances violated any clearly established right of plaintiff's. However, because plaintiff has not requested monetary damages from defendant Jackson and seeks only declaratory judgment against him, defendant Jackson is not entitled to qualified immunity. See Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) ("[Q]ualified immunity is only an immunity from a suit for damages, and does not provide immunity from suit for declaratory or injunctive relief."); Presbyterian Church (U.S.A.) v. U.S., 870 F.2d 518, 527 (9th Cir. 1989) ("Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief."). Therefore, defendant Jackson is not entitled to qualified immunity as to plaintiff's claims against him.

V. Briefing Requirement

In his reply to plaintiff's opposition, defendant Jackson notes that plaintiff failed to comply with Local Rule 56-260(b), which requires a party opposing a summary judgment motion to itemize the facts in the moving party's Statement of Undisputed Facts, admit each fact that is undisputed, and deny each fact that is disputed, including with each denial a citation to evidence that supports the existence of a dispute. Although plaintiff provided a separate statement of disputed facts, as permitted by the rule, he did not comply with the rule regarding the moving party's Statement of Undisputed Facts. Plaintiff is cautioned that he must comply with Local Rule 56-260(b) in his opposition to subsequent summary judgment motions.

/////

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant Jackson's July 26, 2007 request for judicial notice is denied.

2. Defendant Jackson's August 23, 2007 request for judicial notice is denied; and

3. Plaintiff's August 17, 2007 request to deny or stay defendant Jackson's summary judgment motion is denied.

Also, IT IS HEREBY RECOMMENDED that defendant Jackson's July 26, 2007 motion for summary judgment be granted in part and denied in part, as follows:

1. Summary judgment be granted on plaintiff's claims against defendant Jackson under the Establishment Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment and those claims be dismissed against defendant Jackson; and

2. Summary judgment be denied on plaintiff's claims against defendant Jackson under the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within five days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 25, 2008.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
low2211.57relig.rev