IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TONY RICHARD LOW,

    Plaintiff,                     No. CIV S-05-2211 MCE DAD P

    vs.

GARY R. STANTON, et al.,

    Defendants.            FINDINGS AND RECOMMENDATIONS

                              /

           Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. The incidents about which plaintiff complains in this action allegedly took place while plaintiff was confined at the Solano County Jail as a pretrial detainee. Before the court is a motion for summary judgment brought on behalf of defendants David Shepard, Deborah Petteway and Michelle Allen pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] Plaintiff has filed a timely opposition to the motion. Defendants have filed a reply.

/////

---

[1] Moving defendants Shepard, Petteway and Allen are represented by Jerome Varanini of Trimble, Sherinian & Varanini. The remaining sixteen defendants, represented by Kathleen Williams and Matthew Wilson of Williams and Associates, are proceeding separately. In that regard, a motion for summary judgment brought on behalf of defendant Chaplain Jackson with respect to claims against him will be addressed in separate findings and recommendations.

1

# SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. <u>See</u> <u>Anderson</u>, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See <u>Matsushita</u>, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

/////

On December 8, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

**OTHER APPLICABLE LEGAL STANDARDS**

I. Civil Rights Act Pursuant to 28 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. Fourteenth Amendment and Adequate Medical Care

Because a pretrial detainee has not been convicted of a crime, but has only been arrested, the detainee's right to receive adequate medical care derives from the substantive Due

4

1  Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's protection
2  against cruel and unusual punishment.  Gibson v. County of Washoe, Nevada, 290 F.3d 1175,
3  1187 (9th Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520 (1979), Frost v. Agnos, 152 F.3d
4  1124, 1128 (9th Cir. 1998) and Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996)).
5  Nevertheless, the Due Process Clause imposes, at a minimum, the same duty to provide adequate
6  medical care to those incarcerated as imposed by the Eighth Amendment:  "'persons in custody
7  ha[ve] the established right to not have officials remain deliberately indifferent to their serious
8  medical needs.'"  Gibson, 290 F.3d at 1187 (quoting Carnell, 74 F.3d at 979).  Therefore, the
9  court may properly rely on decisions involving claims of inadequate medical care applying the
10 Eighth Amendment standards.

11         Where a prisoner's Eighth Amendment claims arise in the context of medical
12 care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence
13 deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth
14 Amendment medical care claim has two elements:  "the seriousness of the prisoner's medical
15 need and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d
16 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d
17 1133 (9th Cir. 1997) (en banc).

18         A medical need is serious "if the failure to treat the prisoner's condition could
19 result in further significant injury or the 'unnecessary and wanton infliction of pain.'"
20 McGuckin, 974 F.2d at 1059 (quoting Estelle v. Gamble, 429 U.S. at 104).  Indications of a
21 serious medical need include "the presence of a medical condition that significantly affects an
22 individual's daily activities."  Id. at 1059-60.  By establishing the existence of a serious medical
23 need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation.
24 Farmer v. Brennan, 511 U.S. 825, 834 (1994).

25         If a prisoner establishes the existence of a serious medical need, he must then
26 show that prison officials responded to the serious medical need with deliberate indifference.

Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may also be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). See also McGuckin, 974 F.2d at 1060.

Finally, mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

/////
/////
/////


**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I. <u>Defendants' Statement of Undisputed Facts and Evidence</u>

The motion for summary judgment pending before the court is supported by declarations from defendants Shepard, Petteway and Allen, plaintiff's medical records and other documents from the Solano County Jail. The evidence submitted by the defendants establish the facts set forth below.

Defendant Dr. Shepard is retained by the California Forensic Medical Group, Inc. as an independent contractor to provide medical services at the Solano County Jail. (Mot. for Summ. J. (MSJ), Shepard Decl. ¶ 3, at 2.) Defendant Petteway is employed by the California Forensic Medical Group, Inc. as a physician's assistant at the Solano County Jail. (MSJ, Petteway Decl. ¶ 2(e), at 2.) Defendant Allen is a licensed vocational nurse employed at the Solano County Jail. (Defs.' Reply, Allen Decl. ¶1 at 1.)

