1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TONY RICHARD LOW,

11            Plaintiff,                      No. CIV S–05-2211 MCE DAD P

12       vs.

13   GARY R. STANTON, et al.,

14            Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16            Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.[1]  Before the court are three motions for summary judgment, each brought

18   individually by defendants Driscoll, Mallory and Atkins.  Plaintiff opposes the motions and

19   defendants have filed their replies.  Because the three wide-ranging summary judgment motions

20   pending before the court raise similar issues and require similar analysis, all three motions will

21   be addressed in these findings and recommendations.

22   /////

23   /////

24

25            [1]  Plaintiff's complaint also sets out state law tort claims over which plaintiff seeks to
     have this court exercise its supplemental jurisdiction.  However, none of those claims are alleged
26   against the moving defendants.

                                           1

**BACKGROUND**

Plaintiff's claims arose in 2005, while he was a pretrial detainee at the Solano County Jail.  In his complaint, plaintiff names nineteen defendants and raises several claims, including the alleged use of excessive force, denial of medical care, denial of rights under the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), and denial of due process rights.

As to defendant Driscoll, plaintiff alleges as follows:

> The actions of defendants Stanton and Headly in concert with their subordinates defendants Clark, **Driscoll**, Childres, Jorgenson, Von Ting and Smith in using disciplinary isolation segregation and status for consecutive periods beyond ten days constitutes deliberate indifference to plaintiffs [sic] and all other pretrial detainees similarly situated right [sic] to effectively communicate with criminal defense attorneys over a telephone as other pretrial detainees in the County Jail.  This action denys [sic] the plaintiff and all pretrial detainees similarly situated equal protection of the law and violation of due process of the law in violation of the Fourteenth Amendment to the United States Constitution.[2]

(Compl. filed Nov. 2, 2005 at 34) (emphasis added).  This claim concerns plaintiff's placement on disciplinary isolation status and his subsequent transfer to a unit referred to as "Z Module." According to an incident report, on July 19, 2005, plaintiff's cell was being searched because maintenance had reported the tampering with an electrical outlet and missing parts.  "[T]he metal plate and two other metal objects from the outlet" were found in plaintiff's cell.  (Pl.'s Decl. in Support of Opp'n to Mot. for Summ. J., filed Mar. 19, 2008, Ex. E at 6.)  During the cell search, plaintiff suddenly ran out of the day room and behind two tool chests that located near the Tower 4 door.  (Id., Ex. E at 5.)  From the tool chest, plaintiff grabbed a spray can and pointed it at Officer Garrison.  (Id.)  Plaintiff was "restrained and taken to the floor were [sic] he was handcuffed."  (Id., Ex. E at 2.)  Correctional Officer Jared Clark subsequently conducted a disciplinary hearing and found plaintiff guilty of possession of weapons and sentenced him to ten

---

[2] On August 16, 2007, the court denied plaintiff's request for class action certification set forth in his complaint filed November 2, 2005.

1  days on disciplinary isolation status beginning on July 22, 2005.  (Jared Clark Decl. in Support of

2  Driscoll's Reply, filed Mar. 24, 2008, at 1-2; Ex. A.)  The disciplinary action also included the

3  loss of visiting, commissary, telephone and television privileges.  (Id., Ex. A.)

4          As to defendants Atkins and Mallory, plaintiff makes the follow claims:

5          The actions of defendant N.W. Atkins to deny the plaintiff with ink
           pen, paper, and mailing envelope when the plaintiff is indigent
6          violates the plaintiff[']s access to the courts and further denied the
           plaintiff rights under the Sixth Amendment to the United States
7          Constitution.

8                                            * * *

9          The actions of defendant Mallory to deny the plaintiff who is
           indigent with "welfare packs" constitutes deliberate indifference
10         and further denied the plaintiff access to the courts and to general
           correspondence in violation of the Due Process Clause [,] the
11         Equal Protection Clause, the First Amendment and the privileges
           and immunities clause of Article IV of the United States
12         Constitution.

13  (Compl. at 38.)

14                  **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

15         Summary judgment is appropriate when it is demonstrated that there exists "no

16  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

17  matter of law."  Fed. R. Civ. P. 56(c).

