1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TONY RICHARD LOW,

11            Plaintiff,                  No. CIV S-05-2211 MCE DAD P

12      vs.

13   GARY R. STANTON, et al.,

14            Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16            Plaintiff is a state prisoner proceeding pro se with several civil claims brought

17   pursuant to 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act

18   (RLUIPA), and state law.  Before the court is defendant Hambright's motion for summary

19   judgment.[1]

20                              BACKGROUND

21            Plaintiff's complaint alleges as follows concerning defendant Hambright:

22            On August 3rd, 2005 [sic] defendant Hambright violated my
            constitutional right to access to the courts by yanking me out of
23            Judge Smith's court room while I was actually speaking to the

24   _____

25      [1]  Plaintiff originally named nineteen defendants.  On August 13, 2008, defendants
     Petteway, Allen and Shepard were dismissed with prejudice pursuant to a settlement agreement.
     There are sixteen remaining defendants all of whom have, either separately or jointly, filed seven
26   motions for summary judgment.

                                    1

1  Judge.  Defendant Hambright without any other authority other
   then his own terminated my in court conversation with Judge
2  Smith when I was asking Judge Smith a question concerning a
   motion to declare a conflict that my public defender was suppose
3  to file.

4  Defendant Hambright had no right to terminate my in court
   conversation with Judge Smith nor was he instructed to literally
5  pull me out of the court room by Judge Smith or any other
   authority.

6                                   * * *

7
   The actions of defendant Hambright of terminating the plaintiffs
8  [sic] court appearence [sic] and conversation with Judge Smith
   constitutes a denial of access to the courts and further denied the
9  plaintiffs [sic] rights under the Sixth Amendment to the United
   States Constitution.
10
   The actions of defendant Hambright to unreasonably seize the
11 plaintiff who is a pretrial detainee constitutes unreasonable seizure
   and fertuer [sic] violates the plaintiffs [sic] rights under the Fourth
12 Amendment to the United States Constitution.

13 (Compl. filed Nov. 2, 2005, at 23-23, 38-39.)  Plaintiff seeks punitive damages in the amount of

14 $10,000.  (Id. at 45-46.)

15         Based on these allegations, plaintiff is proceeding with the following three claims

16 against defendant Hambright:  (1) denial of plaintiff's right of access to the court, (2) denial of

17 plaintiff's rights under the Sixth Amendment, and (3) denial of plaintiff's rights under the Fourth

18 Amendment to be free from an unreasonable seizure.

19 I.  Motion for Summary Judgment Standards Under Rule 56

20         Summary judgment is appropriate when it is demonstrated that there exists "no

21 genuine issue as to any material fact and that the moving party is entitled to a judgment as a

22 matter of law."  Fed. R. Civ. P. 56(c).

23         Under summary judgment practice, the moving party

24 always bears the initial responsibility of informing the district court
   of the basis for its motion, and identifying those portions of "the
25 pleadings, depositions, answers to interrogatories, and admissions
   on file, together with the affidavits, if any," which it believes
26 demonstrate the absence of a genuine issue of material fact.

                                      2

1  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

2  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

3  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

4  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

5  after adequate time for discovery and upon motion, against a party who fails to make a showing

6  sufficient to establish the existence of an element essential to that party's case, and on which that

7  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

8  concerning an essential element of the nonmoving party's case necessarily renders all other facts

9  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

10 whatever is before the district court demonstrates that the standard for entry of summary

11 judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

12        If the moving party meets its initial responsibility, the burden then shifts to the

13 opposing party to establish that a genuine issue as to any material fact actually does exist.  See

14 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

15 establish the existence of this factual dispute, the opposing party may not rely upon the

16 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

17 form of affidavits, and/or admissible discovery material, in support of its contention that the

18 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

19 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

20 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

21 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

22 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

23 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

24 1436 (9th Cir. 1987).

25        In the endeavor to establish the existence of a factual dispute, the opposing party

26 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

1  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

2  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

3  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

4  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

5  committee's note on 1963 amendments).

6          In resolving the summary judgment motion, the court examines the pleadings,

7  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

8  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

9  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

10  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

11  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

12  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

13  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

14  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

15  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

16  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

17  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

18          On December 8, 2006, the court advised plaintiff of the requirements for opposing

19  a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

20  F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

21  II.  Undisputed Facts

22          The parties agree that the following facts are undisputed:  Defendant Hambright

23  has been a correctional officer at the Solano County Jail since June of 1997.  On August 3, 2005,

24  he was assigned to the court holding area for Superior Court B.  A correctional officer with that

25  assignment remains in the holding area and does not enter the courtroom unless the bailiff needs

26  /////

1   assistance or there is an emergency in the courtroom.  There is a speaker system that allows the

2   officer in the holding area to hear what is being said in the courtroom.

