1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TONY RICHARD LOW,

11          Plaintiff,              No. CIV S-05-2211 MCE DAD P

12      vs.

13   GARY R. STANTON, et al.,

14          Defendants.           FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding pro se with several civil claims brought

17   pursuant to 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act

18   (RLUIPA), and state law.  Before the court is a motion for summary judgment brought on behalf

19   of defendants Garrison and Rodriguez, correctional deputies employed at the Solano County Jail

20   at the time of the incidents involved in this action.  Plaintiff has filed an opposition to the motion

21   for summary judgment and defendants have filed a reply.

22                        COMPLAINT

23          In his verified complaint, signed under the penalty of perjury, plaintiff alleges that

24   defendants Garrison and/or Rodriguez were involved in three separate incidents in which he was

25   subjected to the excessive use of force while incarcerated at the Solano County Jail.

26   /////

1

I. June 30, 2005 Incident

Plaintiff alleges that on June 30, 2005, he was talking to an Officer Prestridge about the telephone being turned off which was preventing him from making calls to obtain bail.

> I attempted to tell Officer Prestridge that I was attempting to bail out when Defendant Garrison came from behind Officer Prestridge and grabbed me by the neck and pushed my head into the wall.

> Defendant Garrison then turned me around by grabbing my arms and slammed my face and chest area into the wall and began shoving me up the stairs to my cell.

> At no time did I attempt to resist defendant Garrison.

> As a result of Defendant Garrisons [sic] slamming my head and face into the wall I chipped my front tooth and had dizzy spells for several weeks.

(Compl. at 7, ¶¶ 18-21.)

II. July 4, 2005 Incident

Plaintiff alleges that on July 4, 2005, he was in the dayroom area of the jail and pushed the intercom button to request that the telephone in the cell be turned on so he could call a bail bond company. (Id.) Defendant Garrison threatened plaintiff and told him that if he didn't stop pushing the intercom button, he was going to "beat my ass." (Id. at 8.) Plaintiff also alleges that:

> At approximately 1150 am [sic] Defendant Garrison and Rodriguez opened the dayroom unit door.

> Defendant Garrison immediately rushed towards me with closed fists and said "I told you I'd beat your ass[.]"

> At this point defendant Garrison began to strike me with closed fists about the head and upper torso area striking me several times in the face.

> I fell to the floor and defendant Rodriguez began kicking me in the rib area and stomped on my neck with his boot.

> Defendants Garrison and Rodriguez then dragged me accross [sic] the concrete floor and kicked me inside my cell.

(Id., ¶¶ 26-30.)

III.  <u>July 19, 2005 Incident</u>

   According to plaintiff on July 19, 2005, defendant Garrison and deputy Weary were conducting a search of plaintiff's cell.  (<u>Id.</u> at 9.)  Defendant Garrison questioned plaintiff about a missing "TV outlet fixture" and plaintiff responded, "What are you talking about?"  (<u>Id.</u>)  Defendant Garrison then began throwing plaintiff's property out of his cell and continued to demand the TV pieces while threatening plaintiff, saying "I am going to beat your ass again, worse than before, wheres [sic] the TV pieces."  (<u>Id.</u>)

> Due to my absolute fear of defendant Garrison and having no other recourse in obtaining help I fled out of the unit door to get away from defendant Garrison.

> I fled towards an area I knew was observed by video monitoring systems in the hope defendant Garrison would not effectuate his threat due to the video cameras.

> Defendant Garrison chased me to the door of the unit control tower where I was screaming for help.

> I fell to the floor directly under a video camera and curled into a fetal position behind two carts[.]

> Defendant Garrison began punching me repeatedly in the head and back of my neck area.

> Defendant Garrison was punching me with his fists in my head so hard that he sustained serious injuries to his hand/wrist area.

> The last thing I recall was defendant Garrison holding his hand and kicking me in the head.

> As a proximate result of the actions of defendant Garrison, plaintiff suffered a broken tooth, swollen eyes, broken lip, strained ligaments and soft tissue damage, and numerous bruises to his head and face.

(<u>Id.</u> at 10, ¶¶ 40-47.)  Plaintiff contends that during this incident, he "did not resist or threaten the defendants in any fashion."  (<u>Id.</u> at 11.)

IV.  <u>Relief Requested</u>

   Plaintiff seeks a declaratory judgment that "[t]he physical abuse of the plaintiff by Defendants Garrison and Rodriguez violated the plaintiff's rights under the Fourth, Fourteenth,

1   and Eighth Amendments to the United States Constitution and constituted an assault and battery

2   under state law[.]" (Id. at 40-41.)  He also seeks $100,000 in compensatory damages from

3   defendants Garrison and Rodriguez for "physical and emotional injuries sustained as a result of

4   the plaintiffs [sic] beating" and $25,000 in punitive damages from each defendant.  (Id. at 44-45.)

5                   SUMMARY JUDGMENT STANDARDS UNDER RULE 56

6               Summary judgment is appropriate when it is demonstrated that there exists "no

7   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

8   matter of law." Fed. R. Civ. P. 56(c).

9               Under summary judgment practice, the moving party

10              always bears the initial responsibility of informing the district court
                of the basis for its motion, and identifying those portions of "the
11              pleadings, depositions, answers to interrogatories, and admissions
                on file, together with the affidavits, if any," which it believes
12              demonstrate the absence of a genuine issue of material fact.

13  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

14  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

15  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

16  to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered,

17  after adequate time for discovery and upon motion, against a party who fails to make a showing

18  sufficient to establish the existence of an element essential to that party's case, and on which that

19  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

20  concerning an essential element of the nonmoving party's case necessarily renders all other facts

21  immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as

22  whatever is before the district court demonstrates that the standard for entry of summary

23  judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

24              If the moving party meets its initial responsibility, the burden then shifts to the

25  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

26  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

4

1   establish the existence of this factual dispute, the opposing party may not rely upon the

2   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

3   form of affidavits, and/or admissible discovery material, in support of its contention that the

4   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

5   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

6   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

7   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

8   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

9   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

10  1436 (9th Cir. 1987).

11          In the endeavor to establish the existence of a factual dispute, the opposing party

12  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

13  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

14  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

15  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

16  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

17  committee's note on 1963 amendments).

