1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TONY RICHARD LOW,

11              Plaintiff,                    No. CIV S-05-2211 MCE DAD P

12          vs.

13   GARY R. STANTON, et al.,

14              Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16              Plaintiff, a former inmate at the Solano County Jail, is proceeding pro se with

17   several claims brought pursuant to 42 U.S.C. § 1983 and state law.  Defendant Stanton is the

18   Sheriff/Coroner of Solano County and defendant Headley was a correctional lieutenant at the

19   Solano County Jail until his retirement in March 2006.  The defendants are sued by plaintiff in

20   both their personal and official capacities.  Now pending before the court is the motion for

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

summary judgment brought on behalf of defendants Stanton and Headley.[1]  Plaintiff has filed his

opposition and defendants have filed a reply.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

---

[1]  Defendants Stanton and Headley previously filed separate motions to dismiss specific claims brought against them. On August 16, 2007, the undersigned recommended that the motion to dismiss brought by defendants Headley, Von Ting and Childres, as well as the motion to dismiss brought by defendant Stanton, be granted.  The court concluded that plaintiff's claim against defendants Childres, Von Ting and Headley for refusing to overturn his disciplinary sentences failed to state a cognizable due process claim because he enjoyed no constitutional entitlement to a specific grievance procedure and the involvement of prison officials in reviewing an inmate appeal cannot serve as the basis for a § 1983 action.  See F&Rs filed Aug. 16, 2007 at 6-7.  For the same reasons, the court recommended that plaintiff's claims against defendant Stanton for failing to process inmate grievances, failing to overturn disciplinary sentences imposed and failing to provide a proper appeal process following a disciplinary hearing, be dismissed.  Id. at 8.  In addition, the court recommended the dismissal of plaintiff's claim against defendant Stanton concerning allegedly inadequate law library services.  Id. at 11.  The assigned district judge adopted those recommendations and dismissed the claims on September 20, 2007.

immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On December 8, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## LEGAL STANDARDS RELATING TO SUPERVISORIAL LIABILITY

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

"Liability under section 1983 arises only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Therefore, a supervisor is only liable for his own acts taken under color of state law. Kentucky v. Graham, 473 U.S. 159, 165 (1985). As the Ninth Circuit has recently observed:

> Under § 1983 a supervisor is only liable for his own acts. Where the constitutional violations were largely committed by subordinates the supervisor is liable only if he participated in or directed the violations.

/////

4

1 <u>Humphries v. County of Los Angeles</u>, ___F.3d___, ___, 2009 WL 102101, at * 27 (9th Cir. Jan.

2 15, 2009).

3         The U.S. Supreme Court has recognized as follows:

4         Official-capacity suits, in contrast, generally represent only another
way of pleading an action against an entity of which an officer is an

5         agent. As long as the government entity receives notice and an
opportunity to respond, an official-capacity suit is, in all respects

6         other than name, to be treated as a suit against the entity.

7 <u>Kentucky v. Graham</u>, 473 U.S. at 165-66 (internal quotation marks and citation omitted). Suits

8 against government officials in their official capacity are to be treated as suits against the

9 government entity and the real party in interest is the entity for which the official works. <u>Hafer v.</u>

10 <u>Melo</u>, 502 U.S. 21, 25 (1991).[2] Because the real party in interest in an official capacity suit is

11 the governmental entity and not the named official, to establish municipal liability the plaintiff

12 must show that the entity is a moving force behind the deprivation or that the entity's policy or

13 custom played a part in the violation of federal law. <u>Kentucky v. Graham</u>, 473 U.S. at 166;

14 <u>Hafer</u>, 502 U.S. at 361-62. In an official capacity suit,

15         the action that is alleged to be unconstitutional implements or
executes a policy statement, ordinance, regulation, or decision

16         officially adopted and promulgated by the body's officers.
Moreover, although the touchstone of the § 1983 action against a

17         government body is an allegation that official policy is responsible
for a deprivation of rights protected by the Constitution, local

18         governments . . . may be sued for constitutional deprivations
visited pursuant to governmental 'custom' even though such a

19         custom has not received formal approval through the body's
official decisionmaking channels.

20

21 <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 690 (1978). Such unwritten customs, although

22 not authorized by written law, can be so permanent and well settled as to constitute a custom or

23 usage with the force of law. <u>Monell</u>, 436 U.S. at 691.

24 /////

25

26         [2] In this case, the real party in interest therefore is Solano County.

