IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TONY RICHARD LOW,

        Plaintiff,                      No. CIV S-05-2211 MCE DAD P

    vs.

GARY R. STANTON, et al.,

        Defendants.               <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding pro se with several civil claims brought pursuant to 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and state law. Before the court is the motion for summary judgment filed on behalf of defendant Jared Clark. Defendant seeks summary judgment in his favor on plaintiff's due process and equal protection claims brought in connection with plaintiff's disciplinary hearing while incarcerated at the Solano County Jail and plaintiff's subsequent placement in disciplinary isolation. For the reasons set forth below, the court will recommend that defendant Clark's motion for summary judgment be granted.

/////

/////

/////

1

I. Summary Judgment Standard Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c).) "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. <u>See</u> <u>Anderson</u>, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. <u>See</u> <u>Matsushita</u>, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

/////

On December 8, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

II. Undisputed Facts

The following facts are undisputed as they relate to plaintiff's claims against defendant Clark. On June 29, 2005, plaintiff was arrested and detained at the Solano County Jail. (Compl. at 6.)[1] Defendant Clark was employed at the Solano County Sheriff's Department at the time plaintiff was detained in the jail. (Pl.'s Opp'n to Def's. Statement of Undisputed Facts at 1.) As part of his duties, Clark acted as a classification officer and conducted disciplinary hearings with respect to inmates charged with rules violation. (Decl. of Jared Clark (Doc. 134, Part #21, at 1.)

On July 19, 2005, Officers Garrison and Weary conducted a search of plaintiff's cell. (Compl. at 9.) Plaintiff was asked to exit the cell during the search and he complied. (Id.) After a brief search, Officer Garrison exited the cell and asked plaintiff about the location of a metal component to a wall outlet. (Id.) Plaintiff denied knowledge of the whereabouts of the metal component. (Id.) Officer Garrison then began to remove items from plaintiff's cell to conduct a more thorough search. (Id.) While his cell was being searched, plaintiff fled out of the housing unit towards the control tower door. (Id. at 10.) Officer Garrison gave chase and employed the use of force to restrain plaintiff. (Id.)

On July 21, 2005, defendant Clark conducted a disciplinary hearing with plaintiff regarding the July 19, 2005 incident. (Pl's Opp'n to Def.'s Statement of Undisputed Facts at 7.) Plaintiff received incident reports before the hearing along with information regarding his rights to a hearing. (Id.) Plaintiff was charged with failing to obey all laws in connection with the

---

[1] Plaintiff's complaint was signed by him under the penalty of perjury and is therefore a verified complaint. On summary judgment the factual allegations set forth in a verified complaint are to be treated the same as those contained in an affidavit. See 28 U.S.C. § 1746.

4

incident and was informed that his violation could warrant serious disciplinary punishment and, depending on the outcome of the disciplinary hearing, criminal charges. (Id.; Vol. I of Pl.'s Dep. Tr. at 85-90.)

Plaintiff's disciplinary hearing on the charge took place at his cell, with plaintiff in attendance. (Pl.'s Opp'n to Def.'s Statement of Undisputed Facts at 8.) At the hearing, plaintiff pled not guilty to the charge. (Pl.'s Opp'n to Def.'s Statement of Undisputed Facts at 8.) Pursuant to Solano County Sheriff's Department policy, an inmate is permitted to call witnesses during the course of a disciplinary hearing. (Id.) At his hearing, plaintiff asked to call as witnesses Officer Garrison and all the inmates housed in his previous housing unit. (Id. at 8-9.) Officer Garrison had written a report describing his recollection of the July 19, 2005 incident.[2] (Id.) Based on a review of Garrison's report, defendant Clark concluded that Garrison could not provide testimony that would be helpful to plaintiff in defending against the charge. (Id.) Defendant Clark therefore denied plaintiff's request to call Garrison as a witness at the disciplinary hearing. (Id.)