On July 14, 2005, plaintiff was seen by medical staff on intake at the Solano County Jail. (Mot. for Summ. J. (MSJ), Petteway Decl., ¶ 4, at 2.) Defendant Allen, a licensed vocational nurse, performed a routine health inventory and communicable disease assessment. (Defs.' Reply, Allen Decl., ¶ 2 at 1.) Defendant Allen does not recall plaintiff complaining about any tooth pain on that date. (Defs.' Reply, Allen Decl. ¶ 4, at 2.) On August 4, 2005, plaintiff was seen by nursing staff. Plaintiff was given motrin for his tooth pain and placed on dental sick call. (MSJ, Petteway Decl. ¶ 5 at 2.) Plaintiff submitted inmate request forms dated August 3, 2005 and August 4, 2005, indicating that he had an "abcested tooth" [sic] and that he was "in a lot of pain." (Defs.' Reply, Allen Decl., Ex. D.)

In response to his August 3 request form, plaintiff was placed on the medical sick call list for August 5, 2005. (Defs.' Reply, Allen Decl., Ex. D.) On August 5, 2005, plaintiff was examined by defendant Dr. Shepard who ordered that motrin be continued for the tooth pain and prescribed the antibiotic, amoxicillin. (MSJ, Shepard Decl. ¶ 6 at 3.) Defendant Shepard also

/////

7

ordered that plaintiff be scheduled for dental sick call.  Defendant Shepard describes this dental sick call system as follows:

> The dental sick call list is created and maintained by the dental services separate and apart from medical.  Once a referral is made by medical to the dental care, the dental service prioritizes the persons on their list using their own assessment and criteria.  Typically, neither medical nor I would have knowledge as to the outcome of dental sick call until medical has occasion once again to see or hear from the patient.

(Id.)

In response to a request form dated August 4, 2005, plaintiff was placed on the August 10, 2005 medical sick call list. (Defs.' Reply, Allen Decl., Ex. D.)  Because plaintiff was out to court that day, his sick call date was rescheduled. (Defs.' Reply, Allen Decl., Ex. F.)  On August 11, 2005, plaintiff was seen by defendant Petteway, a physician's assistant, who has stated with respect to that appointment as follows:

> I examined the patient and noted the presence of a broken tooth and complaints of pain.  I again ordered that the patient be placed on dental sick call with a Number 1 priority, the highest priority.  I also ordered pain medication as well as antibiotics.

(MSJ, Petteway Decl. ¶ 7 at 3.)

Plaintiff submitted a request form dated August 28, 2005, in which he requested to see the dentist and stated that his "'gum line has become infected again.'" (MSJ, Petteway Decl. ¶ 8 at 3.)  Plaintiff was seen by defendant Petteway again on August 29, 2005. (MSJ, Petteway Decl. ¶ 9 at 3.)  At that time plaintiff reported that he was suffering from a skin condition and that he had also not yet been seen by dental services. (Id.)  Defendant Petteway renewed the antibiotics and pain medication and again ordered that plaintiff be seen as a priority by dental sick call. (Id.)

Plaintiff next submitted a form dated September 5, 2005, requesting to be seen by dental services. (MSJ, Petteway Decl. ¶ 10, at 3.)  On September 8, 2005, plaintiff was seen once more by defendant Petteway. (MSJ, Petteway Decl. ¶ 11, at 3.)  At that time plaintiff refused to

1  take any more antibiotics.  (Id.)  Defendant Petteway renewed the order for plaintiff to be seen on

2  the "'next dental sick call."  (Id.)  Plaintiff's prescription for pain medication was renewed, but

3  the prescription for antibiotics was not.  (Id.)

4  Plaintiff submitted yet another treatment request form dated September 20, 2005,

5  in which he noted that he had still not been seen by dental services.  (MSJ, Petteway Decl. ¶ 12,

6  at 4.)  Plaintiff submitted yet another request form dated September 27, 2005.  (MSJ, Petteway

7  Decl. ¶ 13, at 4.)  Plaintiff was finally seen by a dentist on September 27, 2005 and received a

8  temporary filling and was continued on pain medication.  (Id.)  On October 18, 2005, plaintiff

9  was seen for further dental care at which time he had another filling replaced and was prescribed

10  ibuprofen for pain.  (MSJ, Petteway Decl. ¶ 14, at 4.)