18         Under summary judgment practice, the moving party
           always bears the initial responsibility of informing the district court
19         of the basis for its motion, and identifying those portions of "the
           pleadings, depositions, answers to interrogatories, and admissions
20         on file, together with the affidavits, if any," which it believes
           demonstrate the absence of a genuine issue of material fact.

21

22  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

23  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

24  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

25  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

26  after adequate time for discovery and upon motion, against a party who fails to make a showing

                                               3

1    sufficient to establish the existence of an element essential to that party's case, and on which that

2    party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

3    concerning an essential element of the nonmoving party's case necessarily renders all other facts

4    immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

5    whatever is before the district court demonstrates that the standard for entry of summary

6    judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

7         If the moving party meets its initial responsibility, the burden then shifts to the

8    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

9    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

10   establish the existence of this factual dispute, the opposing party may not rely upon the

11   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

12   form of affidavits, and/or admissible discovery material, in support of its contention that the

13   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

14   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

15   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

16   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

17   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

18   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

19   1436 (9th Cir. 1987).

20        In the endeavor to establish the existence of a factual dispute, the opposing party

21   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

22   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

23   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

24   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

25   genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

26   committee's note on 1963 amendments).

1    "A scintilla of evidence or evidence that is merely colorable or not significantly

2    probative does not present a genuine issue of material fact" precluding summary judgment.

3    Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  See also Summers v. A.

4    Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).  On summary judgment the court is

5    not to weigh the evidence or determine the truth of the matters asserted but must only determine

6    whether there is a genuine issue of material fact that must be resolved by trial.  See Summers,

7    127 F.3d at 1152.  Nonetheless, in order for any factual dispute to be genuine, there must be

8    enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's

9    summary judgment motion.  See Addisu, 198 F.3d at 1134.

10    In resolving the summary judgment motion, the court examines the pleadings,

11    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

12    any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

13    477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

14    court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

15    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

16    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

17    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

18    1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

19    show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

20    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

21    'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

22    On December 8, 2006, the court advised plaintiff of the requirements for opposing

23    a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

24    F.3d 952, 957 (9th Cir. 1998) (en banc) and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir.

25    1988).

26    /////

**PARTIES' ARGUMENTS**

I. Defendant Driscoll

    A. Due Process Claim

        Although one of his regular responsibilities is to act as a classification officer and to conduct disciplinary hearings, defendant Driscoll contends that he did not violate plaintiff's due process rights because he was not the hearing officer who placed plaintiff on disciplinary isolation status and was not the officer assigned to perform the formal reviews of plaintiff's status in disciplinary isolation every seven days. (Id. at 2, 6.) Defendant Driscoll explains that inmates housed in Z Module are considered to be the "most unruly inmates in the jail and must always be supervised." (Id.) While in Z Module, an inmate's telephone use is limited to legal or clergy calls. (Id. at 3.) The inmates in that unit are out of their cells only for three hours and 45 minutes each week. (Driscoll Decl. in Support of Mot. for Summ. J., filed Feb. 19, 2008, at 2.) During those times, plaintiff had access to a telephone in the common area to make legal or clergy phone calls. (Id.) Defendant Driscoll declares that at no time during plaintiff's stay in Z Module did he deny plaintiff access to a telephone to make legal calls. (Id. at 3.)

        Plaintiff opposes defendant Driscoll's motion for summary judgment on the following grounds. Plaintiff asserts that on July 19, 2005, he was placed in the disciplinary isolation housing unit, where he remained for 196 days. (Opp'n, Mem. of P.&A. (Pl.'s P&A), filed Mar. 19, 2008, at 2-3.) Because defendant Driscoll is a classification officer, plaintiff asked Driscoll to release him from disciplinary isolation. (Id. at 5.) Plaintiff contends that defendant Driscoll told him that he had "reviewed my situation" but that he could not release plaintiff from disciplinary isolation. (Pl.'s Decl., filed Mar. 19, 2008, ¶ 60 at 12.) Plaintiff claims that defendant Driscoll violated his due process rights by failing to take any action to release him from disciplinary isolation after plaintiff had been held in that unit for more than ten days. (Pl.'s P&A at 7-8.)