3      On August 3, 2005, plaintiff appeared in the Solano County Superior Court for a

4   readiness conference.  Judge R. Michael Smith was the presiding judge.  Because plaintiff's

5   attorney, Ms. Ryan, was unavailable due to a family illness, Deputy Public Defender Robert

6   Warshawsky appeared on behalf of plaintiff in her place.

7      Both parties have submitted a copy of the transcript of the readiness conference

8   held on August 3, 2005 and therefore the recording of the proceedings are undisputed.[2]  The

9   relevant portions of the transcript reflect the following exchange:

10     MR. WARSHAWSKY:  . . . .  My suggestion would be, given the
   time waiver status, that we stand over to early September, and that
11      would allow my office to complete the subpoena process, and then
   if there's a conflict [of interest] we can advise the Court.

12     THE DEFENDANT:  I'm not waiving time.

13     MR. WARSHAWSKY:  Well, he's already waived time.

14     THE COURT:  He has waived time, but he also has the right to
15      withdraw that time waiver, too.  Are you withdrawing your time
   waiver?

16     THE DEFENDANT:  Yes, sir.

17     THE COURT:  We'll set it for preliminary hearing then.  I'll put it
18      over to Department 17.  The presiding judge will be covering for
   me in this type of situation.  The last day for preliminary hearing
19      would be the 17th of August.  15th of August, nine o'clock for

20

21     [2] Defendant has requested that this court take judicial notice of the transcript of the
 August 3, 2005 readiness conference in state court.  Both parties have submitted that transcript in
22   connection with the pending motion for summary judgment and it is therefore in the record
before this court and is obviously to be considered.  Accordingly, the court need not take judicial
23   notice of the transcript which is in the record before this court, although it would otherwise be
perfectly appropriate to do so.  See Engine Mfrs. Ass'n v. South Coast Air Quality Management
24   Dist., 498 F.3d 1031, 1039 n.2 (9th Cir. 2007) (taking judicial notice of oral argument transcript);
In re American Continental/Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996)
25   (when ruling on a Rule 12(b)(6) dismissal, a district court may take into account judicially
noticeable materials such as publicly available records and transcripts from judicial proceedings
26   in related or underlying cases which have a direct relation to the matters at issue) rev'd on other
grounds sub nom. Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998).

1   readiness conference; 16th of August, nine o'clock for preliminary
    hearing.

2
    THE DEFENDANT:  Your Honor, may I address the Court,
3   please?  I've attempted to contact my public defender, Ms. Ryan,
    and she refuses to speak to me.  I spoke to her approximately last
4   Thursday - - Wednesday and Thursday, and she told me that she
    wasn't gonna (sic) be my attorney no more.  She's going to file a
5   conflict in the Court and that I was going to be appointed a conflict
    attorney today.

6
    THE COURT:  Well, that's not going to happen today because Ms.
7   Ryan, due to family illness, is not here.

8   THE DEFENDANT:  So I don't know what's going on.

9   THE COURT:  What is going on is this.  You are withdrawing
    your time waiver.  The readiness conference is set for the 15th of
10  August.  The preliminary hearing is set for the 16th of August.  So
    within the next two weeks, you'll have your preliminary hearing,
11  and I'm sure before then, Ms. Ryan will come back and talk to you,
    and if there's a conflict of interest, I'm sure that will get taken care
12  of before that as well.

13  THE DEFENDANT:  I have one additional thing.  The District
    Attorney and I - -
14
    MR. WARSHAWSKY:  Don't say anything, please.
15
    THE COURT:  The District Attorney won't be talking with you
16  because you are represented.

17  THE DEFENDANT:  Pardon?

18  THE COURT:  The District Attorney won't talk with you because
    you are represented by an attorney.
19
    THE DEFENDANT:  That's what I mean.
20
    MR. WARSHAWSKY:  Don't say anything.
21
    THE DEFENDANT:  I have a right to speak in this court, your
22  Honor.

23  THE COURT:  Hang on.

24  THE DEFENDANT:  Your Honor - -

25  THE COURT:  At this point, I think Mr. Warshawsky is
    attempting to protect your interests by asking you not to speak in
26  open court where everybody gets to hear what you have to say.