18          In resolving the summary judgment motion, the court examines the pleadings,

19  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

20  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

21  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

22  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

23  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

24  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

25  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

26  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

5

1   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

2   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

3   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

4          On December 8, 2006, the court advised plaintiff of the requirements for opposing

5   a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

6   F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

7                  LEGAL STANDARDS FOR EXCESSIVE FORCE CLAIMS

8          Plaintiff claims that defendants Garrison and Rodriguez subjected him to the

9   excessive use of force in violation of his rights under the Eighth, Fourth, and Fourteenth

10  Amendments.

11         The appropriate constitutional standard to apply in assessing an excessive use of

12  force claim depends on the juncture in the custodial continuum when the alleged incident

13  occurred.  See Pierce v. Multnomah County, Or., 76 F.3d 1032, 1042 (9th Cir. 1996)

14  (acknowledging that the appropriate legal standard for an excessive force claim depends on the

15  particular juncture of the custodial continuum); see also Graham v. Connor, 490 U.S. 386, 393

16  (1989) ("We reject the notion that all excessive force claims brought under § 1983 are governed

17  by a single generic standard.").  The custodial continuum runs through the initial arrest or

18  seizure, post-arrest but pre-charge or pre-hearing custody, pretrial detention, and post-conviction

19  incarceration.  See Pierce, 76 F.3d at 1042; Leialoha v. MacDonald, Civ. No. 07-00218 ACK-

20  KSC, 2008 WL 2736020, at *5 (D. Hawaii, July 11, 2008) (Fourth Amendment standard applies

21  to claims based on excessive force during an arrest, investigatory stop or other pre-arraignment

22  seizure; Fourteenth Amendment Due Process standard governs such claims against post-

23  arraignment detainees and Eighth Amendment protections apply post conviction).

24         The Supreme Court has held that the Fourth Amendment governs excessive force

25  claims arising during the "course of an arrest, investigatory stop, or other 'seizure' of a free

26  citizen[.]"  Graham, 490 U.S. at 395.  The Fourth Amendment guarantees the right "to be secure

1  in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV.  In such cases the

2  court considers whether the use of force was reasonable which "requires a careful balancing of

3  the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

4  countervailing governmental interests at stake."  Graham, 490 U.S. at 396 (internal quotation

5  marks omitted).  Careful attention is given to the facts and circumstances of the case, "including

6  the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of

7  the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

8  flight."  Id.  The evil intent or motivation of the officer does "not make a Fourth Amendment

9  violation out of an objectively reasonable use of force; nor will an officer's good intentions make

10  an objectively unreasonable use of force constitutional."  Id. at 397.  A plaintiff may prevail on

11  an excessive force claim arising during the course of an arrest or investigatory stop even where

12  there is no significant injury.  See Wilke v. Reyes, 5 F.3d 412, 416 (9th Cir. 1993) (holding that a

13  plaintiff may be entitled to nominal damages for a Fourth Amendment violation based on

14  excessive use of force even though he did not suffer actual damages or significant injury).

15          The next stage of the continuum is after the arrest but prior to arraignment.  The

16  Supreme Court did not resolve the question as to when the Fourth Amendment protection ends

17  and the Due Process Clause protection for pretrial detainees begins.  Graham, 490 U.S. at 395

18  n.10.  The Ninth Circuit, however, has held that the Fourth Amendment continues to afford

19  protection to an "arrestee detained without a warrant up until the time such arrestee is released or

20  found to be legally in custody based upon probable cause for arrest."  Pierce, 76 F. 3d at 1043.

21  See also Lolli v. County of Orange, 351 F.3d 410, 415-17 (9th Cir. 2003) (applying Fourth

22  Amendment standards for excessive force claim brought by a pre-arraignment detainee); Gibson

23  v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th Cir. 2002) (applying Fourth Amendment

24  standards to an excessive force claim involving a pre-arraignment detainee); Leialoha, 2008 WL

25  2736020, at *5 .

26  /////

7

1          Following arraignment, a pretrial detainee is protected by the Fourteenth

2 Amendment's substantive Due Process Clause.  See Graham, 490 U.S. at 395 n.10 (noting that

3 "the Due Process Clause protects a pretrial detainee from the use of excess force that amounts to

4 punishment"); Pierce, 76 F.3d at 1042; Redman v. County of San Diego, 942 F.2d 1435, 1441

5 (9th Cir. 1991) (en banc) (applying the Due Process standard in a case where a pretrial detainee

6 was assaulted); Leialoha, 2008 WL 2736020, at *5; Henderson v. Young, No. C05-0234

7 VRW/WAF, 2008 WL 564712, at *3 (N.D. Cal. Feb. 28, 2008) (analyzing the decisions in Lolli,

8 Gibson and Pierce and concluding that "the Due Process Clause alone applies to the use of force

9 after arraignment and before conviction."); Walck v. Dunkerson, No. CV 04-55-H-DWM, 2007

10 WL 4179411, *10 (D. Mont. Nov. 16, 2007) ("So far as this Court is aware, the Ninth Circuit has

11 not decided any case by analyzing under the Fourth Amendment a claim brought by a pretrial

12 detainee, here used to mean someone held on a judicial determination of probable cause.").

13          An analysis of whether a substantive due process violation has been shown in this

14 context requires the balancing of several factors focusing on the reasonableness of the officers'

15 actions under the circumstances.  White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990); Smith v.

16 City of Fontana, 818 F.2d 1411, 1417 (9th Cir. 1987).  Thus, in determining whether there has

17 been egregious government conduct in the form of excessive use of physical force the four

18 factors to be considered are

19
20                (1) the need for the application of force, (2) the relationship
between the need and the amount of force that was used, (3) the
extent of the injury inflicted, and (4) whether force was applied in a
good faith effort to maintain and restore discipline.
21

22 White, 901 F.2d at 1507.  See also Smith, 818 F.2d at 1417; Gaut v. Sunn, 810 F.2d 923, 924

23 (9th Cir. 1987).  Although the extent of the injury suffered by the plaintiff is a factor to be

24 considered in such cases, it is viewed in relation to the other relevant factors.  See Grinage v.

25 Leyba, No. 2:06-CV-0835-RLH-GWF, 2008 WL 199720, at *5 (D. Nev. Jan. 17, 2008)

26 (comparing substantive Due Process and Eighth Amendment cases and concluding that "[u]nder

a similar due process analysis, evidence that detention officers engaged in an unprovoked and unjustified beating of a pretrial detainee would be sufficient to violate the Due Process Clause even though the plaintiff's injuries may not be considered significant or serious."); Escareno v. C/o Bangs, No. CV-06-5005-EFS, 2007 WL 4287273 (E.D. Wash. Dec. 4, 2007) (applying White's four factors and finding that there was a need for the use of force due to plaintiff's aggressive behavior, the amount of force used was proportional to the need to use force, the injuries suffered were minor and insufficient to demonstrate that defendant used excessive force, and force was applied in a good faith effort to maintain and restore discipline); Walck, 2007 WL 4179411, at *11 (granting summary judgment in favor of defendants where there was a legitimate need to apply force by using handcuffs during transport when plaintiff was extremely volatile in his interactions with officers and there was no evidence to either suggest that the use of handcuffs was excessive or that plaintiff suffered any lasting or significant injury).

Finally, at the final juncture in the custodial continuum, "[a]fter conviction, the Eighth Amendment serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified." Graham, 490 U.S. at 395 n.10 (internal quotation marks omitted); see also Leialoha, 2008 WL 2736020, at *5.

## ANALYSIS

In moving for summary judgment in their favor, counsel for defendants Garrison and Rodriguez have analyzed plaintiff's claims involving each of the alleged incidents under the Fourth, Fourteenth, and Eighth Amendments. However, as the court has determined above, the applicable legal standard is based on the custodial status of the plaintiff at the time of each of the incidents alleged.