<u>ANALYSIS</u>

Plaintiff presents forty-nine claims for relief in his complaint. Defendants Stanton and Headley have been named in several of those claims based on their supervisorial positions.

I. <u>Right to Privacy Claims</u>

In claiming that his right to privacy under both state and federal law was violated by the defendants, plaintiff alleges:

> It is the practice, and custom for defendant Stanton's agents to stand next to pretrial detainees during all medical visits and doctor visits eaves dropping on the confidential physician patient conversations in violation of penal [sic] §636(b).
>
> * * *
>
> The failure of defendant Stanton to ensure his agents do not violate California Penal Code § 636 (b) by eavesdropping on confidential physican [sic] patient conversations constitutes diliberate [sic] indifference and further denied the plaintiff the right of privacy explicitly guaranteed by Article 1 §1 of the California Constitution and the Fourth Amendment of the United States Constitution.

(Compl. at 19, ¶ 96 and at 36, ¶ 173.) Plaintiff has not sought compensatory damages with respect to this claim but rather seeks punitive damages from defendant Stanton in the amount of $25,000. (<u>Id.</u> at 45.)

Defendant Stanton has moved for summary judgment on these claims, arguing both that plaintiff failed to comply with the California Tort Claims Act claim presentation requirement with respect to such claims and that, in any event, the evidence before the court establishes that no right to privacy enjoyed by plaintiff was violated by defendants.

In recently considering another motion for summary judgment brought in this action, the court determined that the defendant was entitled to summary judgment on these claims because plaintiff had failed to comply with the California Tort Claim Act. In addition, the court recommended that summary judgment be granted in favor of the defendant with respect to plaintiff's federal privacy claim because plaintiff did not enjoy a federal constitutional right to

/////

privacy based on the doctor-patient privilege as he alleged under the facts established by the

evidence before the court.  In this regard, the undersigned observed:

> Citing California Government Code § 950[fn omitted], plaintiff argues that the claims presentation requirement applies only to claims brought against a public entity and not to claims against a public employee.  (Opp'n at 29.)  Plaintiff is mistaken.  As a district judge of this court has observed:

>> To the extent that plaintiffs bring state tort claims against Officer Sexson and Agent Corral, these claims must be dismissed. It is well established that to sue a public employee under California law, a plaintiff must first file a claim with the employing public entity.  See Cal. Gov. Code § 950.2. [fn omitted]  Section 950.2 of the California Government Code mandates that a cause of action against a public employee . . . for injury resulting from an act or omission in the scope of his employment as a public employee is barred unless a timely claim has been filed against the employing public entity.  Fowler v. Howell, 42 Cal. App.4th 1746, 1750, 50 Cal. Rptr.2d 484 (1996).  The California Legislature included in the Tort Claims Act what amounts to a requirement that . . . one who sues a public employee on the basis of acts or omissions in the scope of the defendant's employment [must] have filed a claim against the public-entity employer pursuant to the procedure for claims against public entities.  Briggs v. Lawrence, 230 Cal. App.3d 605, 612-13, 281 Cal. Rptr. 578 (1991) (citing Cal. Gov. Code §§ 911.2, 945. 4, 950.2, 950.6(a)).  Indeed, failure to adequately allege compliance with the Tort Claims Act when suing a public employee requires dismissal.  See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir.1988) (affirming dismissal of pendent state law claims against public employee where plaintiff failed to allege compliance with the Tort Claims Act).

> Armstrong v. Sexson, No. CIV. S-06-2200 LKK/EFB, 2007 WL 1219297, *3 (E.D. Cal. April 25, 2007).  See also Moran v. Dovey, No. 1:08-cv-00016-AWI-SMS PC, 2009 WL 276783, *5 (E. D. Cal. Feb. 5, 2009) ("To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act."); Rutlege v. County of Sonoma, No. C 07-4274 CW, 2008 WL 4414740, *4-5 (N.D. Cal. Sept. 26, 2008) (granting motion to dismiss brought by a defendant DOJ criminalist on the ground that

plaintiff had failed to comply with the California Tort Claims Act claims-presentation requirement); <u>Santos v. Merritt College</u>, No. C-07-5227 EMC, 2008 WL 2622792, *4 (N.D. Cal. July 1, 2008); <u>McConnell v. Lassen County, California</u>, No. Civ. S-05-0909 FCD DAD, 2007 WL 1931603, * 12 (E.D. Cal. June 29, 2007) (granting summary judgment in favor of public employee defendants in part due to plaintiff's failure to comply with the claim-presentation requirement of the California Tort Claims Act).