As for his request to call as witnesses all of the inmates housed in the area where the incident took place, plaintiff failed to identify any specific inmates to be called. (Id. at 10.) Defendant Clark determined that allowing plaintiff to call as witnesses all of the inmates in the housing unit "would jeopardize order in the jail by posing enormous logistical and practical problems." (Def.'s Reply to Pl.'s Opp'n to Mot. for Summ. J. at 2.) Accordingly, defendant

---

[2] Officer Garrison's report indicated that upon being told by maintenance that an electrical outlet was tampered with and parts were missing, he conducted a search of plaintiff's cell. The report further stated that Garrison found the metal plate and two other metal objects in plaintiff's cell. (Decl. of Jared Clark in Supp. of Mot. for Summ. J. (Doc. No. 134, Part #21, Exh. B at 6.) Plaintiff denied any knowledge about the metal part and metal objects discovered in his cell as well as of the location of the missing splitter. (Id.; Compl. at 9.) When Officer Garrison started to remove everything from the cell, plaintiff "fled out the unit door" and towards the door to the unit control tower. (Decl. of Jared Clark, Exh. B at 6; Compl. at 9-10.) According to the report, plaintiff ran behind a maintenance cart and upon Officer Garrison's approach, plaintiff grabbed a spray can and raised it in an attempt to strike Garrison. (Decl. of Jared Clark, Exh. B at 6.) A struggle ensued before plaintiff was subdued. (Id.)

Clark denied plaintiff's request to call witnesses in this respect as well. (Pl.'s Opp'n to Def.'s Statement of Undisputed Facts at 10.)

Following the hearing, defendant Clark found plaintiff guilty of the disciplinary violation. (Id. at 10.) Plaintiff was informed that defendant Clark was recommending that he be placed on disciplinary isolation status for ten days and disciplinary diet for ten days. (Id. at 10.) Before recommending the imposition of a disciplinary diet, defendant conferred with medical staff to ensure that there were no health concerns in placing plaintiff on such a diet. Medical staff conducted a chart review and found no contraindications to placing plaintiff on a disciplinary diet for ten days. (Pl.'s Opp'n to Def.'s Statement of Undisputed Facts at 10.)

Plaintiff was given a copy of the hearing report which informed him of the punishment to be imposed. (Id.) According to Solano County Sheriff's Department policy, a disciplinary diet is a nutritionally-balanced meal that may be served to an inmate twice a day. (Id. at 11.) The disciplinary diet provides an inmate with a well-rounded and nutritious diet sufficient to maintain inmate health and contains 2800-2900 calories, which is consistent with the standard menu in the jail. (Id.) The diet consists of at least one quart of water, two slices of whole wheat bread, and one-half loaf (19 oz.) of a specially-prepared meatloaf.[3] (Id.) Because plaintiff had been found guilty of attempting to escape from his housing unit, Facility Commander Headley concluded that the seriousness of plaintiff's actions warranted the imposition of a disciplinary diet and, therefore, approved that disciplinary action for ten days. (Id. at 12.)

Due to other findings of guilt on disciplinary charges, plaintiff was sentenced to serve ten days on disciplinary isolation in the Solano County Jail on three separate occasions during his incarceration there. (Id.) Following the July 19, 2005 incident, defendant Clark

---

[3] Consistent with Title 15 of the California Code of Regulations, the meatloaf is made of nonfat dry milk, potato, carrots, tomato juice or puree, cabbage, oil, whole wheat flour, salt, onion, egg, red beans, chili powder, and either ground beef, turkey, or textured vegetable protein. (Pl.'s Opp'n to Def.'s Statement of Undisputed Facts at 11.)

approved a change in plaintiff's housing assignment to the more secure Z module. (Id.) Assignment of a jail inmate by staff to the Z module and placement on disciplinary isolation status are not synonymous. Inmates may be housed in the Z module without being on disciplinary isolation status and inmates on disciplinary isolation status may be housed in other housing units. An inmate may be placed on disciplinary isolation status by a hearing officer following a finding of guilt at a disciplinary hearing.[4] (Pl.'s Opp'n to Def.'s Statement of Undisputed Facts at 2-4.)

Placement in disciplinary isolation means that an inmate loses privileges. (Id. at 4.) However, inmates on disciplinary isolation status are afforded three hours and forty-five minutes of time outside their cells spread over six days of the week.[5] (Id.) Pursuant to Solano County Sheriff's Department policy, inmates placed on disciplinary status are "eligible for outgoing and legal calls only."[6] (Id.)