11  Plaintiff submitted another request form dated October 20, 2005, requesting that

12  he be seen by a dentist for a broken tooth.  (MSJ, Petteway Decl. ¶ 15, at 4.)  On October 24,

13  2005, plaintiff was seen by defendant Petteway who ordered that plaintiff be seen again by dental

14  services.  (Id.)  This time, plaintiff was not seen by dental services until November 23, 2005, at

15  which time his temporary filling was replaced.  (MSJ, Petteway Decl. ¶ 16, at 4.)  Lastly, on

16  January 25, 2006, plaintiff was seen by dental services and the examination revealed no cavities

17  at that time.  (MSJ, Petteway Decl. ¶ 17, at 4.)

18  II.  Plaintiff's Opposition

19  Plaintiff opposes defendants' motion for summary judgment in their favor and

20  submits his own declaration, copies of his inmate request forms, medical progress notes, doctors'

21  orders, and dental records from the California Forensic Medical Group which were obtained

22  through discovery.  Plaintiff argues that the defendants were aware that he was in pain but

23  allowed his condition to continue for twelve weeks without proper treatment.  (Pl.'s Mem. P. &

24  A. (Pl.'s P&A), filed Aug. 17, 2007 at 9.)

25  Plaintiff contends that on July 14, 2005, he informed defendant Allen that he

26  needed to see a dentist.  (Pl.'s P&A at 2; Pl.'s Decl., filed Aug. 17, 2007, ¶ 5 at 1-2.)  According

to plaintiff, defendant vocational nurse Allen replied that she could not help him, that it was not her job to sign plaintiff up to see a doctor, and that he would have to fill out a request slip. (Pl.'s Decl. ¶ 6, at 2.) Plaintiff states that when he later told defendant nurse Allen that he had a chipped tooth and needed to see a dentist, defendant Allen merely responded, "Don't know what to tell you." (Id. ¶ 8, at 2.) Plaintiff argues that defendant Allen is not entitled to summary judgment in her favor because she has not countered plaintiff's version of these events.[2]

Plaintiff contends that it is undisputed that he submitted seven inmate request forms from August 3, 2005 to October 20, 2005 in an attempt to receive the dental treatment he needed. (Pl.'s P&A, at 2.) Plaintiff also asserts that it is undisputed that he received pain medication and antibiotics from defendants Shepard and Petteway on August 5, 2005, August 11, 2005, August 29, 2005, and September 8, 2005. (Id.) Plaintiff argues that defendants Shepard and Petteway were therefore aware that he required emergency dental care, yet they failed to obtain that treatment for plaintiff. (Id. at 6.) Plaintiff argues that the only way he could seek to obtain dental care was to submit an inmate request form and that he complied with the process at the jail by repeatedly submitting request forms without success. (Id. at 7-8.) Regardless of the inadequacies of the referral system for dental services at the Solano County Jail, plaintiff contends that the moving defendants were deliberately indifferent to his serious dental condition as demonstrated by their failure to obtain the care for him that he required. (Id. at 8.)

In his declaration, plaintiff provides further details regarding the urgency of his need for dental treatment. In this regard, plaintiff declares that after seeing defendant Shepard on August 5, 2005, he waited approximately one week for a dental appointment and during that time was "in extreme pain and could not eat hard foods." (Pl.'s Decl. ¶ 12, at 3.) After plaintiff had submitted another inmate request form, he was seen by defendant Petteway who prescribed pain medication and antibiotics and referred plaintiff to dental services to be seen as a "Number 1

---

[2] In response to plaintiff's argument in this regard, defendant Allen has provided her own declaration which was attached to the defendants' reply brief in support of the pending motion.

priority." (Id. ¶ 13. at 3.) Plaintiff had to submit another inmate request form on August 28, 2005 because his "gum line" had become infected. (Id. ¶ 14, at 3.) Plaintiff saw defendant Petteway on August 29, 2005, and Petteway ordered pain medication and antibiotics, and made a another dental referral that plaintiff be seen as a "number one" priority. (Id. ¶ 15, at 3.) On September 5, 2005, plaintiff submitted yet another inmate request form, stating that he had been waiting over a month to see a dentist. (Id. ¶ 16, at 3.) On September 8, 2005, plaintiff was seen by defendant physician's assistant Petteway and was told that he would be on the next dental visit. (Id. ¶ 17, at 4.) Petteway also ordered more pain medication for plaintiff at that time. (Id.) On September 20, 2005, plaintiff submitted another inmate request form addressed to defendant Shepard in which plaintiff stated that he had waited for over a month to see a dentist. (Id. ¶ 18, at 4.) . Plaintiff filled out another request form on September 27, 2005 and was finally seen by a dentist on that date. (Id. ¶¶ 19-20, at 4.)