/////

1    In his reply, defendant Driscoll argues that he did not violate plaintiff's rights by

2  failing to respond to plaintiff's "spontaneous and informal request" to be rehoused since plaintiff

3  did not articulate that he faced a substantial risk of harm by his confinement there nor did he

4  provide any evidence of such a risk.  (Reply at 5-6.)  He declares that on several occasions in

5  2005, when he was in Z Module to conduct hearings with respect to other inmates, plaintiff

6  would ask him for a reassignment and he would tell plaintiff that he did not have the authority to

7  do so and that plaintiff's classification officer would review his status every seven days.

8  (Driscoll Decl. at 2.)  Defendant Driscoll also points to the declaration of Sergeant Donna

9  Cameron, in which she states:

10    Under the policies and procedures of the Solano County Jail, the Z
      module is used to house inmates with a variety of special needs.
11    That includes inmates whose personal safety would be endangered
      in another housing unit, inmates whose presence in another
12    housing unit would pose a danger to other inmates, inmates who
      pose a threat to the safety of staff, inmates who have committed
13    serious acts of misconduct, and inmates with health concerns.

14    Placement in the Z module and placement on disciplinary isolation
      status are not synonymous.  Inmates may be housed in the Z
15    module without being on disciplinary isolation status.  Similarly,
      inmates on disciplinary isolation status may be housed in other
16    housing units.

17                                    * * *

18    [ ] Placement on disciplinary isolation status does not mean that the
      inmate is housed in a particular unit within the jail.  Jail policies
19    prohibit an inmate from spending an excess of ten consecutive days
      on disciplinary isolation status without a finding of guilt on another
20    rule violation.

21                                    * * *

22    An inmate placed in the Z module who is on disciplinary isolation
      status will, at the conclusion of his time on disciplinary isolation
23    status, be reviewed to determine the appropriate classification, i.e.,
      administrative segregation or general population and whether the
24    inmate will remain housed in the Z module on administrative
      segregation or will be moved to a different housing unit.

25
      When an inmate is placed on disciplinary isolation status or when
26    an inmate is placed in administrative segregation, that status is

7

1  |  formally reviewed every seven days.  The formal review is
   |  performed by a classification officer.  The classification officer
2  |  reviews the inmates records to determine whether there have been
   |  any further incidents or any changes in circumstances that would
3  |  impact the inmate's classification.  The classification officer also
   |  speaks with officers in the inmate's housing unit to gain an
4  |  understanding of the inmate's current situation.  The formal review
   |  generally does not include any discussion with the inmate himself
5  |  and he may be entirely unaware that it occurred.

6  (Cameron Decl. in Support of Def.'s Reply, filed Mar. 24, 2008 at 2-3.)

7          B.  Eighth Amendment Claim

8          Defendant Driscoll next argues that he is entitled to summary judgment in his

9  favor on plaintiff's Eighth Amendment claim because claims challenging the conditions of

10  confinement presented by pretrial detainees such as plaintiff are to be analyzed under the Due

11  Process Clause.  (Driscoll P&A, at 6-7) (citing Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).

12          Plaintiff argues that his retention in disciplinary isolation for 196 days "smacks of

13  punishment" and violates the reasonableness test set forth by the Supreme Court in Bell v.

14  Wolfish with respect to the minimal standard for conditions of confinement to which pretrial

15  detainees can be subjected.  (Pl.'s P&A at 9, 11.)  Plaintiff contends that defendant Driscoll knew

16  that he was being retained in disciplinary isolation and was also well aware that under jail

17  regulations an inmate could not be retained in disciplinary isolation beyond ten days unless he

18  was found guilty of another serious rules violation.  (Id. at 10-11.)  Nevertheless, plaintiff argues,

19  defendant Driscoll took no action to obtain plaintiff's release from disciplinary isolation.  (Id. at

20  11.)