1    You may say something that might end up incriminating you.

2    THE DEFENDANT:  I understand that.  I have a right to speak.

3    THE COURT:  We are done for today.

4    THE DEFENDANT:  So you are denying me the right to talk to
     you completely?

5

6    THE COURT:  You don't have any right to talk to me completely.
     You have the right to address the Court.  Thank you.

7    (Pl.'s Decl., Ex. A at 3-5.)  That concluded the recording of the proceedings.

8        Following the exchange between plaintiff and the court set forth above, defendant

9    Hambright entered the courtroom and grasped plaintiff's waist restraints and shirt-collar and

10   pulled him from the courtroom, through the doorway and into the holding area.  The distance

11   from the courtroom to the holding area was no more than a few feet and plaintiff remained on his

12   feet during the passage.

13   III.  Access to Court Claim

14        A.  Defendant's Motion

15        In his declaration, defendant Hambright states that he was listening to the

16   proceedings on the speaker system.  (Def.'s Decl. ¶ 5 at 2.)  When Judge Smith indicated he was

17   finished with plaintiff, the bailiff opened the door into the court holding area and instructed

18   plaintiff to follow him.  (Id.)  Plaintiff moved towards the door but stopped a few feet from it and

19   in a loud and animated fashion, attempted to speak to Judge Smith.  (Id. ¶ 6 at 2.)  The bailiff told

20   plaintiff to exit the courtroom but plaintiff refused to leave.  (Id.)  Judge Smith reiterated to

21   plaintiff that he was finished with him.  (Id. ¶ 7 at 2-3.)  It was obvious to defendant  Hambright

22   that plaintiff was not following the orders of either the judge or the bailiff.  (Id. ¶ 8 at 3.)

23   Defendant responded by grasping plaintiff's waist restraints and shirt collar and pulling him from

24   the courtroom into the holding area.  (Id.)

25        Defendant Hambright argues that plaintiff was not denied access to the court

26   because Judge Smith had concluded the proceedings and indicated that he was finished speaking

7

1  to plaintiff.  (Def.'s Mem. of P. & A. (Def.'s P&A) at 6.)  He contends that because the

2  proceedings were concluded, plaintiff suffered no actual injury in terms of access to the court.

3  (Id. at 7.)  In his reply to plaintiff's opposition, defendant Hambright argues that plaintiff is

4  attempting to extend the right of access to the court beyond its accepted limits.  (Reply at 3.)  He

5  argues that the right applies only to direct criminal appeals, habeas petitions, and civil rights

6  actions.  In addition, defendant Hambright asserts that plaintiff has failed to demonstrate any

7  actual injury and that an alleged interference with his right to counsel does not satisfy the injury

8  requirement.  (Id.)

9          Defendant Hambright also argues that plaintiff's claim is barred by Heck v.

10  Humphrey, 512 U.S. 477 (1994), because plaintiff's claim that defendant denied him access to

11  the court by forcibly removing him from the courtroom necessarily implicates the validity of his

12  subsequent criminal conviction which has not been set aside .  (Def.'s P&A at 7.)

13      B.  Plaintiff's Opposition

14          Plaintiff argues that his right of access to the court claim presents a new legal

15  issue.  In this regard, he states:

16          Plaintiff in his verified complaint raises a constitutional question
           which has not been addressed before in the 9th Circuit.  Does the
17          fundamental constitutional right of access to the courts apply to an
           unconvicted pretrial detainee when he is seized by non-court
18          county correctional officer during a court appearance [sic]
           effectively hindering and interfering with a criminal proceeding.
19

20  (Pl.'s Opp'n, Mem. of P. & A. (Pl.'s P&A) at 5.)  Plaintiff confusingly argues that the standard

21  set forth in Lewis v. Casey, 518 U.S. 343 (1996) applies only to denial of access to the court

22  claims brought by convicted prisoners and does not apply to his claim which arose when he was

23  a pre-trial detainee.  (Pl.'s P&A at 5.)  He contends that here the court should instead apply the

24  standard set forth in Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007) with respect to actions

25  seeking a remedy for a lost opportunity to present a legal claim which requires a showing of "(1)

26  the loss of a 'nonfrivolous' or 'arguable' underlying claim; (2) official acts frustrating the

1  litigation, and (3) a remedy that may be awarded as recompense but that is not otherwise

2  available in a future suit." (Id.)