I. Eighth Amendment Claims

In his complaint, under "Claims for Relief," plaintiff alleges that the use of "physical force against the plaintiff" by defendants Garrison and Rodriguez constituted cruel and unusual punishment in violation of the Eighth Amendment. (Compl. at 27-29,  ¶¶ 142, 146,

1    150.)  Defendants argue that the Eighth Amendment applies only to convicted prisoners and that

2    plaintiff, as a pretrial detainee during all of the incidents alleged in his complaint, cannot be

3    entitled to relief under the Eighth Amendment.  (Defs.' P&A at 14.)  The court agrees.  Since the

4    incidents alleged by plaintiff in his complaint all occurred prior to plaintiff's conviction, the

5    Eighth Amendment does not apply here.  Therefore, defendants' motion for summary judgment

6    should be granted as to all of plaintiff's Eighth Amendment claims.

7    II.  Fourth Amendment Claim:  June 30, 2005 Incident Involving Defendant Garrison

8           The parties have not addressed plaintiff's custodial status on June 30, 2005.  The

9    court has assumed for purposes of ruling on the pending motion that plaintiff had not yet been

10   arraigned on criminal charges at the time this excessive use of force allegedly occurred.  The

11   court feels safe in this assumption based on the fact that plaintiff was not arrested until June 29,

12   2005 and this alleged incident occurred the next day at approximately 9:00 a.m.  Therefore,

13   assuming plaintiff was a pre-arraignment detainee at the time, the applicable legal standard to be

14   employed is based on the Fourth Amendment.  As discussed above, that standard requires the

15   balancing of the nature and quality of the force used with the governmental interest at stake in

16   determining whether the use of force was reasonable.

17          A.  Defendant's Motion

18          Defendant Garrison contends that he did not use any force on plaintiff on June 30,

19   2005.  According to defendant Garrison's evidence, on that day plaintiff was in the dayroom

20   using the telephone, dressed only in his underwear and t-shirt.  (Mot. for Summ. J., Mem. P. &

21   A. (Defs.' P&A), at 8; Prestridge Decl. (Doc. No. 132, Part 11) ¶ 3 at 1; Garrison Decl. (Doc. No.

22   132, Part 7) ¶ 4 at 2.)  Because plaintiff was violating Solano County jail rules by not being fully

23   dressed when out of his cell and because unlock time had concluded and plaintiff was to return to

24   his cell, Officer Prestridge ordered that the telephone be turned off.  (Prestridge Decl. ¶ 4 at 1-2;

25   Garrison Decl. ¶ 5 at 2.)  Plaintiff became angry and ran towards the dayroom door where Officer

26   Prestridge was located.  (Id.)  Prestridge ordered plaintiff to return to his cell.  (Id.)  Plaintiff

10

1    became more angry, yelled at Prestridge and a brief argument ensued.  (Id.)  Officer Collins came

2    to assist Prestridge and plaintiff was repeatedly ordered to return to his cell.  (Id.)  Plaintiff

3    eventually complied with that order.  (Id.)  Defendant Garrison entered the dayroom to provide

4    assistance but remained on the dayroom floor as Officers Collins and Prestridge escorted plaintiff

5    to his cell.  (Prestridge ¶ 5 at 2; Garrison Decl. ¶ 6 at 3.)  Defendant Garrison declares that "[a]t

6    no point during this incident on July 30, 2005, did I make physical contact with LOW or apply

7    any physical force."  (Garrison Decl. ¶ 7 at 3.)  Defense counsel argues that since there is no

8    evidence before the court that defendant Garrison used any force against plaintiff on the day in

9    question, he is entitled to summary judgment on this claim.  (Defs.' P&A at 18.)

10          B.  Plaintiff's Opposition[1]

11          In his opposition to the pending motion, and the declaration in support thereof,

12   plaintiff repeats the allegations of his complaint.  According to plaintiff, on June 30, 2005, he

13   was talking to Officer Prestridge when defendant Garrison came from behind Officer Prestridge,

14   grabbed plaintiff by the neck and pushed his head into the wall.  (Pl.'s. Decl. (Doc. No. 168) ¶ 4

15   at 2.)  In this regard, plaintiff states as follows:

16                Defendant Garrison then turned me around by grabbing my arms
              and slammed my face and chest area into the wall and began
17            shoving me up the stairs to my cell.  At no time did I attempt to
              resist defendant Garrison.

18

19   (Id. at 2.)  Plaintiff also points to the incident report form prepared by Officer Prestridge which

20   classified the incident violations as "#02-Obey all Lawful Orders; #08-Refusal to Lockdown; and

21   #28-Courtesy and Respect."  (Headley Decl. in Support of Stanton and Headley's MSJ (Doc. No.

22   135, part 11), Ex. B.)  The form also provides the following information:  "Use of force? Y" and

23

24          [1]  In his opposition, plaintiff requested that the motion for summary judgment be denied
     without prejudice until the court rules on his pending motions to compel discovery.  (Opp'n at
     10.)  However, on January 7, 2009, the court denied plaintiff's motions to compel, finding that
25   his discovery requests were overly broad, burdensome, sought information that was not
     admissible or relevant and, if granted, would infringe on the privacy rights of other inmates.  See
26   Order filed Jan. 7, 2009 (Doc. No. 183).

1  "Inmate Violence? N."  (Id.)  Plaintiff points out that Officer Prestridge reported the following

2  about the incident:

3          AT 0900 AM ON THE ABOVE DATE, THE TOP TIER
           UNLOCK IN D-MOD HAD ENDED WHEN I NOTICED
4          INMATE LOW, TONY USING THE PHONE IN THE
           DAYROOM WEARING ONLY HIS BOXERS AND T-SHIRT.
5          AT THIS POINT I HAD THE TOWER TURN OFF THE PHONE
           CAUSING INMATE LOW TO BECOME ANGRY AND COME
6          RUNNING UP TO ME AT THE DAYROOM DOOR.  I
           ORDERED INMATE LOW TO LOCK DOWN.  INMATE LOW
7          BECAME EVEN MORE ANGRY SAYING THAT HE WAS
           TRYING TO BAIL OUT.  AT THIS POINT MYSELF, OFFICER
8          COLLINS AND OFFICER GARRISON RESTRAINED INMATE
           LOW AND ESCORTED HIM BACK TO HIS CELL.  INMATE
9          LOW CONTINUED TO RESIST ALL THE WAY TO HIS CELL.

10 (Headley Decl., Ex. B at 2; Prestridge Decl., Ex. A) (emphasis added).  Finally, plaintiff  declares

11 that he was never informed or warned about improper attire and that he did not receive a rule

12 infraction for wearing improper attire in connection with this incident.  (Pl.'s Decl. ¶¶ 13-14.)

13         C.  Defendant's Reply

14         Defendant Garrison repeats his assertion that he did not use any force but was

15 simply present while plaintiff was escorted to his cell.  Counsel on behalf of defendant Garrison

16 contends that there is no evidence that plaintiff suffered any injuries as a result of the June 30,

17 2005 incident.  (Reply (Doc. No. 172) at 2.)  Defense counsel points out that although plaintiff

18 now contends that he suffered a cracked tooth and dizzy spells for several weeks after June 30,

19 2005, plaintiff was seen by medical staff the following day and there was no report of any

20 injuries.  (Id.)