In arguing that the claim-presentation requirement does not apply to actions brought against public employees, plaintiff implicitly concedes that he has failed to comply with the requirements of the California Tort Claims Act. Accordingly, defendants are entitled to summary judgment in their favor as to these state claims.

* * *

As noted above, plaintiff has not requested any relief in connection with this claim and dismissal would be appropriate on that basis alone. Moreover, to the extent plaintiff asserts that he has a right to privacy based on a doctor-patient privilege, the court notes that the privilege is an evidentiary rule which does not confer substantive constitutional rights on plaintiff. <u>See Floyd v. Emmet County Correctional Facility</u>, No. 1:06-CV-283, 2006 WL 1429536, at *4 (W.D. Mich. May 23, 2006) (the privilege is a state evidentiary rule and confers no substantive federal rights); <u>Johnson v. O'Donnell, Inmate Complaint Reviewer</u>, No. 01-C-0257-C, 2001 WL 34372892, at *10 (W.D. Wis. Aug. 24, 2001) ("The physician-patient privilege protects a person who has imparted confidential information to a physician from having such information revealed in the course of litigation . . . . The physician-patient privilege is inapplicable in the context of a prisoner who does not wish security guards to be present at his medical examination."). Therefore, summary judgment should be granted in favor of defendant Garrison as to any federal right to privacy claim brought by plaintiff in this action.

F&Rs (Doc. No. 191) filed Feb. 25, 2009, at 23-26.

/////

/////

/////

/////

/////

/////

8

For those same reasons, plaintiff may not proceed with his claims against defendant Stanton based on alleged violations of his right to privacy under state and federal law. Accordingly, summary judgment in favor of defendant Stanton should be granted with respect to these claims.[3]

## II. Failure to Prevent Use of Excessive Force

Plaintiff has alleged that:

> The failure of defendants Stanton and Headly [sic] to take disciplinary or other action to curb the known pattern of physical abuse of pretrial detainees by defendants Garrison and Rodriguez constituted deliberate indifference and contributed to and proximately caused the above described violation of Fourth, Eighth, and Fourteenth Amendments rights and assault and battery[.]

(Compl. at 30, ¶ 154.) Plaintiff seeks declaratory relief , compensatory damages in the amount of $75,000 from defendants Stanton and Headley, and $25,000 in punitive damages from each defendant. (Id. at 41, ¶ 2; at 44, ¶ D.3 and at 45, ¶E.1).

### A. Eighth Amendment Claim

The court has previously determined that plaintiff is unable to state a cognizable excessive use of force claim under the Eighth Amendment because the Eighth Amendment protects convicted persons, not pretrial detainees as was plaintiff's status at the time of the alleged events. See Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (Eighth Amendment's prohibition of cruel and unusual punishment applies only after conviction and sentence). Therefore, summary judgment should be granted in defendants' favor to the extent plaintiff has brought such claims under the Eighth Amendment.

/////

---

[3] In any event, based upon the evidence presented in connection with the pending motion it appears that plaintiff has failed to meet his burden of raising a triable issue of fact with respect to any invasion of privacy claim based merely on the alleged presence of a correctional officer during his visits with jail medical staff. See Irvine v. City & County of San Francisco, No. C-00-01293 EDL, 2001 WL 967524, *11-12 (N.D. Cal. July 12, 2001).

B. Fourteenth Amendment Claim

Defendants argue that they did not participate in the incidents where force was allegedly employed by defendants Garrison and/or Rodriguez against plaintiff, that they were unaware of those alleged incidents, and that they never learned of any reason to discipline either officer. (Def. P&A at 29.) Defendants also argue that there has been no evidence offered in support of plaintiff's claim that they failed to prevent custody staff from subjecting plaintiff to physical force in violation of his substantive due process rights. (Id. at 50.) Defendants contend that when force is used resulting in an inmate's injury requiring medical treatment, reports regarding such incidents are forwarded to defendant Headley for review. (Id. at 51.) However, here, the reports regarding the incident plaintiff complains of were not forwarded to defendant Headley because there was no indication that plaintiff was injured and "because the necessity of restraining an inmate and taking a resisting inmate to the ground are fairly routine matters[.]" (Id.) In addition, defendant Headley has no recollection of reading these incident reports concerning plaintiff at the time they were prepared; however, upon review now, it is defendant Headley's opinion that the use of force was reasonable under the circumstances. (Id.)