---

[4] In his Opposition to Defendant's Undisputed Facts, plaintiff quibbles with evidence offered by defendant, namely that "Pursuant to Sheriff's Department policy, an inmate may be placed on disciplinary isolation status by a hearing officer following a finding of guilt after a disciplinary hearing." (Pl.'s Opp'n to Def.'s Statement of Undisputed Facts at 4.) The court sees no material difference between the language used by defendant in his statement of undisputed facts and that used in the Solano County Sheriff's Department Policy and Procedure, § 18.02(III)(D)(2), submitted with Sergeant Donna Cameron's declaration. (See Docket No. 134 Parts #20 and #21.) Moreover, plaintiff's contention that he disputes this fact is frivolous, since elsewhere he has admitted this same fact. (See Doc. No. 181 at 6.) Therefore, the court will deem this evidence of defendant as undisputed.

[5] Again in this regard, plaintiff quibbles with undisputed facts listed by defendant Clark that plaintiff has elsewhere admitted. (See Doc. No. 181 at 6.) The court will again accept this fact as undisputed.

[6] Plaintiff disputes this fact proffered by defendant Clark as undisputed by vaguely stating that "it was my personal experience that while on disciplinary isolation status I was denied emergency and legal phone calls." (Decl. of Pl. in Supp. of Opp'n to Def.'s Mot. for Summ. J. at 16.) However, plaintiff admits that he was afforded three hours and 45 minutes per six days outside of his cell during disciplinary isolation and that housing units in the Solano County Jail contain telephones for the use of the inmates. (See Doc. No. 181 at 6-7.) During the time outside his cell, plaintiff also admits that it was possible for him to use the phone. (Compl. at 14.) Given the record before this court, no rational trier of fact could find that plaintiff was denied access to a telephone while in disciplinary isolation at the Solano County Jail. There is no genuinely disputed issue of material fact in this regard.

7

Inmates may be placed on administrative segregation at the Solano County Jail for a variety of reasons, including a history of violent behavior towards staff or other inmates and a history of escape attempts. (Id. at 5.)

After August 3, 2005, while plaintiff was housed in the Z module, he had access to and could use the telephone. (Decl. of Matthew Ross Wilson in Supp. of Def.'s Mot. for Summ. J., Exh. A at 106.)

III. Applicable Legal Standards

    A. Due Process

The United States Supreme Court has addressed the due process rights of pretrial detainees with respect to the conditions of their confinement, stating as follows:

> Where it is alleged that a pretrial detainee has been deprived of liberty without due process, the dispositive inquiry is whether the challenged condition, practice, or policy constitutes punishment, "for under the Due Process Clause, a detainee must not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535 (1979).
>
> In addressing the particular challenges in Wolfish, we carefully outlined the principles to be applied in evaluating the constitutionality of conditions of pretrial detention. Specifically, we observed that '[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.' Id. at 538. Absent proof of intent to punish, we noted, this determination "generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it.]'" Ibid. (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963)).
>
> We concluded: "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' Conversely, if a restriction or condition is not reasonably related to a legitimate goal–if it is arbitrary or purposeless–a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." Bell, 441 U.S. at 539.
>
> In setting forth these guidelines, we reaffirmed the very limited role that courts should play in the administration of detention

> facilities. In assessing whether a specific restriction is "reasonably
> related" to security interests, we said, courts should "heed our
> warning that '[s]uch considerations are peculiarly within the
> province and professional expertise of correctional officials, and, in
> the absence of substantial evidence in the record to indicate that the
> officials have exaggerated their response to these considerations
> courts should ordinarily defer to their expert judgment in such
> matters.'" Bell, 441 U.S. at 540-541, n.23 (citation
> omitted)(quoting Pell v. Procunier, 417 U.S. 817, 827 (1974).
>
> We also cautioned: "[P]rison administrators [are to be] accorded
> wide-ranging deference in the adoption and execution of policies
> and practices that in their judgment are needed to preserve internal
> order and discipline and to maintain institutional security." Bell,
> 441 U.S. at 547.

Block v. Rutherford, 468 U.S. 576, 583-585 (1984). See also Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008) ("Under the Due Process Clause, detainees have a right against jail conditions or restrictions that 'amount to punishment'"); Demery v. Arpaio, 378 F.3d 1020, 1030 (9th Cir. 2004) ("[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement.") .