Plaintiff declares that twelve weeks passed between the time he first notified defendant Allen about his need for dental care and when he first saw a dentist. (Id. ¶ 21, at 4.)[3] During the entire twelve weeks, plaintiff states that he was in "great pain," that he had difficulty eating, and that his gums became infected. (Id. ¶ 22, at 4.) Plaintiff also seeks to clarify that his need for dental treatment and unsuccessful attempts to obtain that treatment at the Solano County Jail included two entirely separate conditions. In this regard, plaintiff points out that on October 20, 2005, he submitted an inmate request form to see a dentist for his "broken teeth." (Id. ¶ 23, at 4.) In response, on October 24, 2005, defendant Petteway made a dental referral. However, plaintiff declares that he was not seen by the dentist for treatment of this condition until November 23, 2005. (Id. ¶¶ 23-24, at 4-5.) Thus, plaintiff argues that "[t]here was a complete
/////

---

[3] Plaintiff notes that seven and a half weeks passed after he first informed defendant Shepard of his need for dental care before he actually was allowed to see a dentist . (Pl.'s Decl. ¶ 21, at 4.)

11

1  lack of treatment during two periods of serious dental problems that I experienced." (Id. ¶ 25, at
2  5.)

3  **ANALYSIS**

4  The following facts are undisputed by the parties. Plaintiff submitted inmate
5  request forms concerning his abscessed tooth on August 3, 2005, August 4, 2005, August 28,
6  2005, September 5, 2005, and September 20, 2005. Plaintiff also submitted inmate request forms
7  concerning his "broken" tooth on September 27, 2005 and October 20, 2005. Plaintiff was seen
8  by defendant Allen on July 14, 2005 for a health inventory shortly after his incarceration.
9  Plaintiff was seen by defendant Shepard on August 5, 2005, and by defendant Petteway on
10 August 11, 2005, August 29, 2005, and September 8, 2005. It is also undisputed that each time
11 plaintiff was seen by defendant Shepard or defendant Petteway for the abscessed tooth,
12 defendants made a referral to dental services. On August 11, August 29, and September 8,
13 defendant Petteway requested that plaintiff be placed on the dental sick call list with the highest
14 priority. Plaintiff received dental services on September 27, 2005, October 18, 2005, and
15 November 23, 2005.

16 As noted above, the evidence submitted by plaintiff must be believed and all
17 reasonable inferences from the evidence submitted must be drawn in his favor in considering the
18 pending motion for summary judgment. Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587.
19 Viewing the evidence before the court in this light, the undersigned concludes that there are
20 genuine issues of material fact in dispute material to the question of whether defendants were
21 deliberately indifferent to plaintiff's serious dental needs. Put another way, the undersigned
22 concludes that the defendants have failed to establish that they are entitled to judgment in their
23 favor based upon the undisputed facts. In this regard, there is a factual dispute concerning
24 whether defendant Allen was aware of and ignored plaintiff's complaints of pain and requests for
25 dental treatment. Indeed, defendant Allen merely states in her declaration:
26 /////

> To the best of my recollection, Mr. Low did not complain of any tooth pain at the time of the July 14, 2005 assessment and he signed the form on that date. . . . I was never deliberately indifferent to any serious medical or dental complaint reported by Mr. Low. If I had been asked by him questions concerning the dental sick call process I would have told him that he needed to submit a sick call slip to indicate the process.

(Def.s' Reply, Allen Decl. ¶¶ 4, 8 at 2.) On the other hand, in his declaration, plaintiff recounts his interaction with defendant Allen during which the nurse was disinterested and unwilling to assist plaintiff in obtaining the needed dental treatment. Plaintiff also declares under penalty of perjury that following his appointment with defendant Allen, he was in "great pain the entire 12 week period waiting to see a dentist." (Pl.'s Decl. ¶ 22, at 4.) Plaintiff also declares that during that lengthy period of time he was attempting to obtain treatment, he had difficulty eating and that his gums became infected from lack of dental care. (Id.) Because there are disputed issues of material fact with respect to whether defendant Allen was deliberately indifferent to plaintiff's need for dental treatment, defendant Allen's motion for summary judgment should be denied.