21          C.  Equal Protection Claim

22          Defendant Driscoll argues that because he was not the hearing officer who had

23  plaintiff placed in disciplinary isolation there is no evidence that he violated plaintiff's right to

24  equal protection under the law.  (Driscoll P&A at 8.)  Defendant Driscoll also argues that for

25  purposes of an equal protection analysis, an inmate being held in disciplinary isolation is not

26  similarly situated to inmates in general population.  (Id.)

1    Plaintiff argues that he was not provided equal telephone access compared to that

2  provided to general population inmates.  (Pl.'s P&A, at 12.)   Plaintiff argues that if defendant

3  Driscoll had removed him from disciplinary isolation, he would have had the same telephone

4  access as general population inmates.  (Id. at 13.)

5    D.  Telephone Access Claim

6    Defendant Driscoll acknowledges that pretrial detainees have a right to telephone

7  access subject to rational limitations in the face of legitimate security interests.  (Driscoll P&A, at

8  9.)  However, he asserts that he never denied plaintiff access to the telephone to communicate

9  with his attorney in his then-pending criminal case.  (Id. at 10.)  Even if plaintiff were to claim

10  that the lack of access to a telephone to call his attorney caused him to be denied access to the

11  courts, defendant Driscoll argues that plaintiff has failed to show actual injury as required by the

12  decision in Lewis v. Casey, 518 U.S. 343, 346 (1996).  (Id.)

13    Plaintiff argues that the Supreme Court's decisions in Lewis v. Casey and Bounds

14  v. Smith, 430 U.S. 817 (1987), do not apply to this situation because those cases involved

15  convicted prisoners, whereas he was a pretrial detainee with a fundamental right of access to the

16  courts who was denied free telephone access to his attorney in a then-pending criminal case.

17  (Pl.'s P&A at 15.)

18    In his reply, defendant Driscoll cites a district court decision that applied the

19  standard announced by the Supreme Court in Lewis v. Casey to a claim by a pretrial detainee.

20  (Reply at 9-10.)  He also argues in summary fashion that plaintiff's claim regarding the denial of

21  telephone access is barred under the holding in Heck v. Humphrey, 512 U.S. 477, 486 (1994),

22  because his claim implicates the validity of his criminal conviction which has not been

23  overturned or expunged.  (Id. at 10.)

24  II.  Defendant Atkins

25    Defendant Atkins moves for summary judgment in her favor on the following

26  grounds.  She argues that as the librarian at the Solano County Jail from October 2004 to

9

1  December 2005, she provided inmates with books and other items from both the law library and

2  recreational library.  Defendant Atkins has submitted her own declaration stating that under the

3  procedure employed at the relevant time, an inmate would submit his written request to the

4  Module Officer, who would forward it to her, and she would then give the requested book to the

5  Module Officer who in turn would deliver the book to the requesting inmate.  (Atkins Decl. at 1-

6  2.)  She also declares that if an inmate needed paper, pens, pencils, envelopes and stamps, the

7  items could be obtained by submitting a request slip to the Program Officer.  (Id. at 2.)

8  Defendant Atkins contends that she had no direct contact with inmates and that she has no

9  memory of ever meeting or speaking to plaintiff or of accidently receiving a request slip from

10 plaintiff for pens, paper and envelopes.  (Id.)  Based on this evidence, defendant Atkins argues

11 that there is no evidence that she denied plaintiff access to the courts by denying him pens, paper

12 or envelopes.  (Def. Atkins' Mot. for Summ. J., Mem. P.&A. (Atkins' P&A), at 5.)  Likewise,

13 she argues that the evidence establishes that she did not interfere with plaintiff's Sixth

14 Amendment rights by denying him paper and pencils.  (Id. at 6.)

15         Plaintiff argues that it was his understanding and experience at the jail that

16 requests for legal materials, photocopy services and postage for legal mail were made to the law

17 librarian.  (Opp'n, Mem. P.&A., filed Mar. 24, 2008 (Pl.'s P&A), at 2.)  Plaintiff has attached to

18 his opposition copies of "Law Library/Legal Assistance Request" forms reflecting his requests

19 for pen, paper envelopes while at the Solano County Jail.  (Pl.'s Decl., Ex. B, C, D, E, and F.)