3          As to this first element, plaintiff asserts that his underlying claim is based on his

4  Sixth Amendment right to counsel. (Id. at 6.) He argues that when defendant Hambright pulled

5  plaintiff out of the courtroom while he was addressing the court about a conflict with his

6  attorney, Ms. Ryan, his Sixth Amendment right to counsel was violated. (Id. at 6-7.) As to the

7  second element, plaintiff argues that defendant Hambright prevented plaintiff from "seeking the

8  assistance of counsel and to address the court." (Id. at 8.) In addition, plaintiff contends that

9  defendant Hambright was not authorized to use force on plaintiff because under the Solano

10  County Sheriff's Department policy, force may only be used to effect an arrest or to overcome

11  resistance, and those circumstances were not present here. (Id. at 9-10.) As to the last element,

12  plaintiff argues that this civil action is his only means to obtain punitive and nominal damages.

13  (Id. at 11.) Lastly, plaintiff disputes that his claim is Heck barred. (Id. at 11-12.)

14          In his unauthorized response to defendant's reply, plaintiff argues that he is not

15  required to show actual injury because he was a pretrial detainee at the time of the events in

16  question and not a convicted person. (Pl.'s Response at 3) (citing Benjamin v. Fraser, 264 F.3d

17  175, 185 (2nd Cir. 2001)).

18      C. Analysis

19          "Under the First and Fourteenth Amendments to the Constitution, state prisoners

20  have a right of access to the courts." Phillips, 477 F.3d at 1075 (citing Lewis, 518 U.S. at 346).

21  Claims alleging a denial of the right to access the courts fall into two possible categories: (1)

22  when systemic official action frustrates a plaintiff 's ability to prepare and file his lawsuit, and

23  (2) when official acts have caused the loss of a meritorious case and a suit can no longer be

24  litigated. Christopher v. Harbury, 536 U.S. 403, 413-14 (2002).

25          Plaintiff argues that his access to courts claim falls within the second category, a

26  backward-looking claim seeking a remedy for his lost opportunity to present a legal claim. As

1    noted by plaintiff, the Ninth Circuit has identified three elements of such a claim.  Phillips, 477

2    F.3d at 1076.  The first element requires "the loss of a 'nonfrivolous' or 'arguable' underlying

3    claim[.]"  Id.  In this regard, plaintiff contends that defendant Hambright's action violated his

4    constitutional rights because he "was querying the court concerning a conflict of interest with his

5    attorney of record and had notified the court of the fact plaintiff's attorney Ms. Ryan was

6    refusing to communicate with plaintiff and had a conflict with the plaintiff."  (Pl.'s P&A at 6.)

7           The court is not persuaded that plaintiff's attempt to claim a constitutional

8    violation based upon these factual allegations satisfies the nonfrivolous requirement.  Defendant

9    Hambright's removal of plaintiff from the courtroom at the conclusion of the readiness hearing,

10   did not interfere with plaintiff's ability to raise with the court the issue of a conflict with his

11   appointed counsel.  The transcript of the hearing reflects that the state trial court judge presiding

12   over the proceedings had unequivocally concluded the readiness hearing after informing plaintiff

13   that if, after his appointed counsel met with him, he still believed there was a conflict the issue

14   would be addressed by the court prior to the preliminary examination.  Moreover, the trial court

15   did not rule with respect to any potential assertion by plaintiff of a breakdown in communication

16   with his appointed counsel at the readiness hearing.

17          Plaintiff would bear the burden of proof at trial of establishing the essential

18   elements of his denial of access to the courts claim.  Here, for the reasons identified above, there

19   is a complete failure of proof concerning an essential element of plaintiff's case on that claim.

20   Accordingly, the court will recommend that defendant Hambright's motion for summary

21   judgment be granted as to plaintiff's claim that the defendant denied him access to the courts in

22   violation of his constitutional rights.  See Celotex Corp., 477 U.S. at 323.

23   IV.  Sixth Amendment Claim

24          Plaintiff also claims that when defendant Hambright removed him from the

25   courtroom, his Sixth Amendment rights were violated.

26   /////

A.  Defendant's Motion

Defendant Hambright moves for summary judgment on this claim, arguing that the nature of plaintiff's Sixth Amendment claim is not even entirely clear.  (MSJ at 8.) Defendant contends that to the extent plaintiff is claiming that defendant's actions denied him his Sixth Amendment right to counsel or prevented plaintiff from exercising his right to represent himself, there has been no evidence offered to support such a claim.  (Id.)  Defendant Hambright observes that the evidence before the court establishes that plaintiff was represented by an attorney at the time of his appearance before the court and that defendant acted merely to protect the dignity of the courtroom from plaintiff's histrionics.  (Id.)  Moreover, defendant Hambright suggests that plaintiff's actions of ignoring the directives of both the judge and the bailiff demonstrated that he could not conduct himself in accordance with the protocols of the courtroom as required of a person representing himself.  (Id.)