21         D.  Discussion

22         Defendant Garrison has presented evidence indicating that he had no physical

23 contact with plaintiff on June 30, 2005.  In this regard, he has provided the court with his own

24 declaration, the declaration of Officer Prestridge stating that defendant Garrison had no contact

25 with plaintiff and the declaration of consultant and law enforcement trainer Don Cameron who

26 reviewed documents and determined that there was no evidence of any use of force by defendant

1   Garrison.[2]  In opposing summary judgment, plaintiff has submitted evidence in the form of his

2   own declaration stating that defendant Garrison grabbed him by the neck and arms and slammed

3   him against the wall.  Moreover, plaintiff points to the incident report before the court prepared

4   by Officer Prestridge which states that defendant Garrison was more than a mere observer and, in

5   fact, assisted in restraining plaintiff on June 30, 2005.

6           The evidence of the party opposing summary judgment is to be believed.  Plaintiff

7   has submitted evidence establishing that a genuine issue as to a material fact does exist.  Whether

8   defendant Garrison had physical contact with plaintiff on June 30, 2005 and whether he used

9   excessive force against plaintiff at that time will have to be determined by a jury.  Defendant

10  Garrison's argument that he is entitled to summary judgment because plaintiff has failed to

11  establish that he suffered injuries as a result of this incident is unpersuasive.  As noted above, a

12  Fourth Amendment excessive use of force claim does not require a showing of significant injury.

13  Therefore, defendants' motion for summary judgment as to plaintiff's Fourth Amendment claim

14  concerning the June 30, 2005 incident should be denied.

15  III.  Fourteenth Amendment Claim:  July 4, 2005 Incident Involving Defendants Garrison and

16  Rodriguez

17          Again, the parties have failed to address plaintiff's custody status at the time of his

18  next alleged incident at the Solano County Jail on July 4, 2005.  For purposes of resolving the

19  pending motion the undersigned has presumed that plaintiff was a post-arraignment, pretrial

20  detainee on that date because California Penal Code § 825(a)(1) requires that "the defendant shall

21  in all cases be taken before the magistrate without unnecessary delay, and, in any event, within

22  48 hours after his or her arrest, excluding Sundays and holidays."  Plaintiff was arrested on

23  Wednesday, June 29, 2005, and July 4, 2005 was a Monday.  Plaintiff would presumably have

24  appeared in court and been arraigned on Friday, July 1, 2005.  Therefore, the legal standard

25

26          [2]  See Doc. No. 132, Part 4 (Cameron Decl.) at ¶ 9.

13

1  applicable to plaintiff's excessive force claim stemming from his interaction with the defendants

2  on July 4, 2005, is the Fourteenth Amendment's Due Process Clause.

3      A.  Defendants' Motion

4          In his declaration, defendant Garrison describes the circumstances resulting in the

5  use of force against plaintiff on July 4, 2005.  According to the Garrison declaration, plaintiff

6  was in the dayroom, repeatedly pressing the intercom button to request that he be allowed to use

7  the telephone.  (Garrison Decl. at 3.)  Garrison informed plaintiff that he was serving a

8  disciplinary sentence and therefore did not have telephone privileges.  (Id.)  Plaintiff became

9  angry, directed foul language at Garrison and repeatedly insisted to be allowed to use the

10 telephone.  (Id.)  To enforce discipline, defendant Garrison ordered plaintiff to return to his cell.

11 (Id.)  Plaintiff refused and yelled out, "No!  I ain't locking down!"  (Id.)  Defendants Garrison

12 and Rodriguez then entered the dayroom to escort plaintiff to his cell.  (Id. at 3-4.)  Further,

13 Garrison declares:

14       When LOW again refused a verbal command by me to return to his
      cell, I attempted to apply a wrist lock to LOW.  As I did, LOW
15       attempted to break free from the hold by spinning away.  As he did,
      I managed to grab LOW by his shirt, turn him to the side, and roll
16       him face-down onto the ground.  I immediately laid on top of
      LOW'S upper body.  As I took LOW to the ground, RODRIGUEZ
17       rushed to my aid and laid down on LOW'S lower body.  Once he
      was on the ground, I told LOW to calm down and he quickly did
18       so.

19       After LOW had calmed down and had been on the ground for no
      more than a few seconds, I took hold of one of his arms and
20       RODRIGUEZ grasped the other.  We then assisted him to his feet
      and walked him back to his cell.

21

22 (Id. at 4, ¶¶ 11-12.)  Defendant Rodriguez has provided a similar version of the events in his

23 declaration.  See Doc. No. 132, Part 13.

24         Both defendants assert that at no time during the July 4, 2005, incident was

25 plaintiff punched, kicked or dragged.  (Garrison Decl. at 4; Rodriguez Decl. at 3.)  Defendant

26 Garrison states that approximately five minutes after plaintiff was placed back in the cell, he

1   asked plaintiff if he had suffered any injuries or needed to see a nurse.  (Garrison Decl. at 4.)

2   According to Garrison, plaintiff answered, "no."  (Id.)  The incident report written by defendant

3   Garrison is consistent with his contention that plaintiff continued to resist the officers:

> AS WE ENTERED A-MOD, I TOLD INMATE LOW AGAIN TO
> LOCK DOWN AND HE REFUSED.  I TRIED TO APPLY A
> WRIST LOCK AND HE PULLED AWAY, AT WHICH TIME
> OFFICER RODRIGUEZ AND I TOOK HIM TO THE GROUND
> TO CONTROL HIM.  AFTER GAINING CONTROL OF
> INMATE LOW WHO CONTINUED TO RESIST, WE
> ESCORTED HIM BACK TO HIS CELL.  AFTER ABOUT 5
> MINUTES, I ASKED INMATE LOW IF HE NEEDED A NURSE
> OR HAD ANY INJURIES AND HE STATED NO.

(Id., Ex. A.)

10   Defendants argue that their use of force was necessary because plaintiff refused to

11   return to his cell, the amount of force used was minimal, plaintiff did not require medical care,

12   and force was applied in a good faith effort to restore discipline within the jail.  (Defs.' P&A at

13   22-23.)

14   B.  Plaintiff's Opposition

15   Plaintiff has submitted a declaration in support of his opposition in which he

16   essentially repeats the allegations of his complaint with respect to the July 4, 2005 incident.

17   According to plaintiff's declaration, he was pressing the intercom button and asking to make a

18   telephone call to a bail bonds company.  Defendants Garrison and Rodriguez opened the

19   dayroom door and,

> [d]efendant Garrison immediately rushed towards me with closed
> fists and said, "I told you I'd beat your ass.  At this point Defendant
> Garrison began to strike me with closed fists about the head and
> upper torso area, striking me several times in the face.