In his declaration, plaintiff states that there is an "enviornment [sic] and culture of violence which Stanton and Headley allow to permeate in the county jail." (Pl. Decl. (Doc. No. 178) Part 2 at 2, ¶ 9.) Plaintiff states that he has witnessed officers beating inmates. (Id. ¶¶ 11-12 at 2-3.) Plaintiff has also submitted the declaration of inmate Robert Miller, signed under penalty of perjury, in which Mr. Miller states that he observed defendant Garrison tackling and hitting another inmate who had asked to use a razor or other personal hygiene items. (Id., Ex. A at 1-2.) Finally, plaintiff declares that defendants Stanton and Headley never conducted any investigation into the use of force by jail staff and that he was in constant fear of being beaten during his detention at the Solano County Jail. (Id. ¶¶ 16-17 at 3-4.)

In their reply, defendants reassert that they did not participate in the incidents where excessive force was allegedly used, and that they have no knowledge of those incidents or

of an alleged pattern of abuse by defendants Garrison and Rodriguez. (Reply (Doc. No. 179) at 1-3.) As to plaintiff's argument that reporting procedures were not followed, defendants observe that the fact that there are incident reports regarding the events in question, even though they were not forwarded to defendant Headley because they did not involve an injury to an inmate requiring medical attention, refutes his claim. (Id. at 2.) As to inmate Miller's declaration, defendants argue that his allegations are vague and unsubstantiated. (Id.) Defendants also object to the court's consideration of the declaration on the grounds that plaintiff failed to disclose Miller's declaration in response to defendants' discovery requests, and that the declaration contains hearsay. (Id., Objection to Pl.'s Evidence (Doc. No. 179, Part 8) at 1-2.)

Plaintiff has failed to present any evidence that defendants Stanton and Headley personally participated in the alleged use of excessive force against him. There is also no evidence before the court that the moving defendants directed Officers Garrison and Rodriguez to engage is the use of excessive force or that defendants Stanton and Headley were even aware of the incidents where excessive force was allegedly used. Thus, summary judgment should be granted in favor of defendants Stanton and Headley on plaintiff's excessive force claims brought against them in their personal capacity.

The court turns next to plaintiff's claim that defendants, in their official capacity, allowed the Solano County Jail to operate under an unwritten policy or custom which promoted the use of excessive force. As noted above, an official capacity suit is a suit against Solano County and the Solano County Jail based on municipal liability. Plaintiff has submitted his own declaration wherein he generally complains of witnessing "county jail staff" beat defenseless inmates. Plaintiff also declares that he was subjected to excessive use of force and addresses two other instances of the use of force on inmates within the Solano County Jail. In addition, plaintiff has submitted the declaration of inmate Miller in which he describes the use of excessive force by defendant Garrison and other deputies against a specific jail inmate in 2005. Plaintiff has offered no additional evidence in support of his claim.

1        Instructive in this regard is the case of <u>Justin v. City and County of San Francisco</u>,

2   No. C05-4812 MEJ, 2008 WL 1990819 (N.D. Cal. May 5, 2008).  There, the plaintiffs had

3   alleged the existence of an informal policy or custom at the San Francisco Jail of tolerating the

4   excessive use of force on pretrial detainees.  The district court granted defendants' motion for

5   summary judgment, analyzing the issue as follows:

6              Without evidence beyond their allegations of this isolated incident,
            Plaintiffs have failed to meet their burden on summary judgment of
7              showing that there is a widespread policy.  Without more, such as
            evidence of repeated constitutional violations based on this policy,
8              Plaintiff's argument is tenuous and does not rise to the level of a
            <u>Monell</u> violation.  <u>See</u>, <u>e.g.</u>, <u>Irish v. City of Sacramento</u>, 2007 WL
9              570258 *9 (N.D. Cal.) ("While a Section 1983 plaintiff may
            attempt to prove the existence of custom or informal policy with
10             evidence or repeated constitutional violations for which errant
            municipal officials were not discharged or reprimanded, . . . no
11             such evidence was produced by plaintiff."); <u>Medora v. City and
            County of San Francisco</u>, 2007 WL 2522319 *13 (N.D. Cal)
12             (plaintiff's proof that officers involved in incident failed to follow
            department policy governing internal reporting and investigation of
13             complaints of excessive force was insufficient to raise triable issue
            of fact of a 'widespread policy' which promoted excessive force
14             and caused plaintiff's particular injury).

15             Because Plaintiffs' only evidence to support their Monell claim is
            their own conclusory allegations, Defendants are entitled to
16             summary judgment . . . .