The imposition of disciplinary segregation or other sanctions as punishment for a pretrial detainee's violation of jail rules and regulations cannot be imposed without the procedural due process requirements established by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974). See Mitchell v. Dupnik, 75 F.3d 517, 523-26 (9th Cir. 1996).[7] Those

---

[7] Defendant contends that plaintiff was a pretrial detainee at the Solano County Jail from June 2005 until October 18, 2005, when he was convicted and that he remained in the jail as a convicted felon until he was transferred to state prison in January of 2006. (Def's. Statement of Undisputed Facts at 1, 2 & 14.) Plaintiff apparently disputes the date he was convicted, declaring that he "was a pretrial detainee from June 2005 until sometime after I was sentenced into state prison in 2006." (Pl's Decl. at 1.) In any event, it is apparent that at some point during his incarceration plaintiff's status changed from pretrial detainee to convicted felon. The parties have chosen not to address the point. Under some circumstances the distinction can be an important one. See Hernandez v. Santa Clara County Sheriff's Dept., No. C 06-6977 (pr), 20087 WL 4468675, *1 (N.D. Cal. Dec. 17, 2007) (placement of a convicted prisoner into disciplinary segregation is not an atypical and significant hardship implicating due process protections whereas the same punishment for a pretrial detainee requires full due process protections). Here, the court has assumed for the sake of argument that all of the challenged actions, classifications and punishment taken in this case occurred while he was a pretrial detainee and not after he was convicted and still being held in county jail awaiting transfer to state prison.

procedural protections required by Wolff include advance written notice of the charges, no less than twenty-four hours to prepare for the disciplinary hearing, a written statement by the fact-finders of the evidence relied on and the reasons for the disciplinary action taken, a limited right to call witnesses and present documentary evidence at the hearing, and a limited right to receive assistance from a fellow inmate or correctional staff. See Wolff, 418 U.S. at 564-70. With regard to the limited right to call witnesses at a disciplinary hearing, the Supreme Court has stated that

> the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional concerns. Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution . . . Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for [the jail] to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter . . . The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses . . . they must have the necessary discretion without being subject to unduly crippling constitutional impediments.

Wolff, 418 U.S. at 566-67.

With respect to plaintiff's claim that his constitutional rights were violated by the disciplinary sanctions imposed, particularly the ten-day disciplinary diet, by defendant Clark, such "[c]laims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment." Frost v. Agnos, 152 F.3d 1124, 1128 (1998) (citing Bell, 441 U.S. at 535, n.16.) "Because pretrial detainees' rights under the Fourteenth

Amendment are comparable to prisoners' rights under the Eighth Amendment" the same standards apply to both. Frost, 152 F.3d at 1128. The Eighth Amendment "requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) (concluding that the use of a disciplinary diet restricting a prisoner to "Nutraloaf" for a seven-day period did not violate the Eighth Amendment); Stewart v. Block, 938 F. Supp. 582, 588 (C.D. Cal. 1996) (defendant Sheriff entitled to summary judgment on plaintiff's claim that being placed on a disciplinary diet while incarcerated in the county jail violated his constitutional rights).

B. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985). See also Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001). To prevail on an equal protection claim the plaintiff must first establish that the defendant acted with an intent or purpose to discriminate against him based upon membership in a protected class. Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee, 250 F.3d at 686. Second, under the "class-of-one theory," if the challenged action does not involve a suspect classification, a plaintiff may establish an equal protection violation by showing that similarly situated individuals were intentionally treated differently without a rational basis for the disparate treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (equal protection claim by plaintiff-homeowner who was required to provide 33-foot easement when other Village property owners were required to provide 15-foot easement).

The Equal Protection Clause, which ensures that similarly situated persons are treated alike, applies to prison inmates. Turner v. Safley, 482 U.S. 78, 84 (1987); Plyer v. Doe, 457 U.S. 202, 216 (1982). However, It is well-established that prison regulations may deprive prisoners of their constitutional rights where the regulation is "reasonably related to penological

interests." Thornburgh v. Abbott, 490 U.S. 401, 404 (1989). "Subjecting pre-trial detainees to restrictions and privations other than those which inhere in their confinement itself or which are justified by compelling necessities of jail administration, is a violation of the due process and equal protection clauses of the Fourteenth Amendment." Brenneman v. Madigan, 343 F. Supp. 128, 142 (N.D. Cal. 1972). See also Strandberg v. City of Helena, 791 F.2d 744, 748 (9th Cir. 1986) (equal protection does not allow pretrial detainees to be unjustifiably held in conditions worse than those under which convicted prisoners are held).