The court reaches the same conclusion with respect to defendants Shepard and Petteway. Although these two defendants referred plaintiff to dental services on numerous occasions and repeatedly requested that he be given the highest priority for a dental appointment, the court is unable to conclude that there is no genuine issue as to whether these defendants were deliberately indifferent to plaintiff's need for dental treatment. In their declarations, defendants Shepard and Petteway provide only a cursory description of the referral system for dental treatment at the Solano County Jail. They merely explain in conclusory fashion that "dental service prioritizes the persons on their list using their own assessment and criteria." (MSJ, Shepard Decl. ¶ 6, at 3 and Petteway Decl. ¶ 6, at 2.) Defendants Dr. Shepard and physician's assistant Petteway imply that once a referral is made, they have no further responsibility.[4] In this

---

[4] The undersigned observes that this is becoming an increasingly familiar refrain by prison and jail medical staff in response to prisoner claims of inadequate medical care involving lengthy delays in basic treatment.

13

1  vein, Dr. Shepard states: "Typically, neither medical nor I would have knowledge as to the
2  outcome of dental sick call until medical has occasion once again to see or hear from the
3  patient." (Id. Shepard Decl. ¶ 6, at 3.)

4  In his opposition, plaintiff argues that he followed the only procedure that was
5  available to him for obtaining dental care. He submitted inmate request form after request form
6  as weeks passed with him not receiving the care he obviously needed.

7  As the Ninth Circuit has previously recognized:

> The medical staff must be competent to examine prisoners and
> diagnose illnesses. It must be able to treat medical problems or to
> refer prisoners to others who can. Such referrals may be to other
> physicians within the prison, or to physicians or facilities outside
> the prison if there is reasonably **speedy access** to these other
> physicians or facilities. In keeping with these requirements, the
> prison must provide an adequate system for responding to
> emergencies. If outside facilities are too remote or too inaccessible
> to handle emergencies promptly and adequately, then the prison
> must provide adequate facilities and staff to handle emergencies
> within the prison. These requirements apply to physical, dental
> and mental health.

Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982) (emphasis added).

In this case, the moving defendants have not sufficiently explained how the dental care and dental treatment referral system at the Solano County Jail operates.[5] For example, it is unclear to the court how a referral for dental treatment is made, which officials or professionals are involved in the referral process, how the "high priority" designation operates and whether such a designation is normally effective in obtaining timely dental treatment. All of those facts are relevant to the determination of whether the named defendants were deliberately indifferent to plaintiff's need for treatment in this case. Moreover, the moving defendants have not addressed whether they had any personal knowledge as to the effectiveness of the dental

---

[5] The court notes that dental services are provided by California Forensic Medical Group, Inc., the same entity that has retained defendant Dr. Shepard as an independent contractor to provide medical treatment at the Solano County Jail and employs defendant physician's assistant Petteway.

treatment referral system at the Solano County Jail, whether delays in providing treatment were commonplace, and whether they could have taken additional steps to secure the necessary treatment for plaintiff, such as inquiring as to the status of the referrals in his case.[6] The undersigned therefore finds that there are material questions of fact in dispute regarding whether the defendants' actions, or lack thereof, constituted deliberate indifference to plaintiff's serious dental treatment needs in violation of his rights under the Fourteenth Amendment. Accordingly, defendants Shepard and Petteway's motion for summary judgment should be denied.

## CONCLUSION

In accordance with the above, IT IS HEREBY RECOMMENDED that the motion for summary judgment filed on behalf of defendants Shepard, Petteway and Allen on August 1, 2007, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within five days after service of the objections. The parties are advised

/////
/////
/////
/////
/////

---

[6] The court notes that defendants do not appear to contest that plaintiff suffered harm due to the delay he experienced in receiving dental treatment. Nevertheless, the court finds that when plaintiff was finally seen by a dentist on September 27, 2005, he received more treatment than the temporary filling referred to by the moving defendants. Rather, according to plaintiff's dental records, a "lesion" was noted at that time and the dentist performed a procedure described as an "open & drain." (Pl.'s Exs., filed Aug. 17, 2007, "Dental Health Record" at p. 14 of 15.)

1. that failure to file objections within the specified time may waive the right to appeal the District
2. Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3. DATED: February 25, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
low2211.57med