20 Contrary to plaintiff's assertion, the attachments reflect that someone other than defendant Atkins

21 responded to and rejected those requests.  (Id.)  Defendant Atkins did respond to plaintiff's

22 September 2005 grievances in which he complained that he was being denied necessary

23 photocopying services in connection with his pursuit of a federal civil rights claim.  (Id., Ex. J.)

24 Defendant Atkins responded to that grievance, informing plaintiff that, as stated on the request

25 form, the jail had a ten page limit for photocopying requests and instructed plaintiff that he could

26 /////

10

1  request the remaining copies he needed for his case by submitting another request form

2  requesting the copies in ten page increments.  (Id.)

3          In her reply, defendant Atkins argues that plaintiff's own exhibits submitted in

4  connection with this motion establish that he was not requesting materials to write but rather to

5  pursue his civil rights action against defendant Atkins.  (Reply at 5-6.)  According to defendant

6  Atkins, the fact that plaintiff was able to file this lawsuit and proceed with the litigation,

7  demonstrates that he suffered no actual injury due to the alleged denial of access to paper, pens,

8  and envelopes.  (Id. at 6.)  In addition, defendant Atkins argues that plaintiff's  evidence does not

9  even show that plaintiff was denied pens, paper, or envelopes.  (Id.)  Rather, the evidence before

10  the court establishes that plaintiff's requests were denied because he had received the supplies

11  earlier and had not mailed out any legal correspondence.  (Id.)  In this regard, defendant Atkins

12  points to the declaration of Lieutenant Rod Marsh explaining the rationale for the denial of

13  plaintiff's subsequent requests for writing supplies as follows:

14          When a request was made for legal materials (pens, paper, and
        envelopes), those materials would generally be provided.  The
15      request would be denied, however, when an inmate had made
        requests for these materials previously, and those requests were
16      granted, but the inmate had not been mailing out any legal
        correspondence.  The reason for this was to prevent an inmate from
17      hoarding pens, paper, and envelopes and using them for purposes
        unrelated to engaging in legal correspondence, such as selling the
18      materials to other inmates.  Because legal mail sent out by inmates
        was routed through Jail Administration, and records were
19      maintained of when an inmate mailed legal correspondence, the
        Program Officer would be aware of whether an inmate requesting
20      legal materials (pens, paper, and envelopes) had, in fact, been
        sending out legal mail [sic].

21

22  (Marsh Decl. in Support of Nancy Atkins' Reply, at 2-3.)

23  III.  Defendant Mallory

24          Defendant Mallory moves for summary judgment in her favor with respect to

25  plaintiff's claim that she denied him his constitutional rights by prohibiting him from receiving

26  "welfare packs" on the following grounds.  According to defendant Mallory, "welfare packs"

1   containing paper, envelopes, a pen, toothpaste, and a toothbrush are provided to indigent inmates

2   at the jail.  (Def. Mallory's Mot. for Summ. J., Mem. P.&A. (Mallory P&A), at 2.)  Only inmates

3   who have $1.10 or less in their jail trust accounts qualify as indigent for purposes of receiving the

4   packs.  (Id.)  The Sheriff's Department contracts with the Aramark Co. to process the inmates'

5   requests and make the eligibility determinations for these welfare packs.  (Id.)  Defendant

6   Mallory contends that during 2005, she was assigned as a Level 4 Rover to watch over the Z

7   Module and, while serving in that capacity, never denied plaintiff a welfare pack.  (Id. at 2-3.)

8   Rather, she states that if the jail commissary had delivered a welfare pack for plaintiff, she would

9   have provided it to him.  (Id. at 3.)  Defendant Mallory notes that on September 22, 2005,

10  plaintiff filed a grievance alleging that she had denied him a welfare pack and that grievance was

11  denied three days after its filing for the following reasons:

12          Inmate Low as it was explained to you on 9-22-05 Officer Mallory
        did not deny you a[n] indigent welfare pack[.]  Armark [sic] did
13      not send one for you[.]  You were advised at that time to address
        your complaint to Aramark[.]  You refused.  Resubmit your
14      grievance to Aramark.