Defendant Hambright also argues that if plaintiff's claim is that he interfered with plaintiff's right to counsel, the evidence does not support this claim.  (Id.)  Defendant asserts that the evidence before this court establishes that he did not interfere with the confidential relationship between plaintiff and his counsel but instead merely prevented plaintiff from continuing to argue with Judge Smith after the judge made it clear that the court appearance had concluded.  (Id. at 9.)

Finally, defendant Hambright argues that any Sixth Amendment claim brought by plaintiff would, in any event, be Heck-barred because the claim would necessarily implicate the validity of plaintiff's subsequent criminal conviction.  (Id.)

B.  Plaintiff's Arguments

Plaintiff contends that at the point he informed the state trial court about the potential conflict he had with his appointed attorney and withdrew his time waiver, he was then proceeding pro per.  (Id. at 13-14; Reply at 4.)  Plaintiff argues that, therefore, when defendant Hambright forcibly removed him from the courtroom, the defendant was interfering with

1   plaintiff's rights to self-representation and to secure new counsel.  (Opp'n at 15; Reply at 4.)

2   Plaintiff also disputes defendant's contentions that plaintiff was yelling at the judge, was

3   violating the dignity of the courtroom, persisted in trying to argue with the judge, and refused to

4   leave the courtroom.  (Opp'n at 13-14.)

5       C.   Analysis

6           The court finds plaintiff's arguments both unpersuasive and unsupported by the

7   evidence and record before the court.  Although plaintiff apparently wishes to believe otherwise,

8   he was represented by counsel at the readiness hearing conducted in the state trial court.  (Pl.'s

9   Decl., Ex. A at 2-4.)  Mr. Warshawsky, a Deputy Public Defender as was Ms. Ryan, appeared at

10  the readiness hearing as plaintiff's counsel.  (Id.)  Moreover, as noted above, the trial court judge

11  informed plaintiff that his appointed counsel Ms. Ryan would be contacting plaintiff soon and

12  that if there was a conflict between them that would cause her to withdraw as his counsel, that

13  matter would be resolved prior to the scheduled preliminary hearing.  (Id. at 4.)  Thus, plaintiff's

14  arguments that he was proceeding pro se when he addressed the court is completely unpersuasive

15  and belied by the evidence before this court.  Accordingly, plaintiff's claim that defendant

16  Hambright's actions somehow violated plaintiff's right to self-representation or his right to be

17  represented by counsel is wholly unsupported by any evidence and without merit.  Therefore,

18  defendant Hambright's motion for summary judgment in his favor should be granted as to

19  plaintiff's Sixth Amendment claim.

20  V.  Unreasonable Seizure Claim

21          Plaintiff also has claimed that because he was a pretrial detainee at the time of this

22  incident, when defendant Hambright pulled him from the courtroom it was in violation of his

23  Fourth Amendment right to be free from unreasonable seizure.

24      A.   Defendant's Motion

25          Defendant Hambright moves for summary judgment in his favor as to this claim,

26  arguing that a seizure under the Fourth Amendment occurs when a government official uses

12

1   physical force to restrain the liberty of a citizen.  (MSJ at 9-10.)  He explains that under the law

2   whether a seizure is unreasonable requires a balancing of the nature and quality of the intrusion

3   against the governmental interest at stake.  (<u>Id.</u> at 10.)  Defendant Hambright observes that a

4   pretrial detainee's rights under the Fourth Amendment are limited.  (<u>Id.</u>)  Defendant argues that

5   to the extent plaintiff is alleging an excessive use of force such a claim cannot be based on the

6   Fourth Amendment. (<u>Id.</u> at 11.)  He argues that, even if the Fourth Amendment applied in the

7   circumstances of this case, that the evidence establishes that his limited use of force in removing

8   plaintiff from the courtroom was reasonable.  (<u>Id.</u> at 11-12.)