23   (Pl.'s Decl. at 5.)  According to plaintiff, when he fell to the floor, defendant Rodriguez kicked

24   plaintiff in the rib area, stomped on his neck, and the defendants then dragged him across the

25   floor and kicked plaintiff inside his cell.  (Id.)  Plaintiff also disputes defendants' description of

26   the events.  He denies using obscene or vulgar language and that he screamed at defendant

1   Garrison over the intercom.  (Pl.'s Opp'n at 18-19.)  He contends that the two defendants' own

2   versions of the July 4, 2005, incident are inconsistent and that there was no legitimate

3   governmental interest in having two correctional officers leave their control tower posts to

4   confront plaintiff, who was alone in the dayroom.  (Id. at 20.)

5          C.  Reply

6          Counsel for defendants argues that despite plaintiff's allegation that excessive

7   force was used, it is undisputed that plaintiff did not require medical attention as a result of the

8   incident in question.  (Reply at 3.)  Counsel also contends that plaintiff has failed to present any

9   evidence that unreasonable or excessive force was used against him on July 4, 2005, that there

10  are no genuine issues of material fact in dispute and that the defendants are entitled to summary

11  judgment in their favor.  (Id.)

12         D.  Discussion

13         An analysis of whether a substantive due process violation has been established

14  requires the balancing of several factors focusing on the reasonableness of the officers' actions

15  under the circumstances.  In that balancing, the court considers the need for the use of force, the

16  amount of force used, the extent of the injury inflicted and whether the force was applied to

17  maintain and restore discipline.  Here, the undersigned concludes that based upon the evidence

18  submitted by the parties, there is a genuine dispute as to each of these factors.  Defendants have

19  submitted their own declarations in which they state that plaintiff was refusing to lockdown, that

20  they used minimal force to restore order and did not punch, kick or drag plaintiff and that

21  plaintiff did not suffer any injuries and did not request medical care following the incident.  (See

22  Garrison Decl. at 4; Rodriguez Decl. at 3.)  Plaintiff counters with his own declaration in which

23  he states that he was merely requesting that the telephone be turned on when defendant Garrison

24  rushed into the dayroom and began to hit him, defendant Rodriguez kicked him in the ribs,

25  stomped on his neck, both defendants dragged him across the floor and kicked him inside of his

26  /////

1  cell and that as a result he suffered "soft tissue damage including soreness in my neck, bruises,

2  headaches." (Pl.'s Decl. at 5-6.)

3         The evidence of the party opposing the summary judgment motion is to be

4  believed. Plaintiff has submitted evidence establishing that genuine issues as to a material fact

5  do exist with respect to the events of July 4, 2005. In this regard, genuinely disputed issues have

6  been established as to the need for the use of force, the amount of force used and the extent of the

7  injuries suffered by plaintiff on the day in question. Defendants' motion for summary judgment

8  as to this claim should therefore be denied.

9  IV.  Fourteenth Amendment Claim:  July 19, 2005 Incident Involving Defendant Garrison

10        A.  Defendant's Motion

11        In his declaration submitted in support of his motion for summary judgment on

12  this claim, defendant Garrison states that on July 19, 2005, he was informed by maintenance staff

13  that an electrical outlet in the housing module had been tampered with and that the metal plate,

14  splitter and a number of metal pieces were missing. (Garrison Decl. at 4.)  Plaintiff was

15  suspected of the tampering because he had previously dismantled and hidden metal parts. (Id.)

16  Officer Weary and defendant Garrison proceeded to plaintiff's cell to conduct a search and

17  plaintiff was ordered to sit at a table in the dayroom area. (Id. at 5.)  Officer Weary stood by

18  plaintiff and was soon joined by Officer Smith. (Id.)  While searching plaintiff's cell, defendant

19  Garrison discovered the missing metal plate and two other metal objects from the electrical

20  outlet. (Id.)  As the search continued, plaintiff became verbally abusive and then, suddenly, ran

21  out the open door of the module, closing the door behind him. (Id.)  The door had to be opened

22  by officers remotely and Officers Weary, Smith and defendant Garrison then pursued plaintiff

23  into the officers' station area. (Id.)  Plaintiff ran behind a pair of maintenance carts containing

24  various tools. (Id.)  Defendant Garrison declares that at that point,

25              I ran toward LOW hoping to grab him before he could find
             something to use as a weapon. Officer Smith quickly took hold of
26           one of the maintenance carts and moved it out of the way while

17

Officer Weary moved the other cart. LOW, however, had managed to pick up an aerosol spray can. As I came upon LOW, I ordered him to put the can down, but he did not. Instead, he raised the can into the air as if he was intending to use it as a weapon against me. In self-defense, I ducked and struck LOW once to the face with my left hand. LOW fell to the ground and dropped the aerosol spray can.

LOW was face down on the ground with his arms underneath him. Using his hands, he attempted to raise himself back to his feet. In a quick effort to restrain LOW, I got on top of LOW. I ordered him to lay flat on the ground and bring his arms out from underneath himself so that I could secure him. The struggle lasted for approximately eight to ten seconds, during which time LOW was repeatedly ordered by the other officers who had rushed to the scene and me to cease his resistence. I soon managed to pull LOW's arm from underneath him and place LOW on his chest. By this time, Officer Davis was laying across LOW's legs as I held down LOW's upper body. Officers Lagrisola, Prestridge, and Mallory grabbed LOW's arms and legs and succeeded in placing LOW in handcuffs, and leg restraints.

(Id. at 5-6, ¶¶ 19-20.)

Officers Weary and Prestridge have also provided declarations as well as the incident reports they wrote near the time, supporting defendant Garrison's description of the July 19, 2005, incident. (Weary Decl. (Doc. No. 132, Part 17) and Ex. A; Prestridge Decl., Ex. B.) Officer Lagrisola has also provided a declaration supporting defendant Garrison's version of his efforts to restrain plaintiff. (Lagrisola Decl. (Doc. No. 132, Part 9) at 2.) Officer Lagrisola declares that plaintiff resisted efforts to place him in restraints and that Officer Lagrisola issued several commands to plaintiff to stop resisting and place his hands behind his back. (Id.) According to plaintiff's medical record, he was examined on July 20, 2005, and it was noted that there was no swelling, no broken skin, mild redness, and that lower, inside of his lip had 2-3 red spots. (Wilson Decl. (Doc. No. 132, Part 19), Ex. B - Calif. Forensic Medical Group Progress Notes ( Doc. No. 132, Part 20)).

Defendant Garrison argues that his use of force against plaintiff was reasonable because plaintiff ran from the housing unit, locking the door behind him and that once he was trapped, he picked up a aerosol spray can and brandished it like a weapon. (Defs.' P&A at 23.)

18

1   Garrison contends that the amount of force used to disarm plaintiff and to restrain him as he

2   resisted the officers, was appropriate.  (Id. at 23-24.)  Defendant Garrison also points out that the

3   force used did not result in serious injuries.  (Id. at 24.)  Finally, defendant argue that force was

4   applied in a good faith effort to restore discipline as plaintiff ran from the housing unit,

5   threatened officers and refused to obey orders.  (Id.)

6       B.  Plaintiff's Opposition

7       Plaintiff has submitted a declaration in support of his opposition in which he

8   essentially repeats the allegations of his complaint with respect to the July 19, 2005 incident.