17   <u>Justin</u>, 2008 WL 1990819 at *7.  <u>See also</u> <u>Davis v. City of Ellensburg</u>, 869 F.2d 1230, 1234-35

18   (9th Cir. 1989) (concluding that summary judgment was appropriate where the plaintiff had

19   alleged prior incidents of excessive use of force but had failed to present any probative evidence

20   suggesting that excessive force had indeed been used or that the use of excessive force was

21   pervasive enough to raise to the level of a custom); <u>Meehan v. County of San Diego</u>, 856 F.2d

22   102, 107 (9th Cir. 1988) ("Proof of a single incident of unconstitutional activity is not sufficient

23   to impose liability under Monell, unless proof of the incident includes proof that it was caused by

24   an existing, unconstitutional [local government] policy, which policy can be attributed to a [local

25   government] policymaker."); <u>Hocking v. City of Roseville</u>, No. Civ. S-06-0316 RRB EFB, 2008

26   WL 1808250 (E.D. Cal. April 22, 2008) (finding that statistical evidence of citizen complaints

filed over a 4-1/2 year period and the actions taken on those complaints, without more, is insufficient to establish a triable issue of material fact as to whether the City had a custom allowing police misconduct, especially where there was no evidence that the citizen complaints had merit); Randolph v. City of East Palo Alto, No. C 06-07476 SI, 2008 WL 618908, at *9 (N.D. Cal. March 1, 2008) (granting summary judgment in favor of the defendant City on an excessive use of force claim where plaintiff presented evidence of two citizen complaints alleging excessive use of force, one citizen complaint alleging harassment and a 2-year old grand jury investigation recommending the need to overhaul procedures and to increase supervision of police officers, but plaintiff had provided no evidence about the prior incidents other than the investigatory reports).

        In this case, the court finds that plaintiff has not met his burden of establishing the existence of a widespread policy promoting the use of excessive force at the Solano County Jail. Rather, he has submitted evidence suggesting, at most, isolated incidents involving the use of force against inmates at the Solano County Jail which he and fellow inmate describe as excessive and unjustified. Plaintiff has not presented the court with any expert opinion, statistical or any other form of evidence in support of his claim that a policy or custom of tolerating the excessive use of force on pretrial detainees exists at the Solano County Jail. Therefore, the motion for summary judgment brought on behalf of defendants Stanton and Headley with respect to plaintiff's excessive force claims should be granted.

III. Telephone Access

        In his complaint plaintiff claims that defendants Stanton and Headley violated his constitutional rights by denying him the use of a telephone while incarcerated. Specifically, plaintiff alleges as follows:

/////

/////

/////

Plaintiff being a pretrial detainee has suffered [sic] ineffective assistance of counsel due to defendants Stanton and Headly [sic] actions of continuing to house plaintiff in diso-iso punitive segregation which without penological justification restricts plaintiffs [sic] access to a phone to communicate with his criminal attorney.

\* \* \*

Defendants Stanton and Headly [sic] . . . should have reasonably known any pretrial detainee placed on diso-iso statues [sic] by defendants Clark, Driscoll, or other classification/hearing officers would be unable to effective communicate with attorneys or secure a bail bond because diso-iso statues [sic] or segregation means to lose all privileges including: visiting, commissary, telephone, and television[.]

(Compl. at 16-17, ¶¶ 83, 86.) Thus, plaintiff claims that by placing and retaining him in disciplinary segregation, defendants Stanton and Headley violated his due process rights because those held in disciplinary segregation have limited telephone access and that impacted plaintiff's ability to communicate with his attorney. (Compl. at 31-35, ¶¶ 158, 160, 167, 170.)

In moving for summary judgment defendants argue that they did not play any direct role in limiting plaintiff's telephone access or in responding to his request to use the phone to call his attorney. (P&A at 32.) In addition, under department policy, defendants note that plaintiff could use the telephone while in administrative segregation to make legal calls. (Id.) Finally, defendants argue that a Sixth Amendment claim alleging interference with the right to counsel requires a showing of prejudice and that plaintiff has failed to show that he suffered any prejudice as a result of the alleged limitation on his telephone access here. (Id. at 31-32.)

In opposition to the motion, plaintiff argues that while held in disciplinary segregation there was not enough time provided to use the telephone, exercise, and bathe during the period of time he was released from his cell. (Opp'n at 20.) Plaintiff contends that disciplinary segregation under such conditions violated his Sixth Amendment rights because it restricted, without reasonable justification, his access to a telephone. (Id. at 21.)