IV. Plaintiff's Claims

    A. Due Process

In his verified complaint plaintiff has alleged that,

> the actions of Defendant Clark in refusing to call witnesses requested by plaintiff, finding him guilty of possessing weapons with no evidence or charge to support the charge [sic], and providing an inadequate written note of the disposition of the charges denied the plaintiff the due process of law in violation of the 14th Amendment to the United States Constitution.

(Compl. at 30.) However, plaintiff does not dispute that he received incident reports involving the disciplinary charge in advance of his hearing. Plaintiff also concedes that he was informed of the nature of the disciplinary charge prior to the hearing, to being convicted of the violation following the hearing and to receiving a hearing report informing him of the punishment to be imposed. In light of these undisputed facts, the record before the court establishes that plaintiff received all of the process to which he was due. See Wolff, 418 U.S. at 564-70. Put another way, plaintiff has failed to offer evidence that he was denied any due process rights in connection with the challenged disciplinary hearing.

Likewise, to the extent plaintiff's due process claim in this regard is based solely on defendant Clark's failure to call witnesses on plaintiff's behalf, Clark is entitled to summary judgment in his favor. Plaintiff's right to call witnesses at his disciplinary hearing was a limited one. Wolff, 418 U.S. at 566-67; Serrano v. S.W. Francis, 345 F.3d 1071, 1079 (9th Cir. 2003)

1  ("Jail officials need not provide inmates an unfettered right to call witnesses" but rather need
2  only "make the decision whether to allow witnesses on a case-by-case basis, examining the
3  potential hazards that may result from calling a particular person."); Mitchell, 75 F.3d at 525;
4  Bartholomew v. Watson, 665 F.2d 915, 918 (9th Cir. 1982). Defendant Clark's denial of
5  plaintiff's request to call witnesses complied with these procedural requirements. Defendant
6  Clark reviewed Officer Garrison's report of the incident from which the charge stemmed and
7  reasonably concluded that any testimony Garrison could give would be superfluous given his
8  report on the incident and, in any event unhelpful to plaintiff and therefore unnecessary. It was
9  perfectly appropriate under these circumstances to decline plaintiff's request to call essentially a
10 hostile witness who had written him up for the rules violation. With respect to plaintiff's
11 incredibly broad request to call as witnesses all of the inmates housed in the unit where the
12 incident occurred, defendant Clark's decision to deny the request was reasonable and appropriate
13 under the circumstances. Plaintiff's failure to identify even one specific inmate witness but
14 instead to request that all inmates in the unit at the time be called to testify, elicited an
15 appropriate response from defendant Clark. The determination that allowing plaintiff to call all
16 witnesses in the housing unit would "jeopardize order" was a reasonable one and complied with
17 the due process principles set forth above. Certainly, plaintiff has failed to offer any evidence to
18 the contrary. Therefore, defendant Clark's motion for summary judgment should be granted as to
19 this aspect of plaintiff's claim.
20             Plaintiff also alleges that "the actions of defendant Clark . . . in placing and
21 retaining the plaintiff within the disciplinary isolation segregation unit without notice or hearing
22 constituted deliberate indifference and further denied the plaintiff the due process of law in
23 violation of the Fourteenth Amendment." (Compl. at 30-31.) However, plaintiff concedes that
24 he received incident reports in advance and was allowed to and did participate in the disciplinary
25 hearing. Again, plaintiff has failed to offer evidence establishing a disputed issue of material fact
26 /////

and has failed to present any proof establishing the essential elements of his claim, namely that he did not receive a proper hearing prior to being placed in disciplinary segregation.

Plaintiff also alleges that "the actions of defendant[ ] Clark...to place and retain the plaintiff within the punitive disciplinary isolation segregation unit constitutes cruel and unusual punishment in violation of the Eighth Amendment." (Id.)[8] There is no question that plaintiff's placement in disciplinary segregation, as the name of the unit suggests, was punishment that could be imposed only after a due process hearing. See Mitchell, 75 F.3d at 524.[9] To prevail on his claim, plaintiff must present evidence that the conditions of his confinement in disciplinary segregation constituted cruel and unusual punishment in some way. He has presented no such evidence.

Plaintiff does not dispute that he fled from his cell during the July 19, 2005, cell inspection by Officers Garrison and Weary. Moreover, the disciplinary sentence imposed for the rules violation was reasonably related to the legitimate governmental objective of preventing escape attempts and maintaining order and discipline within the jail. There is no evidence that the conditions of confinement in the disciplinary segregation unit of the Solano County Jail violated constitutional standards. Defendant Clark's motion for summary judgment should therefore be granted.