15  (Childres Decl. in Supp. of Mallory's Mot. for Summ. J., filed Feb. 20, 2008, Ex. A.)  Based on

16  this evidence, defendant Mallory argues that she never denied plaintiff access to the courts or

17  denied plaintiff his right to send or receive mail.  (Id. at 6, 8.)

18          Plaintiff opposes defendant Mallory's motion for summary judgment, contending

19  that after August 4, 2005, he had less than one dollar in his inmate trust account and that

20  defendant Mallory failed to provide him with a welfare pack.  (Opp'n, Mem. P.&A. (Pl.'s P&A),

21  filed Mar.19, 2008.)  In his own declaration, plaintiff states that it was his "personal experience

22  that Officer Mallory distributed indigent welfare packs once a week to indigent inmates, such as I

23  was, at her convenience."  (Pl.'s Decl., filed Mar. 19, 2008, at 2.)  Plaintiff declares that because

24  he was not provided with a welfare pack, he was unable to communicate by mail with his

25  criminal defense attorney.  (Id. at 3.)  Plaintiff also states in his declaration that he does not recall

26  defendant Mallory ever suggesting that he file an inmate grievance and observes that defendant

1   Mallory has produced no documentation substantiating her statement regarding the role of the

2   Aramark company in processing requests for welfare packs for the jail.  (Id. at 5.)  Nevertheless,

3   plaintiff declares that all requests to Aramark for welfare packs "went through" defendant

4   Mallory and it was she who distributed those packs to inmates.  (Id. at 6.)

5          In her reply, defendant Mallory contends that plaintiff has attempted to distort the

6   evidence before the court.  (Reply at 1.)  Defendant Mallory reasserts her contentions that she did

7   not have the ability, authority or ability to provide plaintiff with a welfare pack.  (Reply at 4.)

8   She also argues that she did not deny plaintiff his right to send and receive mail nor did she act in

9   a way so as to deny him a right to send general correspondence.  (Id. at 8, 10.)

10                                **ANALYSIS**

11          The undersigned finds that defendants' wide-ranging motions for summary

12   judgment raise a number of issues that need not be addressed and in some ways obfuscate the

13   primary ground upon which they seek summary judgment in their favor.  In short, defendants

14   contend that the evidence before this court establishes that they did not cause any deprivation of

15   plaintiff's rights because they were not the individuals who engaged in the acts about which he

16   complains.  As noted above, summary judgment should be granted when the party who has the

17   burden of proof at trial fails to show the existence of an essential element of his claim.  Celotex

18   Corp., 477 U.S. at 322.  Although not often discussed, causation is an implicit requirement for

19   any § 1983 action in that  "[l]iability under § 1983 can be established by showing that the

20   defendant personally participated in a deprivation of the plaintiff's rights, or caused such a

21   deprivation to occur."  Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981).  See also Harper v.

22   City of Los Angeles, ___ F.3d___, 2008 WL 2718874 (9th Cir. July 14, 2008) ("In a § 1983

23   action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause

24   of the claimed injury.")  A causal connection must be established either by some kind of direct

25   personal participation or by setting in motion a series of acts which the actor knows or reasonably

26   should know would cause others to inflict a constitutional injury.  Johnson v. Duffy, 588 F.2d

1    740, 743-44 (9th Cir. 1978); see also Harper, 2008 WL 2718874 ("To meet this causation

2    requirement the plaintiff must establish both causation-in-fact and proximate causation.");

3    Phillips v. Hust, 477 F.3d 1070, 1077 (9th Cir. 2007) ("[A]s in any § 1983 case, Phillips must

4    show that the alleged violation of his rights was proximately caused by Hust, the state actor.")

5           Here, each of the defendants have presented evidence that they were not the

6    individuals who took the actions about which plaintiff complains.  In response plaintiff has

7    simply failed to present any evidence of a causal connection between these defendants and the

8    claimed constitutional violations.  In short, plaintiff has offered no evidence to dispute

9    defendants' assertions that they were not involved in the alleged unlawful acts.