9              Should the cause of action be construed as a claim of the excessive use of force in

10   violation of the Fourteenth Amendment, defendant Hambright argues that summary judgment

11   should be granted in his favor.  (<u>Id.</u> 12-13.)  In this regard, the defendant contends that in

12   considering such a claim the court must balance several factors, such as, the need for the

13   application of force, the relationship between the need and the amount of force used, the extent

14   of the injury inflicted, and whether the force was applied in a good faith effort to maintain and

15   restore discipline.  (<u>Id.</u> at 13.)  Defendant Hambright argues that here the evidence establishes

16   that there was a need to use force because plaintiff refused to leave the courtroom and attempted

17   to re-enter it after he had been removed, that the amount of force used was appropriate, that

18   plaintiff suffered no physical injuries during the incident, that force was applied only after

19   repeated commands were made to plaintiff to leave the courtroom, and that defendant acted in

20   good faith to restore order in the courtroom.  (<u>Id.</u>)

21           B.  <u>Plaintiff's Arguments</u>

22              Plaintiff asserts that he is proceeding with an unreasonable seizure claim under the

23   Fourth Amendment and not a Fourteenth Amendment excessive use of force claim.  (<u>Id.</u> at 15.)

24   In this regard, plaintiff states:

25              The issue here is whether or not plaintiff has a liberty interest to be
               free from unreasonable seizure[,] not whether defendant Hambright
26             used excessive force to effectuate his seizure of the plaintiff.

> It is reasonable for the plaintiff to have an expectation of liberty to exercise his Constitutional Sixth Amendment rights within the confines of a courtroom without being unreasonably seized while he is was [sic] in the enjoyment of a constitutionally permissive act.

(Id. at 16.)

C. Analysis

A seizure under the Fourth Amendment has been described as follows:

> " '[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person....' " Brown v. Texas, 443 U.S. 47, 50 (1979) (internal citation omitted) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)). The Supreme Court has been clear that although not every encounter between a police officer and a citizen is a seizure, United States v. Mendenhall, 446 U.S. 544, 553-54 (1980); United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976); Sibron v. New York, 392 U.S. 40, 61 (1968), "the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime – 'arrests' in traditional terminology." Terry v. Ohio, 392 U.S. 1, 16 (1968). But "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Id. at 19 n.16. Indeed, the Supreme Court has "conclude[d] that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Mendenhall, 446 U.S. at 554.

U.S. v. Faulkner, 450 F.3d 466, 469 (9th Cir. 2006) (parallel citations omitted).

The court agrees with defendant that in light of the evidence before this court the Fourth Amendment does not apply to the incident at issue. A Fourth Amendment seizure occurs when a person who has the right to walk away, is restrained. Here, plaintiff is arguing that he was seized because he was taken from the courtroom after the proceedings had concluded. However, as a pretrial detainee appearing as a criminal defendant in pretrial proceedings in state court plaintiff obviously did not enjoy unfettered freedom of movement at that time in question. Certainly plaintiff was not free to leave the courtroom. He had previously been lawfully detained while awaiting trial on criminal charges. The Fourth Amendment did not prohibit defendant

14

1  Hambright from removing plaintiff from the courtroom under the circumstances established by

2  the evidence before the court.  See Tennessee v. Garner, 471 U.S. 1, 7-8 (1985) (holding that the

3  "reasonableness" of a particular seizure depends not only upon when it is made, but also on how

4  it is carried out); Graham v. Connor, 490 U.S. 386, 395 (1989) (the Fourth Amendment governs

5  events "in the course of an arrest, investigatory stop or other 'seizure' of a free citizen"); see also

6  Shah v. County of Los Angeles, 797 F.2d 743, 745 n.1 (9th Cir. 1986) (pretrial detainee who

7  claimed that jail deputies mistreated him in numerous ways including through assault and

8  harassment found not to have alleged any acts on the part of deputies that could conceivably

9  implicate his Fourth Amendment rights).

10          Therefore,  defendant's motion for summary judgment in his favor as to plaintiff's

11  Fourth Amendment claim should also be granted.

12                              CONCLUSION

13          In accordance with the above, IT IS HEREBY RECOMMENDED that:

14          1.  Defendant Hambright's July 25, 2008 motion for summary judgment (Doc.

15  No. 125), be granted; and

16          2.  Defendant Hambright be dismissed from this action with prejudice.

17          These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen

19  days after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22  shall be served and filed within ten days after service of the objections.  The parties are advised

23  /////

24  /////

25  /////

26  /////

1   that failure to file objections within the specified time may waive the right to appeal the District

2   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: January 22, 2009.

4

5   _____

6   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

7   DAD:4
    low2211.msjHamb

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26