9   According to plaintiff's declaration, he did not resist or threaten defendant Garrison.  (Pl.'s Decl.

10  at 8.)  Plaintiff again argues that there are inconsistencies and omissions from the declarations

11  and reports submitted in support of defendant Garrison's summary judgment motion by officers

12  who were eyewitnesses to the incident.  Plaintiff points out that Officer Solis, who was in the

13  tower, makes no mention about any weapons nor does he state that defendant Garrison struck

14  plaintiff.  (Opp'n at 22.)[3]  Plaintiff observes that Officers Weary and Smith also do not mention

15  that defendant Garrison struck plaintiff.  (Id. at 22-23.)  Plaintiff contends that, "[t]here is no

16  legitimate governmental interest in striking plaintiff with such force to knock out his tooth and

17  Garrison seriously injurying [sic] his hands and wrist from striking plaintiff in the head and

18  /////

19

20      [3]  In this regard plaintiff refers to Officer Solis's incident report (Doc. No. 135, Part 13)
    which states:

21

22          I officer Solis was assigned to work tower 4 on 071905.  At
            approximately 1449 hours inmate Low, Tony (A12) cell was being

23          searched.  Inmate Low was sitting down in the dayroom.  When all
            of a sudden Low starting [sic] running out of A mod.  Inmate Low

24          ran towards tower 4 control door.  I called an 1199 via radio.
            Inmate was restrained and taken to the floor were [sic] he was

25          handcuffed.  Inmate was then placed in the yard with handcuffs and
            shackles.  Medical was called down.

26  (Id. at 17.)

1    face."  (Id. at 23.)  Finally, as to his alleged "escape," plaintiff argues that "prison conditions that

2    threaten the prisoner with substantial bodily injury can justify escape."  (Id. at 24.)

3        C.  Reply

4            In his reply defendant Garrison refers to plaintiff's medical records in arguing that

5    there is no evidence of the unreasonable or excessive use of force in connection with the July 19,

6    2005 incident.  (Reply at 3.)

7        D.  Discussion

8            As with respect to plaintiff's other excessive use of force claims, the evidence

9    submitted by the parties provide conflicting accounts regarding whether plaintiff resisted and

10   threatened the defendant officers, the amount of force the defendants used, the extent of the

11   injury, if any, suffered by plaintiff, and whether defendants' use of force was justified in order to

12   restore discipline within the jail.  Moreover, the lack of medical evidence to support plaintiff's

13   claimed injuries, pointed out by defendants, does not carry the day.  The dearth of such evidence

14   may well reflect on plaintiff's credibility, but is not a sufficient basis upon which to grant

15   summary judgment in defendants' favor.  As the Ninth Circuit has observed,

> Determining whether a police officer's use of force was reasonable
> or excessive therefore requires careful attention to the facts and
> circumstances of each particular case and a careful balancing of an
> individual's liberty with the government's interest in the application
> of force.  [Graham v. Connor, 490 U.S. 386, 396 (1989)]; see
> Deorle v. Rutherford, 272 F.3d 1272, 1279-81 (9th Cir. 2001).
> Because such balancing nearly always requires a jury to sift
> through disputed factual contentions, and to draw inferences
> therefrom, we have held on many occasions that summary
> judgment or judgment as a matter of law in excessive force cases
> should be granted sparingly.  See, e.g., Liston v. County of
> Riverside, 120 F.3d 965, 976 n. 10 [(9th Cir.1997)] (citing several
> cases).  This is because police misconduct cases almost always turn
> on a jury's credibility determinations.

24   Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir. 2003) (quoting

25   Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)) .

26   /////

1    This is such a case.  Plaintiff has submitted evidence establishing that genuine

2 issues of material fact do exist with respect to the events of July 19, 2005.  Genuinely disputed

3 issues have been established as to the need for the use of force, the amount of force used and the

4 extent of the injuries suffered by plaintiff on the day in question.  Therefore, defendants' motion

5 for summary judgment in their favor with respect to this claim should be denied.

6 V.  <u>Qualified Immunity</u>

7    Defendants next argue that they are entitled to summary judgment in their favor

8 on qualified immunity grounds because, even assuming that plaintiff could establish a violation

9 of his constitutional rights, no reasonable correctional officer could have believed at the time that

10 defendants' actions violated a clearly established constitutional right of plaintiff's.  (Defs.' P&A

11 at 32.)

12    "Government officials enjoy qualified immunity from civil damages unless their

13 conduct violates 'clearly established statutory or constitutional rights of which a reasonable

14 person would have known.'"  <u>Jeffers v. Gomez</u>, 267 F.3d 895, 910 (9th Cir. 2001) (quoting

15 <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified

16 immunity defense, the central questions for the court are (1) whether the facts alleged, taken in

17 the light most favorable to the plaintiff, demonstrate that the defendants' conduct violated a

18 statutory or constitutional right and (2) whether the right at issue was "clearly established."

19 <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  Although lower courts were previously required to

20 answer these questions in order, the Supreme Court has recently held that "while the sequence set

21 forth there is often appropriate, it should no longer be regarded as mandatory."  <u>Pearson v.</u>

22 <u>Callahan</u>, __ U.S. __, ___, 129 S. Ct. 808, 818 (2009).  In this regard, if a court decides that

23 plaintiff's allegations do not make out a statutory or constitutional violation, "there is no

24 necessity for further inquiries concerning qualified immunity."  <u>Saucier</u>, 533 U.S. at 201.

25 Likewise, if a court determines that the right at issue was not clearly established at the time of the

26 /////

1  defendant's alleged misconduct, the court may end further inquiry without determining whether

2  the allegations in fact make out a statutory or constitutional violation.  Pearson, 129 S. Ct. at 818.

3          For the same reasons that the parties' conflicting factual accounts of the July 19,

4  2005, incident preclude summary judgment in defendants' favor on the merits of the excessive

5  use of force claim, defendants also are not entitled to summary judgment based on qualified

6  immunity.[4]  See Blankenhorn v. City of Orange, 485 F.3d 463, 477-78 (9th Cir. 2007) (summary

7  judgment properly denied to defendants on plaintiff's excessive use of force claims in light of

8  disputed issues of fact necessary to decide that issue); Wilkins v. City of Oakland, 350 F.3d 949,

9  956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the

10  resolution of disputed issues of fact in their favor, and against the non-moving party, summary

11  judgment [on the ground of qualified immunity] is not appropriate."), cert. denied 543 U.S. 811

12  (2004); Adams v. Speers, No. CV-F-02-5741, 2004 WL 5567292, *12 (E.D. Cal. Dec. 16, 2004)

13  (denying defendant's motion for summary adjudication in his favor on qualified immunity

14  grounds in light of the factual questions surrounding his actions raised by plaintiff's evidence).