/////

14

Defendants Stanton and Headley are entitled to judgment in their favor as to this claim.  Again, plaintiff has not provided this court with any evidence suggesting that defendants Stanton and Headley were personally involved in denying him access to a telephone or impeding his ability to speak to his attorney.  Nor has plaintiff pointed to any evidence suggesting that a policy or custom to interfere with the ability of pretrial detainees to consult with their attorneys existed at the Solano County Jail.  Rather, as defendants have established, there is a written policy at the Solano County Jail that provides:  "Inmates confined within the Custody Facility will have equal and adequate access to telephones in order to maintain . . . contact with legal representatives." (Doc. No. 134, Part 21 (Telephone policy)).  Plaintiff has failed to present any evidence demonstrating that a jail policy resulted in the denial of his access to the courts or impeded his ability to consult with his attorney in the criminal case that was then pending against him.  Whether plaintiff's claim is viewed as one brought under the Sixth Amendment based on alleged interference with his right to consult with his counsel in his then-pending criminal case or as a Fourteenth Amendment claim centered on some alleged interference with his ability to access the courts, plaintiff has presented no evidence that he suffered prejudice of any kind as a result of the alleged interference.  Accordingly, since plaintiff has not provided evidence establishing the essential elements of his claim, summary judgment should be granted in favor of defendants Stanton and Headley on this claim.

IV.  Disciplinary Proceedings and Disciplinary Action

Plaintiff has brought several claims against defendants Stanton and Headley in which he challenges his disciplinary proceedings and sentences imposed against him.  As a result of the order filed September 20, 2007, adopting the undersigned's August 16, 2007 findings and recommendations, several of plaintiff's due process claims in this regard were dismissed.  Only the following such claims remain pending before the court: (1) plaintiff's claim based upon defendant Headley's placement and retention of plaintiff in administration segregation (Compl. at /////

30-31, ¶ 157 ); and (2) plaintiff's claim that his rights were violated when defendants Stanton and Headley failed to remove him from disciplinary segregation after ten days (id. at 33, ¶ 166).

Defendants Stanton and Headley move for summary judgment in their favor on these remaining due process claims, contending that they did not conduct plaintiff's disciplinary hearings and played no role in his placement in disciplinary isolation. (P&A at 38, 40-41, 45-48.) In his declaration submitted in support of the pending motion, defendant Stanton explains:

> Disciplinary decisions are generally made by classification officers. To ensure proper supervision, those decisions are regularly reviewed by the jail's Operations Sergeant. I am not personally involved in the disciplining of inmates. I played no role in disciplining LOW or the decision to place LOW on disciplinary isolation status and/or a disciplinary diet and I did not conduct his disciplinary hearings. Similarly, I do not make decisions regarding the classification of inmates. I played no role in the classification of LOW and was unaware of his classification or that he was classified to administrative segregation.
>
> Decisions regarding an inmate's housing assignment are generally made by classification officers. I do not play any role in determining an inmate's housing assignment. I was not involved in determining LOW'S housing assignment and was unaware what that assignment was.

(Stanton Decl. (Doc. No. 135, Part 9) at 3, ¶¶ 8-9.)

Defendant Headley provides a similar declaration, stating:

> I did not conduct any disciplinary hearing for inmate TONY RICHARD LOW, nor was I involved in any decision to place him on disciplinary isolation status. . . .
>
> As a correctional lieutenant and the facility commander, I played a very small role in the classification process. An inmate's classification was determined by a classification officer. These decisions would then be reviewed on a random basis by the sergeant in charge of the classification unit. Generally I was only involved in an inmate's classification to administrative segregation when that classification had continued for an unusually long period of time and a classification officer and the sergeant in charge of classification had concerns as to whether the inmate should remain in administrative segregation. In such situations, I would be asked to make a decision regarding the inmate's classification. I have no recollection of being approached by classification staff regarding

LOW'S classification to administrative segregation and I was
unaware of LOW'S classification to administrative segregation.

(Headley Decl. (Doc. No. 135, Part 11) at 2, ¶¶ 3-4.)

Plaintiff has submitted no evidence in response to the pending motion disputing defendants' evidence. The defendants' evidence establishes that Stanton and Headley participated in neither the disciplinary hearings nor the decision to place plaintiff in administrative segregation. Moreover, plaintiff has not referred to any official policy that resulted in a violation of his due process rights in this regard. Because plaintiff has failed to establish the existence of an essential element of his claim, which is that defendants were involved in his placement or retention in disciplinary segregation, defendants' motion for summary judgment as to plaintiff's due process claims should be granted.