Plaintiff further alleges that "the actions of defendant Clark of changing the plaintiff's meals to a punitive disciplinary diet consisting of a food loaf and water being served

---

[8] As noted above, such claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than the Eighth Amendment prohibition against cruel and unusual punishment but the same standards apply. Frost, 152 F.3d at 1128.

[9] Remarkably, defendant's counsel argues that in sentencing plaintiff to a term of disciplinary segregation defendant Clark was not imposing punishment but instead merely maintaining order and security within the jail. (Mot. for Summ. J. at 22-23.) As is the case in many aspects of the briefing on these related summary judgment motions, defendant's counsel has completely missed the mark on this point. Nonetheless, for the reasons set forth above, based upon the undisputed evidence before the court, defendant Clark is entitled to summary judgment in his favor.

twice a day for ten consecutive days without penological justification constitutes a violation of plaintiff's due process." (Compl. at 32.) Once again, as the name implies, the ten-day disciplinary diet in plaintiff's case was punishment. However, plaintiff received all of the process to which he was due before that disciplinary measure was taken. Moreover, there is no evidence that the disciplinary diet imposed in plaintiff's case violated constitutional standards. Certainly there is nothing inherent in the imposition of a disciplinary diet upon a jail inmate that violates the constitution. See LeMaire, 12 F.3d at 1456; Stewart, 938 F. Supp. at 588.

Given the undisputed evidence before the court, defendant Clark's motion for summary judgment on all aspects of plaintiff's due process claim should be granted.[10]

B. Equal Protection

Finally, plaintiff alleges that:

> the actions of defendant . . . Clark . . . in using disciplinary isolation segregation and status for consecutive periods beyond ten days constitutes deliberate indifference to plaintiff's and all other pretrial detainees similarly situated right to effectively communicate with criminal defense attorneys over a telephone as other pretrial detainees in county jail. This action denys [sic] the plaintiff and all pretrial detainees similarly situated equal protection of laws and violation of due process in violation of the Fourteenth Amendment.

(Compl. at 34-35.)

---

[10] In somewhat confusing fashion plaintiff further alleges that "the actions of defendant[] Clark . . . by placing and retaining the plaintiff within the disciplinary isolation segregation unit and limiting the plaintiff's ability to communicate with plaintiff's attorney of record by denying the plaintiff's telephone privileges constitutes deliberate indifference and further denied the plaintiff . . . due process." (Compl. at 31.) This would appear to be some sort of substantive due process challenge to the conditions of confinement in the disciplinary segregation unit at the Solano County Jail. However, as plaintiff has properly conceded, inmates placed in disciplinary segregation following their conviction for violating jail rules do necessarily lose some privileges. Nonetheless, the evidence before the court establishes that plaintiff was afforded three hours and forty-five minutes outside of his cell every six days while in segregation. Given plaintiff's admission that telephones are available for use in Solano County Jail units, there is no evidence that he was denied access to the phone by defendant Clark during his time in disciplinary segregation or that the conditions of such confinement otherwise raise constitutional concerns. Plaintiff's bare allegations do not preclude the granting of defendant's motion for summary judgment.

Whether plaintiff is attempting to state an equal protection claim based on the "protected class" theory or the "class-of-one" theory, he has failed to present any evidence in support of the essential elements of his claim, namely that defendant Clark discriminated against him based on his membership in a protected class or that defendant Clark's placement of him in disciplinary isolation was without a rational basis. The evidence before the court suggests no discrimination. Plaintiff was treated like any other pretrial detainee. When he was cited for a rule violation, he received a due process hearing and when he was convicted, received a reasonable disciplinary sentence. After several incidents, it was determined by jail officials that due to security concerns posed by plaintiff's conduct, he should be classified to administrative segregation. As discussed above, there was nothing about the conditions of his confinement in either disciplinary or administrative segregation that raise constitutional concerns. Furthermore, plaintiff's placements in disciplinary segregation and later in administrative segregation, were rationally connected to the compelling necessity of preventing plaintiff from escaping and ensuring the safety and security of the jail.

Therefore, defendant Clark is entitled to summary judgment in his favor with respect to plaintiff's equal protection claim.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that defendant Clark's motion for summary judgment (Doc. No. 137) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised
/////

that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 19, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:3
low2211(Clark).msj