10          In this regard, plaintiff claims that defendant Driscoll caused him to be kept in

11   disciplinary segregation for more than ten days resulting in the deprivation of constitutional

12   rights.  However, the uncontraverted evidence before the court establishes that defendant Driscoll

13   did not conduct the disciplinary hearing which resulted in plaintiff's placement on disciplinary

14   isolation status nor was he involved in plaintiff's retention in administrative segregation in Z

15   Module.  The undisputed facts are that although defendant Driscoll is a classification officer, he

16   was not the officer assigned to plaintiff's case.  Plaintiff has presented no evidence to the court

17   that Driscoll had independent authority to change plaintiff's classification or housing assignment.

18   Thus, despite the fact that plaintiff would bear the burden of proof at trial that defendant Driscoll

19   caused his alleged injuries stemming from his placement and retention in Z Module, he has failed

20   to present any evidence that defendant Driscoll's conduct was the actionable cause of those

21   claimed injuries.  Accordingly, defendant Driscoll is entitled to summary judgment in his favor.

22          Likewise, the undisputed evidence before the court establishes that, as the

23   librarian at Solano County Jail, defendant Atkins did not have direct interaction with inmates.

24   Although she obtained books and photocopied cases that plaintiff and other inmates requested;

25   she did not provide paper, pens, pencils, or envelopes to inmates.  Rather, requests for such

26   supplies by jail inmates were handled by the program officer, not the librarian.  In fact, the

14

1   evidence presented by plaintiff himself supports this conclusion.  Again, it would be plaintiff's

2   burden at trial to prove that defendant Atkins denied him writing supplies necessary for him to

3   exercise his right of access to the courts.  However, plaintiff has failed to present any evidence

4   that defendant Atkins' conduct was the actionable cause of the injuries he claims in this regard.

5   Accordingly, defendant Atkins is entitled to summary judgment in her favor.

6          Finally, plaintiff alleges in his complaint that defendant Mallory denied him a

7   welfare pack thus resulting in the violation of his constitutional rights.  Once again, the evidence

8   before the court establishes that defendant Mallory was not involved in determining whether

9   plaintiff did or did not qualify to receive a welfare pack.  Rather, the undisputed evidence is that

10  the process for determining the inmates to receive commissary and welfare packs and the

11  distribution of those packs was managed by Aramark Co. staff in the jail commissary.  (Childres

12  Decl. in Supp. of Mallory's Mot. for Summ. J., filed Feb. 20, 2008, Ex. A.)  In response to his

13  jail grievance complaining about this issue, plaintiff was informed by Sergeant Childers that his

14  grievance should be re-submitted to Aramark staff that had made the determination.  (Id.)  In

15  short, the evidence reflects that defendant Mallory was simply the jail correctional staff member

16  assigned to the Z Module housing unit charged with distributing the packs that Aramark staff

17  sent down from the commissary.  Thus, plaintiff has failed to present any evidence that defendant

18  Mallory's conduct was the actionable cause of the injuries he claims with respect to the welfare

19  packs.  Accordingly, defendant Mallory is entitled to summary judgment in her favor.

20         Plaintiff's bare assertions that he believed that these defendants were in a position

21  to respond to his various requests does not constitute evidence of causation.  See Leer v. Murphy,

22  844 F. 2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus

23  on the duties and responsibilities of each individual defendant whose acts or omissions are

24  alleged to have caused a constitutional deprivation.").  There is no evidence before the court that

25  defendants Driscoll, Atkins, or Mallory were involved in the alleged acts which plaintiff

26  /////

contends resulted in a violation of his constitutional rights.  Therefore, the court will recommend that defendants Driscoll, Atkins and Mallory's motions for summary judgment be granted.

## CONCLUSION

In light of the above, IT IS HEREBY RECOMMENDED that

1. Defendant Driscoll's motion for summary judgment, filed on February 19, 2008 (Doc. No. 81), be granted;

2. Defendant Atkins' motion for summary judgment, filed on February 20, 2008 (Doc. No. 82), be granted;

3. Defendant Mallory's motion for summary judgment, filed on February 20, 2008 (Doc. No. 83 ), be granted; and

4. Defendants Driscoll, Atkins and Mallory be dismissed from this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within five days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 20, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
low2211.msj3

16