15  VI.  Plaintiff's Other Claims

16          A.  State Law Claims

17          In his complaint plaintiff alleges that defendants' use of force against him

18  constituted "the tort of assault and battery under the law of California."  (Compl. ¶¶ 143, 149,

19  153 at 27-30.)  Plaintiff also alleges that during medical and doctor visits for treatment of his

20  injuries, officers were present and "eaves dropping (sic) on the confidential physician patient

21  conversations in violation of Penal Code § 636(b)."  (Id. ¶ 96 at 19.)  Plaintiff contends that

22  during his physical conducted by jail medical personnel, defendant Garrison remained "in the

23  /////

24  _____

25  [4]  If plaintiff establishes his version of the events of July 19, 2005, are accurate, no reasonable correctional officer could have believed that such actions did not violate plaintiff's then clearly established constitutional rights.  Whether plaintiff can do so, of course, is an

26  entirely different matter.

1   area so plaintiff was scared of complaining to [sic] loud about his chipped tooth in fear of

2   retallitory [sic] action by defendant Garrison." (Id. ¶ 97 at 19-20.)

3          Defendants move for summary judgment on these state law claims, arguing that

4   plaintiff failed to comply with California's Government Claims Act which requires that a claim

5   be presented to the Board of Supervisors no more than six months after the cause of action

6   accrues. (Defs.' P&A at 24.)  In this regard, defendants rely upon the decisions in State v.

7   Superior Court (Bodde), 32 Cal. 4th 1234, 1243-45 (Cal. 2004) (discussing claim presentation

8   requirement under California's Tort Claims Act) and Mangold v. California Pub. Util. Comm'n,

9   67 F.3d 1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires, as a condition

10  precedent to suit against a public entity, the timely presentation of a written claim and the

11  rejection of the claim in whole or in part.").  Because plaintiff failed to comply with the

12  California Tort Claims Act, defendants argue, summary judgment should be granted in their

13  favor with respect to plaintiff's claims for assault, battery and eavesdropping. (Id. at 25.)

14         Citing California Government Code § 950[5], plaintiff argues that the claims

15  presentation requirement applies only to claims brought against a public entity and not to claims

16  against a public employee. (Opp'n at 29.)

17         Plaintiff is mistaken. As a district judge of this court has observed:

18  To the extent that plaintiffs bring state tort claims against Officer
    Sexson and Agent Corral, these claims must be dismissed. It is
19  well established that to sue a public employee under California
    law, a plaintiff must first file a claim with the employing public
20  entity. See Cal. Gov. Code § 950.2. [fn omitted] Section 950.2 of
    the California Government Code mandates that a cause of action
21  against a public employee . . . for injury resulting from an act or
    omission in the scope of his employment as a public employee is
22

23         [5] California Government Code § 950 provides:

24  Except as otherwise provided in this chapter, a claim need not be
    presented as a prerequisite to the maintenance of an action against
25  a public employee or former public employee for injury resulting
    from an act or omission in the scope of his employment as a public
26  employee.

barred unless a timely claim has been filed against the employing public entity. <u>Fowler v. Howell</u>, 42 Cal. App.4th 1746, 1750, 50 Cal. Rptr.2d 484 (1996). The California Legislature included in the Tort Claims Act what amounts to a requirement that . . . one who sues a public employee on the basis of acts or omissions in the scope of the defendant's employment [must] have filed a claim against the public-entity employer pursuant to the procedure for claims against public entities. <u>Briggs v. Lawrence</u>, 230 Cal. App.3d 605, 612-13, 281 Cal. Rptr. 578 (1991) (citing Cal. Gov. Code §§ 911.2, 945. 4, 950.2, 950.6(a)). Indeed, failure to adequately allege compliance with the Tort Claims Act when suing a public employee requires dismissal. <u>See Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 627 (9th Cir.1988) (affirming dismissal of pendent state law claims against public employee where plaintiff failed to allege compliance with the Tort Claims Act).

<u>Armstrong v. Sexson</u>, No. CIV. S-06-2200 LKK/EFB, 2007 WL 1219297, *3 (E.D. Cal. April 25, 2007). <u>See also</u> <u>Moran v. Dovey</u>, No. 1:08-cv-00016-AWI-SMS PC, 2009 WL 276783, *5 (E. D. Cal. Feb. 5, 2009) ("To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act."); <u>Rutlege v. County of Sonoma</u>, No. C 07-4274 CW, 2008 WL 4414740, *4-5 (N.D. Cal. Sept. 26, 2008) (granting motion to dismiss brought by a defendant DOJ criminalist on the ground that plaintiff had failed to comply with the California Tort Claims Act claims-presentation requirement); <u>Santos v. Merritt College</u>, No. C-07-5227 EMC, 2008 WL 2622792, *4 (N.D. Cal. July 1, 2008); <u>McConnell v. Lassen County, California</u>, No. Civ. S-05-0909 FCD DAD, 2007 WL 1931603, * 12 (E.D. Cal. June 29, 2007) (granting summary judgment in favor of public employee defendants in part due to plaintiff's failure to comply with the claim-presentation requirement of the California Tort Claims Act).

In arguing that the claim-presentation requirement does not apply to actions brought against public employees, plaintiff implicitly concedes that he has failed to comply with the requirements of the California Tort Claims Act. Accordingly, defendants are entitled to summary judgment in their favor as to these state claims.

/////

/////

1    B.  Federal Right to Privacy Claim

2         In his complaint, plaintiff alleges as follows:

3         It is the practice, and custom for defendant Stanton's agents to
          stand next to pretrial detainees during all medical visits and doctor
4         visits eaves dropping on the confidential physician patient
          conversations in violation of Penal Code § 636 (b).
5
6         During my physical with Defendant Michelle[,] Defendant
          Garrison was in the area so plaintiff was scared of complaining to
          [sic] loud about his chipped tooth in fear of retallitory [sic] action
7         by defendant Garrison.

8    (Compl. at 19-20, ¶¶ 96-97 .)  However, in his claim for relief, plaintiff alleges:

9          The failure of Defendant Stanton to ensure his agents do not
           violate California Penal Code § 636(b) by eavesdropping on the
10         confidential physician patient conversations constitutes diliberate
           [sic] indifference and further denied the plaintiff the right of
11         privacy explicitly guaranteed by Article 1 § 1 of the California
           Constitution and the Fourth Amendment of the United States
12         Constitution.

13   (Id. at 36, ¶ 173.)  Plaintiff has not sought monetary damages or any other relief with respect to

14   this claim in his complaint.

15        In an abundance of caution, counsel for defendant Garrison argues that if plaintiff

16   has alleged a claim against the defendant for violating plaintiff's federal right to privacy,

17   summary judgment should be granted in favor of defendant Garrison with respect to any such

18   claim.  In this regard, counsel agues that although a prisoner does not lose all rights of privacy,

19   those rights are appropriately severely curtailed as a result of incarceration.  (Defs.' P&A at 28-

20   29.)  Counsel contends that defendant Garrison's presence in the area while plaintiff received

21   medical care is no evidence of an invasion of plaintiff's privacy.  (Id. at 29.)

22        In his opposition plaintiff argues that he "has a right to be secure in his private

23   communications within the doctor-patient privilege relationship and that defendant did not have a

24   "legitimate justification . . . [for] eavesdropping on plaintiff's private doctor-patient

25   communications[.]"  (Opp'n at 36-37.)