V. Styrofoam Tray Claim

Plaintiff also alleges that defendant Headley directed that he be served his meals on disposable trays without a disciplinary hearing in violation of plaintiff's due process rights under the Fourteenth Amendment. (Compl. ¶ 187-88 at 40.) Defendant Headley argues that he is entitled to summary judgment on this claim because plaintiff does not have a liberty interest in having his meals served on a plastic, rather than a styrofoam, tray while incarcerated. (P&A at 38-39.) In addition, defendant Headley states in his declaration as follows:

Meals at the Solano County jail are generally served on hard plastic trays. Inmate meals are occasionally served on disposable styrofoam trays. Disposable trays are also used when providing food to a particular inmate is deemed to pose a threat to the safety and security of the jail staff and other inmates. When an inmate's meals are to be served on disposable trays, this information is noted on a chalkboard in the jail's kitchen. While the meal may be served on a disposable tray, the meal itself remains exactly like all other regular meals in the jail. I was not responsible for distributing meals to inmates nor did I oversee the process. As a correctional lieutenant and the facility commander, I played no role in the determination as to whether an inmate's meals were to be served on disposable styrofoam trays. I was not involved in any

/////

17

1  determination that LOW'S meals should be served on disposable
2  styrofoam trays.

3  (Headley Decl. at 4-5, ¶ 10.)

4  In his opposition to the pending motion, plaintiff contends that there is "an

5  underground policy of using disposable styrofoam trays as both a punitive and disciplinary

6  measure." (Opp'n at 26.) However, plaintiff has provided no evidence to the court that

7  defendant Headley was responsible for having plaintiff's meals served on styrofoam trays nor has

8  he submitted any evidence to support his conclusory allegation of the existence of such an

9  "underground" policy to punish jail inmates. Accordingly, summary judgment should be granted

10 in favor of defendant Headley as to this claim.

11 VI.  Citizen's Complaint

12  Plaintiff has alleged that defendants Stanton and Headley violated his Fourteenth

13 Amendment rights by failing to establish a system at the Solano County Jail for the filing of

14 citizen's complaint. (Compl. at 40, ¶ 186.) Plaintiff relies on California Penal Code §

15 832.5(a)(1)[4] which provides:

16  Each department or agency in this state that employs peace officers
   shall establish a procedure to investigate complaints by members
17  of the public against the personnel of these departments or
   agencies, and shall make a written description of the procedure
18  available to the public.

19  In support of their motion for summary judgment defendants cite the decision in

20 Cotton v. Cobarruviaz, No. C 93-20744 RMW, 1994 U.S. Dist. LEXIS 8666, at *6 (N.D. Cal.

21 May 4, 1994)[5] (holding that § 832.5, "does not lend itself to a finding that an interest warranting

22 the constitutional protections of procedural due process has been established.").

23

24  [4]  The purpose of § 832.5 is "to provide retention of relevant records while imposing
25 limitations upon their discovery and dissemination." Davis v. City of San Diego, 106 Cal. App.
   4th 893, 800 n.6 (2003) (internal quotation marks omitted).

26  [5]  No Westlaw citation is available for this decision.

1        Plaintiff has presented no authority for the proposition that California Penal Code

2 § 832.5(a)(1) establishes a liberty interest that is protected by the Fourteenth Amendment's Due

3 Process Clause nor has the court found any such authority. Moreover, the plain language of that

4 statutory provision as well as its recognized purpose fail to support plaintiff's claim that it

5 establishes a liberty interest that he can only be deprived of if provided procedural due process

6 protections. Therefore, defendants' motion for summary judgment should be granted as to this

7 claim as well.

8 VII.  <u>Failure to Supervise, Train  or Control Officer Clark</u>

9        In his complaint plaintiff presents the following claim concerning defendants

10 Stanton and Headley's failure to supervise defendant Clark.

11        The failure of defendants Stanton and Headly [sic] to adequately
       supervise, train, and control defendant Clark constitutes deliberate
12        indifference and further denies the plaintiff to be free of cruel and
       unusual punishment in violation of the Eighth Amendment of the
13        United States Constitution.

14 (Compl. at 33, ¶ 165.) Plaintiff alleges that defendant Clark authorized placing plaintiff on a

15 disciplinary diet consisting of a food loaf and water. (<u>Id.</u> ¶ 161 at 32.)

16        As noted above, the Eighth Amendment applies only to convicted persons and is

17 therefore not applicable in this case. Defendants Stanton and Headley argue, and have submitted

18 evidence establishing, that they were not involved in defendant Clark's training and do not

19 supervise the disciplinary process employed at the Solano County Jail. (P&A at 49-50.) Plaintiff

20 merely argues in response that defendant Clark was not qualified or trained to "render

21 disciplinary sentences" and that it was the responsibility of "senior jail administrators" to train

22 custodial staff. (Opp'n at 35.)