26   /////

25

1    As noted above, plaintiff has not requested any relief in connection with this claim

2    and dismissal would be appropriate on that basis alone.  Moreover, to the extent plaintiff asserts

3    that he has a right to privacy based on a doctor-patient privilege, the court notes that the privilege

4    is an evidentiary rule which does not confer substantive constitutional rights on plaintiff.  See

5    Floyd v. Emmet County Correctional Facility, No. 1:06-CV-283, 2006 WL 1429536, at *4 (W.D.

6    Mich. May 23, 2006) (the privilege is a state evidentiary rule and confers no substantive federal

7    rights); Johnson v. O'Donnell, Inmate Complaint Reviewer, No. 01-C-0257-C, 2001 WL

8    34372892, at *10 (W.D. Wis. Aug. 24, 2001) ("The physician-patient privilege protects a person

9    who has imparted confidential information to a physician from having such information revealed

10   in the course of litigation . . . .  The physician-patient privilege is inapplicable in the context of a

11   prisoner who does not wish security guards to be present at his medical examination.").

12   Therefore, summary judgment should be granted in favor of defendant Garrison as to any federal

13   right to privacy claim brought by plaintiff in this action.

14       C.  Declaratory Relief

15       In his complaint, plaintiff requests that the court grant him declaratory relief by

16   finding that:

17           The physical abuse of the plaintiff by defendants Garrison and
             Rodriguez violated the plaintiff's rights under the Fourth,
18           Fourteenth, and Eighth Amendments to the United States
             Constitution and constituted an assault and battery under state law.
19

20   (Compl. at 40-41.)

21       The court will recommend that defendants' motion for summary judgment as to

22   plaintiff's request for declaratory relief be granted.  Plaintiff seeks a declaration which is

23   duplicative of the relief he would obtain should he prevail at trial.

24           "A declaratory judgment, like other forms of equitable relief,
             should be granted only as a matter of judicial discretion, exercised
25           in the public interest."  Eccles v. Peoples Bank of Lakewood
             Village, 333 U.S. 426, 431, 68 S. Ct. 641, 92 L. Ed. 784 (1948).
26           "Declaratory relief should be denied when it will neither serve a

> useful purpose in clarifying and settling the legal relations in issue
> nor terminate the proceedings and afford relief from the uncertainty
> and controversy faced by the parties." United States v.
> Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event
> that this action reaches trial and the jury returns a verdict in favor
> of plaintiff, that verdict will be a finding that plaintiff's
> constitutional rights were violated. Accordingly, a declaration that
> defendants violated plaintiff's right would then be unnecessary.

Rainer v. Calderon, No. 1:04-cv-05545-LJO-DLB (PC), 2008 WL 217488, at *4 (E.D. Cal. Jan. 25, 2008). See also Rosenbaum v. City and County of San Francisco, 484 F.3d 1142, 1163 n.15 (9th Cir. 2007) (concluding that declaratory relief was unnecessary).

Accordingly, summary judgment should be granted in favor of defendants with respect to plaintiff's request for declaratory relief set forth above.

D. Official Capacity

Finally, defendants Garrison and Rodriguez assert that they are being sued in this action in both their individual and official capacities. They argue that they are not lawmakers or policymakers for the Solano County Sheriff's Department and should be granted summary judgment with respect to all claims in which they are being sued in their official capacity. (Defs.' P&A at 31.)

In his opposition to the pending motion, plaintiff requests that his suit proceed against defendants Garrison and Rodriguez in their individual capacities and that he be allowed to substitute the Solano County Sheriff's Department into this action "as the official capacity defendant for all causes of action against Garrison and Rodriguez[.]" (Opp'n at 27-28.)

Plaintiff's request to "substitute" the Sheriff's Department for an official capacity suit is unsupported by the allegations of his complaint. As the Supreme Court has stated:

> More is required in an official-capacity action, however, for a
> governmental entity is liable under §1983 only when the entity
> itself is a moving force behind the deprivation; thus, in an official-
> capacity suit the entity's policy or custom must have played a part
> in the violation of federal law.

/////

1  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal citations and quotation marks omitted).

2  Here, the Solano County Sheriff's Department cannot be held liable for an injury inflicted solely

3  by an employee under a theory of *respondeat superior*.   <u>Polk County v. Dodson</u>, 454 U.S. 312,

4  325 (1981); <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 691 (1978); <u>Gibson v. County of

5  Washoe, Nev.</u>, 290 F.3d 1175, 1185 (9th Cir. 2002), <u>cert</u>. <u>denied</u>, 537 U.S. 1106 (2003)

6  (describing the two routes to municipal liability, where municipality's official policy, regulation

7  or decision violated plaintiff's rights, or alternatively where municipality failed to act under

8  circumstances showing its deliberate indifference to plaintiff's rights).  While the pleading

9  requirements for a municipal liability claim are not onerous (see <u>Galbraith v. County of Santa

10  Clara</u>, 307 F.3d 1119, 1127 (9th Cir. 2002), the complaint before the court does not clearly plead

11  the Solano County Sheriff Department's or the County's liability sufficiently to meet those

12  standards and to permit plaintiff's proposed substitution of parties.

13           Again, plaintiff's opposition implicitly concedes that he cannot proceed against

14  defendants Garrison and Rodriguez in their official capacities.  Accordingly, defendants' motion

15  for summary judgment with respect to plaintiff's official capacity suit against them should be

16  granted.

17                                        CONCLUSION

18           For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

19           1.  The August 13, 2008 motion for summary judgment brought on behalf of

20  defendants Garrison and Rodriguez (Doc. No. 132), be denied as to:

21                   a.  Plaintiff's excessive use of force claim brought under the Fourth

22  Amendment concerning the alleged June 30, 2005 incident;

23                   b.  Plaintiff's excessive use of force claims brought under the Fourteenth

24  Amendment concerning the alleged July 4, 2005 and July 19, 2005 incidents.

25           2.  The August 13, 2008 motion for summary judgment brought on behalf of

26  defendants Garrison and Rodriguez (Doc. No. 132), be granted as to:

1           a.  Plaintiff's remaining excessive use of force claims brought under the

2 Eighth, Fourth, and Fourteenth Amendments;

3              b.  Plaintiff's state law claims for assault, battery, and right to privacy;

4              c.  Plaintiff's federal right to privacy claim;

5              d.  Plaintiff's request for declaratory relief; and

6              e.  Plaintiff's claims brought against defendants Garrison and Rodriguez in

7 their official capacity.

8           These findings and recommendations are submitted to the United States District

9 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen

10 days after being served with these findings and recommendations, any party may file written

11 objections with the court and serve a copy on all parties.  Such a document should be captioned

12 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13 shall be served and filed within five days after service of the objections.  The parties are advised

14 that failure to file objections within the specified time may waive the right to appeal the District

15 Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

16 DATED: February 25, 2009.

17

18                                     _Dale A. Drozd_

19                           DALE A. DROZD
                          UNITED STATES MAGISTRATE JUDGE

20 DAD:4
   low2211.msjGarRod

21

22

23

24

25

26