23        The court is persuaded by the defendants' evidence and arguments. There is no

24 evidence before the court that would suggest liability on the part of defendants Stanton and

25 Headley for defendant Clark's imposition of a dietary sanction against plaintiff. Therefore,

26 /////

1  summary judgment should be granted as to this claim in favor of defendants Stanton and

2  Headley.

3  VIII.  Equal Protection Claim

4          Plaintiff's somewhat difficult to decipher equal protection claim is described by

5  him as follows:

6          The actions of defendants Stanton and Headly [sic] in concert with
           their subordinates defendants Clark, Driscoll, Childres, Jorgenson,
7          Von Ting and Smith in using disciplinary isolation segregation and
           status for consecutive periods beyond ten days constitutes
8          deliberate indifference to plaintiffs [sic] and all other pretrial
           detainees similarly situated [the] right to effectively communicate
9          with criminal defense attorneys over a telephone as other pretrial
           detainees in the county jail.  This action denys [sic] the plaintiff
10         and all pretrial detainees similarly situated equal protection of the
           law and violation of due process of the law in violation of the
11         Fourteenth Amendment to the United States Constitution.

12  (Compl. at 34-35, ¶ 169.)[6]

13          Defendants Stanton and Headley have interpreted this claim as plaintiff asserting

14  disparate treatment of jail inmates confined in disciplinary segregation compared to the treatment

15  received by inmates housed in general population at the Solano County Jail.  (P&A at 52-53.)

16  Defendants Stanton and Headley again argue that they did not place plaintiff in disciplinary

17  isolation and, even if they had, inmates in disciplinary isolation are not similarly situated to

18  inmates housed in general population.  (Id. at 53.)  In this regard, defendants contend that as an

19  incentive for good conduct, inmates in general population are provided telephone access for

20  social use while inmates held in disciplinary isolation lose that privilege and are instead allowed

21  to make only legal and emergency telephone calls.  (Id.)  According to defendants, "[t]he

22  decision to afford reduced telephone access to inmates on disciplinary isolation status was

23  /////

24

25      [6] Plaintiff has previously been informed that this action is proceeding solely as an
    individual action on his own behalf and not as a class action.  See Order and F&Rs filed Aug. 16,
26  2007, at 1 n.1.

1    rationally related to the legitimate purpose of maintaining discipline in the jail by providing

2    inmates an incentive to abide by jail regulations." (<u>Id.</u>)

3            In his opposition to the pending motion, plaintiff merely states that there was no

4    compelling state interest in confining him in disciplinary isolation and in restricting his telephone

5    access. (Opp'n at 37.)

6            Plaintiff has not presented this court with evidence establishing an essential

7    element of his equal protection claim, that he has been treated differently from other inmates who

8    are similarly situated. Disparate treatment need only be rationally related to a legitimate

9    governmental purpose to satisfy the Equal Protection Clause. Maintaining jail security is

10   certainly a legitimate governmental purpose and jail officials have wide discretion in determining

11   the appropriate measures to be taken to preserve order and security in a detention facility. <u>See</u>

12   <u>Turner v. Safley</u>, 482 U.S. 78, 84-85 (1987). Therefore, summary judgment should be granted in

13   favor of defendants Stanton and Headley with respect to this claim.

14   IX. <u>State Law Claims</u>

15           In an abundance of caution, defendants Stanton and Headley argue that they are

16   entitled to summary judgment on plaintiff's assault and battery claims brought under state law

17   because plaintiff failed to comply with the California Tort Claims Act claims submission

18   requirement. (P&A at 54-55.)

19           It is true that plaintiff failed to comply with the claim submission requirement and

20   that the defendants named in these claims are therefore entitled to summary judgment. <u>See</u> F&Rs

21   filed Feb. 25, 2009 (Doc. No. 191) at 22-24. However, the court notes that it appears plaintiff

22   did not name defendants Stanton and Headley in those state law claims.

23                                 CONCLUSION

24           In accordance with the above, IT IS HEREBY RECOMMENDED that:

25           1. The motion for summary judgment brought on behalf of defendants Stanton

26   and Headley (Doc. No. 135), filed August 15, 2008, be granted; and

2.  All claims against defendants Stanton and Headley be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within five days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 3, 2009.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
low2211.msjStanHead